**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ESSIE JONES** f/k/a Essie McVay, on behalf of all others similarly situated, | § § § | Civil Action No.: 1:23-cv-01557-DII |
| *versus* | § § | |
| **ESO SOLUTIONS, INC.** | § § § | |
| **LARRY CLAYBO**, on behalf of all others similarly situated, | § § § | Civil Action No.: 1:23-cv-01560-DII |
| *versus* | § § | |
| **ESO SOLUTIONS, INC.** | § § § | |
| **STEVEN GUIFFRE**, on behalf of all others similarly situated, | § § § | Civil Action No.: 1:23-cv-01564-DII |
| *versus* | § § | |
| **ESO SOLUTIONS, INC.** | § § § | |
| **BILLY LOVE**, on behalf of all others similarly situated, | § § § | Judge: Robert L. Pitman |
| *versus* | § § | Civil Action No.: 1:23-cv-01577-RLP |
| **ESO SOLUTIONS, INC.** | § § § | |
| **MICHAEL SMITH, TUSSIE SMITH**, *et al*., | § § § | Judge: Robert L. Pitman |
| *versus* | § § | Civil Action No.: 1:24-cv-00003-RLP |
| **ESO SOLUTIONS, INC., and BON SECOURS MERCY HEALTH, INC., d/b/a MERCY HEALTH,** | § § § | |

| | | |
|---|---|---|
| **DEBORAH TODD**, on behalf of all others similarly situated, | §<br>§<br>§ | Civil Action No.: 1:24-cv-00006-DII |
| *versus* | §<br>§ | |
| **ESO SOLUTIONS, INC.** | §<br>§<br>§ | |

## COORDINATED PLAINTIFFS' JOINT MOTION TO CONSOLIDATE RELATED CLASS ACTIONS, APPOINT INTERIM CLASS COUNSEL, AND SET SCHEDULING DEADLINES UNDER F.R.C.P. 23(g)(3) & 42(a) AND MEMORANDUM IN SUPPORT THEREOF

Plaintiffs Essie Jones, Larry Claybo, Steven Guiffre, Billy Love, Michael Smith and Tussie Smith, individually and on behalf of their minor children J.S., B.S., T.S., and B.S., and Deborah Todd ("Plaintiffs"), individually and on behalf of all others similarly situated, respectfully move the Court under Rules 23(g)(3) and 42(a) of the Federal Rules of Civil Procedure for an Order appointing Bryan L. Bleichner of Chestnut Cambronne PA, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and John Yanchunis of Morgan & Morgan Complex Litigation Group, as Interim Class Counsel; and Joe Kendall of Kendall Law Group**,** PLLC and Bruce W. Steckler of Steckler Wayne & Love PLLC as Texas Co-Local Counsel (proposed Interim Class Counsel and proposed Texas Local Counsel are collectively, "Proposed Leadership Counsel"), consolidating the six related cases captioned-above, and setting scheduling deadlines. Plaintiffs communicated with counsel for Defendant ESO Solutions, Inc. ("Defendant" or "ESO") who represented that Defendant does not oppose Plaintiffs' Motion with respect to consolidation and scheduling deadlines. [1]

The related actions are *Essie Jones f/k/a Essie McVay v. ESO Solutions, Inc.*, Civil Action No. 1:23-cv-01557, filed on December 21, 2023 (*"Jones"*), *Larry Claybo v. ESO Solutions, Inc.*, Civil Action No. 1:23-cv-01560, filed on December 21, 2023 (*"Claybo"*), *Steven Guiffre v. ESO*

---

[1] Defendant takes no position with respect to appointment of interim class counsel.

*Solutions, Inc.*, Civil Action No. 1:23-cv-01564, filed on December 27, 2023 ("*Guiffre*"), *Billy Love v. ESO Solutions, Inc.*, Civil Action No. 1:23-cv-01577, filed on December 29, 2023 ("*Love*"), *Michael Smith and Tussie Smith*, *individually and on behalf of their minor children J.S., B.S., T.S., and B.S.*, *v. ESO Solutions, Inc. and Bon Secours Mercy Health, Inc. d/b/a Mercy Health* Civil Action No. 1:24-cv-00003, filed on January 2, 2024 ("*Smith*"), and *Deborah Todd v. ESO Solutions, Inc.*, Civil Action No. 1:24-cv-00006, filed on January 2, 2024 ("*Todd*") (collectively, the "Related Actions") (Plaintiffs Jones, Claybo, Guiffre, Love, Smith, Smith, and Todd are referred to herein as the "Coordinated Plaintiffs").[2]

The Related Actions bring common claims arising from the same data breach against Defendant ESO Solutions, Inc. ("Defendant"). Coordinated Plaintiffs in the Related Actions both allege that the Defendant's inadequate data security allowed a foreseeable and preventable data breach to occur, which compromised the personally identifiable information ("PII") of Plaintiffs and putative class members (the "Data Breach"). Coordinated Plaintiffs seek similar damages and equitable relief arising out of the alleged Data Breach.

Together, Proposed Leadership Counsel intend to "fulfill their obligations as advocates in a manner that will foster and sustain good working relations among fellow counsel and with the court." *See* Manual for Complex Litigation § 10.21 (4th ed. 2004). Proposed Leadership Counsel includes a group of attorneys who are prepared to work efficiently, cooperatively, and professionally with both Plaintiffs' and Defendant ESO Solutions Inc.'s counsel.

Proposed Leadership Counsel includes counsel from numerous cases captioned above. Proposed Leadership Counsel are eminently qualified to lead this action on behalf of the proposed Class. Coordinated Plaintiffs thus submit that the Court should appoint their proposed

---

[2] *Jones, Claybo, Guiffre, and Todd* are before the Vacant Austin District Judge. *Love* and *Smith* are before the Honorable Robert Pitman.

leadership structure and consolidate the Related Actions into the first filed action, *Jones v. ESO Solutions, Inc.*, Civil No. 1:23-cv-01557 as well as any subsequently filed or transferred related actions, for pretrial purposes pursuant to Rule 42(a).

Coordinated Plaintiffs collectively agree that consolidation is appropriate under Federal Rule of Civil Procedure 42(a) because the Related Actions involve common questions of law or fact insofar as they all name Defendant, arise from the same events, and assert overlapping claims and putative classes.[3] Coordinated Plaintiffs further agree that consolidation will avoid unnecessary delay, reduce the risk of inconsistent or duplicative rulings, and mitigate litigation cost. Furthermore, Coordinated Plaintiffs submit a schedule for Plaintiffs to file a consolidated complaint and for briefing a motion to dismiss the consolidated complaint.

Accordingly, Coordinated Plaintiffs file this motion and memorandum in support and request that the Court grant their motion to Consolidate the Related Actions and Appoint Interim Class Counsel under Fed. R. Civ. P. 23(g)(3) and 42(a).

## FACTUAL BACKGROUND

Defendant is a software developer that gathers and stores highly sensitive personally identifiable information belonging to Plaintiffs and the Class as a component of its routine business practices. *See gen. Jones* Doc 1. This consolidated action arises out of a September 2023 cyber-attack where a criminal actor successfully targeted the types of data on Defendant's system and gained access to Defendant's computer systems that stored Plaintiffs' sensitive data. *Id.* Defendant began notifying individuals of the Data Breach in December 2023. *Id.*

Coordinated Plaintiffs allege that the cyber-attack and subsequent Data Breach resulted in

---

[3] Coordinated Plaintiffs are represented by experienced data breach class action attorneys. Counsel's experience is shown through coordinating with all Plaintiffs to make this proceeding more efficient.

the compromise of highly sensitive PII belonging to approximately 2,700,000 individuals. *Id.* The PII includes, among other things, Plaintiffs' and Class Members' names, Social Security numbers ("SSN"), and medical treatment information. *Id.* Plaintiffs have all alleged that the criminals were able to gain access as a result of Defendant's failure to implement and follow reasonable and industry standard security procedures. *Id.*

On December 21, 2023, Plaintiff Jones filed the first complaint against Defendant alleging various causes of action arising from the Data Breach. *Id.*, Doc. 1. That same day, Plaintiff Claybo filed a second class action complaint against Defendant, arising from the same Data Breach with similar allegations and causes of action as the *Jones* suit. *Claybo*, Doc. 1. On December 27, 2023, Plaintiff Guiffre filed a third class action against Defendant arising from the same Data Breach with similar allegations and causes of actions as the *Jones* suit. *Guiffre*, Doc 1. On December 29, 2023 Plaintiff Love filed a fourth class action against the Defendant regarding the Data Breach. *See Love*, Doc 1.

On January 2, 2024, Michael Smith and Tussie Smith, individually and on behalf of their minor children, filed a fifth class action lawsuit against Defendant and Bon Secours Mercy Health, Inc. d/b/a Mercy Health relating to the Data Breach. *See Smith*, Doc 1. Although *Smith* involves Defendant Mercy Health, the action relates to the Data Breach, as Defendant ESO Solutions, Inc. provided the software at issue to Defendant Mercy Health. *See Smith*, Doc. 1, at ¶¶ 2-3. On January 2, 2024, Deborah Todd filed a sixth class action against Defendant regarding the Data Breach. *See Todd*, Doc 1.

Through their respective class actions, Plaintiffs allege a combination of the following causes of action against Defendant: negligence; negligence *per se*; breach of implied contract; unjust enrichment; breach of fiduciary duty; breach of the implied covenant of good faith and fair

dealing, declaratory judgment and injunctive relief, breach of third-party beneficiary contract, invasion of privacy, violations of the Florida Deceptive and Unfair Trade Practices Act, and violations of the Ohio Deceptive Trade Practices Act.

Following the filing of the Related Actions, Coordinated Plaintiffs discussed the benefits of consolidation and coordination of their respective actions, prompting Coordinated Plaintiffs to file this motion.

## ARGUMENT

### I.    CONSOLIDATION OF THE ACTIONS IS APPROPRIATE.

#### A.  Legal Standard Regarding Consolidation.

The power to consolidate related actions falls within the broad inherent authority of every federal court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Consolidation of actions in federal court is governed by Rule 42 of the Federal Rules of Civil Procedure, which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Rule 42(a); *see also A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*, 559 F.2d 928, 933 (4th Cir. 1977) ("District courts have broad discretion under [Rule] 42(a) to consolidate causes pending in the same district."); *see also In re CaptureRx Data Breach Litig.*, No. 5:21-cv-00523-OLG, Doc. No. 13, at 1 (W.D. Tex. July 8, 2021) (consolidating actions in data breach class action "to ensure consistent and efficient adjudications in this Court….").

#### B.  The Related Actions Make Common Legal and Factual Allegations.

Consolidation of the Related Actions is warranted, as the actions require proof of the same basic set of facts to support the causes of action. Specifically, each of the Related Actions focuses on whether Defendant is liable to consumers for its failure to protect Coordinated Plaintiffs' and putative class members' PII that it owed a duty to protect. Since the Related Actions pending before this Court present many of the same factual and legal questions, involve the same Defendant, and will involve the same discovery, consolidation is appropriate to avoid duplicative litigation tracks. *See League of United Latin American Citizens v. Abbott*, No. EP-21-CV-00259-DCG, 2021 WL 5417402, at *2 (W.D. Tex. Nov. 21, 2021) ("The Court finds that all of the above-referenced cases are before the same court (the Western District of Texas); that the cases share common defendants; that the cases share common questions of law and fact; that consolidation will conserve judicial resources and best serve the interests of all parties and witnesses; and that the cases are at similar stage of litigation.").

### C. The Related Actions Should be Consolidated to Reduce Costs and Delay.

The Related Actions involve nearly identical factual allegations against Defendant and regarding the same Data Breach. Indeed, if not consolidated, the separate Related Actions would result in virtually identical discovery requests and duplicative motion practices, and cause an unnecessary drain on party and judicial resources. This is true despite minor variations in class definitions in the Related Actions. As explained in *Kaplan v. 21st Century Oncology Holdings, Inc*., where the court granted a motion to consolidate various class complaints in a data breach case:

> Applying the relevant factors from *Hendrix*, the Undersigned first finds that there is a substantial threat of inconsistent adjudications of common factual and legal issues if the cases are allowed to proceed separately. As stated above, all of the cases are pled as class actions and all of the cases allege a negligence claim. The majority of the cases share other substantive claims as well. For instance, twelve of the thirteen cases allege unjust enrichment claims. Eleven of the thirteen cases

allege Florida Deceptive and Unfair Trade Practices Act claims. Additionally, most of the cases allege negligence per se claims.

To be sure, the complaints in some of the cases assert claims that are not raised in the other related cases. Moreover, the putative class definitions vary among the related cases. Consolidation does, therefore, carry with it some risk of prejudice and also the possibility of confusion based upon these variations. The Undersigned finds, nevertheless, that the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues. Moreover, the nuances in claims and putative class definitions can likely be addressed in the consolidated amended complaint through the use of putative subclasses once the request to appoint interim class counsel has been addressed.

Second, the Undersigned finds that the burden on parties, witnesses, and available judicial resources will be substantially lessened by consolidation. *Id.* On this point, the Court notes that all of the named Defendants in the thirteen related case are represented by the same counsel of record and none of the Defendants have objected to consolidation for pretrial purposes. Further, no named Plaintiffs in any of the cases have objected to consolidation for pretrial purposes. Moreover, the Undersigned finds that judicial resources will be substantially conserved by administering one consolidated case for pretrial purposes rather than proceeding with thirteen separate cases.

Third, the length of time required to conclude a consolidated lawsuit instead of multiple suits is likely to be significantly lessened and, therefore, weighs in favor of consolidation.

Finally, the relative expense to all parties concerned—particularly with regard to discovery—is highly likely to be lessened by litigating in one consolidated case rather than litigating in thirteen separate cases.

Accordingly, consolidation of these cases not only serves to satisfy the standards set forth in Fed. R. Civ. P. 42(a), Local Rule 1.04(c), and *Hendrix*, but also to "secure the just, speedy, and inexpensive determination" of these proceedings.

*Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 2:16-cv-210, 2016 WL 9383330, at *2-3 (M.D. Fla. July 21, 2016), report and recommendation adopted, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016).

Here, each case is in its infancy, and as discussed above involves substantially identical factual allegations and causes of action. Consolidation and reassignment before this Court will

streamline two similar actions, promoting judicial economy, avoiding inconsistent rulings, and create efficiency in the discovery process. Alternatively, allowing these cases to proceed individually and before multiple Courts would strain party and judicial resources. Moreover, consolidation imposes no prejudice on Defendant as it will benefit from the gained efficiencies.

### D.  Future-Filed Related Cases Should be Consolidated.

In addition, to ensure continued judicial efficiency, Coordinated Plaintiffs also respectfully request that the Court order any future filed actions arising from the same or similar facts and circumstances be transferred to this Court and consolidated with the Consolidated Action. *See, e.g.*, *In re Life Partners Holdings, Inc.*, No. DR-11-CV-43-AM, 2012 WL 12875942, at *1 (W.D. Tex. May 9, 2012) ("future cases 'arising out of the same or substantially the same transactions or events as the above captioned cases' shall be united into the consolidated case.").

In line with the current consolidation, Defendant will suffer no prejudice from the consolidation of any related future filed actions, as it will not be faced with the possibility of relitigating issues that had been litigated in this Court. Consolidation of the Related Actions would therefore inure to the benefit of all parties involved.

### E.  Proposed Scheduling Order for Efficiently Proceeding.

Coordinated Plaintiffs submit the following proposed schedule for efficiently proceeding:

1. Coordinated Plaintiffs consolidated class action complaint shall be filed within 30 days after appointment of interim counsel; and

2. Defendant shall file a response to the consolidated class action complaint within 45 days of the filing of the consolidated class action complaint, Plaintiffs have 30 days to file a response to the motion to dismiss, and Defendant has 30 days to file its reply in support of any motion to dismiss the consolidated class action complaint.

## II.    LEGAL STANDARD REGARDING THE APPOINTMENT OF INTERIM CLASS COUNSEL

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

### A.    Appointment of Interim Class Counsel is Appropriate

Proposed Leadership Counsel satisfy all the requirements for appointment by the Court under FRCP 23(g)(3). The attorneys and their firms have successfully litigated numerous class

actions involving privacy claims on behalf of tens of millions of consumers. Proposed Leadership Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from each of the cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Leadership Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion.

Proposed Leadership Counsels' work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

### 1. Proposed Leadership Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Leadership Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things:

- Investigating the facts surrounding the data breach with the assistance of a retired FBI agent, skilled in the investigation of cybercrimes;

11

- Interviewing numerous consumers injured by the data breach;

- Researching legal claims;

- Drafting initial pleadings;

- Organizing Plaintiffs and counsel and discussing consolidating the relevant actions for unified proceedings and preparing the consolidation and proposed leadership papers; and

- Retaining experienced experts on the issues of liability and damages

The facts alleged by Plaintiffs in the Related Actions are egregious in terms of the impact to individual consumers and the consumer marketplace as a whole. Given the scope of the Data Breach and the number of victims potentially affected, Proposed Leadership Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Leadership Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Leadership Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Leadership Counsel under FRCP 23(g)(3), as Proposed Leadership Counsel are organized, unified, and committed to working together for the best interests of the class.

*Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

### 2. Proposed Leadership Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g., In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). Proposed Leadership Counsel have the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g., In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Leadership Counsel each have substantial data breach class-action experience, resources, and knowledge that will benefit the putative class as this litigation proceeds.

### a. <u>Interim Lead Class Counsel</u>: Bryan L. Bleichner (Chestnut Cambronne PA)

Bryan L. Bleichner is a shareholder of Chestnut Cambronne PA, an officer of the Antitrust Section of the National Federal Bar Association, a featured speaker at the National American Bar Association, and a current member of the Sedona Conference Working Group Series. Mr. Bleichner has extensive experience serving as leadership or class counsel in numerous class action data breach cases including: *In re Tift Regional Health Sys., Inc. Data Breach Litig.*, Case No. 2023cv0313 (GA. Sup. Ct. Tift County); *In re OrthoAlaska Data Breach Litig., LLC*, Case No. 3:23-cv-00242 (D. Alaska); *Edwards v. Memorial Heart Institute, LLC d/b/a The Chattanooga Heart Institute*, Case No. 1:2023-cv-00172 (E.D. Tenn.); *Owens-Brooks v. Dish Network Corp.*, Case No. 1:2023-cv-01168 (D. Col.); *In re R&B Corporation of Virginia d/b/a Credit Control Corporation*, Case No. 4:23-cv-00066-JKW-RJK (E.D. Va.); *In re Group Health Plan Litig.*, Case No. 23-cv-267-JWB/DJF (D. Minn.): *Rasmussen, et al., v. Uintah Basin Healthcare*, Case No. 23-cv-00322-HCN-CMR (D. Ut.); *Anderson v. Fortra*, Case No. 23-cv-00533 (D. Minn); *Hale v. ARcare,* No. 3:22-cv-00117 (E.D. Ark.); *Hightower v. Receivables Performance Mgmt., LLC*, No. 2:22-cv-01683 (W.D. Wash.); *Johnson v. Yuma Regional Medical Center*, No. 2:22-cv-01061 (D. Ariz.); *In re Netgain Technology, LLC, Consumer Data Breach Litigation*, No. 21-cv-1210, (D. Minn.); *In re 20/20 Eye Care Network Inc. Data Breach Litigation*, No. 21-cv-61275-RAR (S.D. Fla.); *Baker v. ParkMobile, LLC*, No. 1:21-cv-02182 (N.D. Ga.); *In re Herff Jones Data Security Breach Litigation*, No. 1:21-cv-01329-TWP-DLP (S.D. Ind.); *In re EyeMed Vision Care, LLC Data Security Breach Litigation*, No. 1:21-cv-00036-DRC (S.D. Ohio); *In re Luxottica of America, Inc. Data Security Breach Litigation*, No. 1:20-cv-00908-MRB (S.D. Ohio); *Greenstate Credit Union v. Hy-Vee, Inc.*, No. 20-621-DSD-DTS (D. Minn.); *Village Bank v. Caribou Coffee Co., Inc.*, No. 0:19-cv-01640 (D. Minn.); *In re WaWa, Inc. Data Security Litigation*, No. 19-cv-6019-GEKP (E.D. Pa.); *In re Equifax, Inc.,*

*Customer Data Security Breach Litigation*, No. 17-md-2800-TWT (N.D. Ga.); *Midwest American Federal Credit Union v. Arby's Restaurant Group, Inc.*, No. 17-cv-00514-AT (N.D. Ga.); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1102 (D. Colo); *First Choice Fed. Credit Union v. The Wendy's Company*, No. 2:16-cv-00506 (W.D. Pa.); *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wash.); *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 1:14-md-02583 (TWT) (N.D. Ga.); *In re Target Corporation Customer Data Security Breach Litigation*, No. 0:14-md-02522-PAM-JJK (D. Minn.); *Lutz v. Electromed, Inc.*, No. 70-CV-21-11814 (D. Minn.); *Thomas v. Pawn America Minnesota, LLC*, No. 0:21-cv-02554 (D. Minn.); and *Seabrian v. St. Joseph's/Candler Health System, Inc.*, No. STCV21-01652 (State Court of Chatham County, Georgia).

Mr. Bleichner also has experience serving as leadership or class counsel in non-data-breach class actions, including: *Walker v. Nautilus, Inc.*, No. 20-cv-3414-EAS-EPD (S.D. Ohio); *Howard v. Life Time Fitness, Inc*., No. 27-cv-20-10513 (Minn. 2020); *Barclay v. Icon Health & Fitness, Inc.*, No. 19-cv-02970-ECT-DTS (D. Minn.); *In re Resideo Technologies, Inc. Securities Litigation*, No. 19-cv-02863-WMW-KMM (D. Minn.); *In re Pork Antitrust Litigation*., No. 18-cv-1776-JRT-HB (D. Minn.); *In re DPP Beef Litigation*, No. 20-cv-1319-JRT/HB (D. Minn.); *Bruner v. Polaris Industries Inc.*, No. 18-cv-00939-WMW-DTS (D. Minn.); *In re FedLoan Student Loan Servicing Litigation*, No. 2:18-md-02833-CDJ (E.D. Pa.); *Travis v. Navient Corp.*, No. 17-cv-04885-JFB-GRB (E.D.N.Y.); *Delamarter v. Supercuts, Inc.*, No. 19-3158-DSD-TNL (D. Minn.); and *Christian v. National Hockey League*, No. 0:14-md-02551-SRN-JSM (D. Minn.).

A copy of Mr. Bleichner's firm resume is attached as **Exhibit 1**.

**b.** **Interim Lead Class Counsel: Gary M. Klinger (Milberg Coleman Bryson Phillips Grossman PLLC).**

Mr. Klinger is a Partner at the international plaintiffs' class action firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.4 Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.5 The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. Milberg has more than 80 attorneys and has offices across the U.S. and the European Union.

At only 37-years-old, Mr. Klinger is one of the most well-known and respected data privacy attorneys in the United States. He is presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law. Mr. Klinger has extensive experience serving as leadership in numerous high-stakes consumer class actions. Mr. Klinger has settled more than fifty class actions as lead or co-lead counsel and recovered over $100 million in the process.

He is presently litigating more than one hundred class action cases across the country involving privacy violations. Mr. Klinger recently obtained approval of a $35 million privacy class action. *See Boone, et al. v. Snap, Inc*., Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger obtained a settlement of $35 million for violation of Illinois' Biometric Information Privacy Act). In addition Mr. Klinger has obtained approval of a class-wide settlement valued at $17.6 million for a major data breach class action involving more than six million consumers. *See Carrera Aguallo v. Kemper Corp*., Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger served with Ms. Martin as two of 3 court appointed co-lead

counsel). In addition, Mr. Klinger reached a class-wide settlement for $11 million for a major data breach involving more than 4 million consumers. *See Heath v. Insurance Technologies Corp.*, No. 21-cv-01444 (N.D. Tex.). Mr. Klinger was also appointed Co-Lead Counsel in the data breach case of *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.), which involves approximately one million class members and settled on a class-wide basis for $4.35 million. Mr. Klinger further served as co-lead counsel in the consolidated data breach litigation styled *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.), which involves more than 2.4 million class members and settled on a class-wide basis for $4.75 million. Mr. Klinger presently serves as court appointed co-lead counsel to more than 2 million class members in the litigation styled *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.). Mr. Klinger also serves as appointed co-lead counsel to represent more than 3 million class members in another major data breach class action in the Seventh Circuit. S*ee In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.). Importantly, Mr. Klinger has obtained successful results on behalf of class members in this Court. In September of 2022, Mr. Klinger announced a class wide settlement of $3.7 million for a data breach involving approximately 2 million class members. *See In re Forefront Data Breach Litigation*, Master File No. 1:21-cv-00887-LA (E.D. Wi.). Simply put, Mr. Klinger and the attorneys at his law firm have substantial experience handling data security and data privacy cases like this one, including some of the largest data privacy litigation in the United States. *See, e.g.*, *In re: Blackbaud Data Privacy*, MDL No. 2972 (D. S.C.) (where Milberg serves as interim class counsel in a data breach involving millions of consumers); *Jackson-Battle v. Navicent Health, Inc.*, No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty. filed Apr. 29, 2020) (Mr. Klinger appointed Class Counsel in data breach case involving 360,000

patients; settlement valued at over $72 million); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo. Dec. 22, 2020) (Mr. Klinger appointed Class Counsel; settlement value of over $13 million). Mr. Klinger has also successfully litigated privacy class actions through class certification. *In Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id.* In a recent nationwide privacy class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel). A copy of Mr. Klinger's firm resume is attached as **Exhibit 2**.

c. <u>**Interim Lead Class Counsel:**</u> **John Yanchunis (Morgan & Morgan Complex Litigation Group)**

Mr. Yanchunis leads Morgan & Morgan's class action group. Morgan & Morgan is the largest Plaintiff's contingency-only law firm in the country, with over 900 lawyers throughout the United States. Its depth as a trial firm, and its self-funded financial resources, allow it to undertake the largest and most significant cases throughout the country. Mr. Yanchunis—whose career as a trial lawyer began over 41 years ago following the completion of a two-year clerkship with United States District Judge Carl O. Bue, Southern District of Texas (now deceased)—has efficiently and expeditiously led many privacy-related Multidistrict Litigation (MDL) and non-MDL class action proceedings, including as Lead or Co-Lead Counsel. He has focused his practice on class action litigation for over 28 years. He was admitted to practice in Texas in 1980 and in Florida in 1981.

As a result of his experience in insurance and complex litigation, beginning in 2005, he

was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigations of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers. He served as lead regulator counsel and worked with a core group of state Attorneys General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group. The litigation that was filed and the related investigations netted millions of dollars in restitution for Florida consumers and resulted in significant changes in the way commercial insurance is sold in Florida and across the country.

During his career, he has tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by the Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case pended, he served as lead counsel for several insurance companies, regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years beginning in 1992. He was also lead counsel for these parties in the subsequent appeals that followed a judgment in favor of his clients.

He began his work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc. Privacy Litigation,* 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the placement of cookies on hard drives of internet users. Beginning in 2003, he served as co-lead Counsel in the successful prosecution and settlement of privacy class action cases involving the protection of privacy rights of more than 200 million consumers under the Driver's

Protection Privacy Act (DPPA) against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). See *Fresco v. Automotive Directions, Inc.,* No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.). Subsequently, he served as co-lead Counsel in the DPPA class cases, *Davis v. Bank of America*, No. 05-cv-80806 (S.D. Fla.) ($10 million class settlement), and *Kehoe v. Fidelity Fed. Bank and Trust,* No. 03-cv-80593 (S.D. Fla.) ($50 million class settlement).

He has been appointed and served in leadership positions a number of multidistrict litigation in the area of privacy and data breaches: *In re: Capital One Consumer Data Security Breach Litigation,* No. 1:19-MD-2915-AJT (E.D. Va.)(Co-Lead)(final judgment entered approving $190, 000,000); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752-LHK (N.D. Cal.) ("Yahoo") (Lead Counsel) (final judgment approving $117,500,000.00); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.,* No. 1:14-md-02583-TWT (N.D. Ga.) (Co-Lead Counsel) (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of $29,025,000); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (final judgment entered approving $380.5 million fund for 145 million consumers ); *In re: U.S. Office of Personnel Management Data Security Breach Litigation,* 1:15-mc-01394-ABJ (D.D.C.) ("OPM") (member of the Executive Committee) (active litigation with approximately 22.5 million present and former federal employees); *In re Target Corp. Customer Data Sec. Breach Litig.,* MDL No. 2522 (D. Minn.) (Executive Committee member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers).

His court-appointed leadership experience in non-MDL, data breach class actions is likewise significant, and too numerous to list. A representative sample includes: *Schmidt, et al., v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal.) (Co-Lead Counsel) (class certified for 8 million members, subsequently settlement of the class was approved by the court) ; *Walters v. Kimpton Hotel & Restaurant,* No. 3:16-cv-05387 (N.D. Cal.) (Lead Counsel) (class action settlement final approval order entered July 11, 2019); and *In re: Arby's Restaurant Group, Inc. Data Security Litigation,* Nos. 1:17-cv-514 and 1:17-cv-1035 (N.D. Ga.) (co-Liaison Counsel) (final approval of a class settlement entered June 6, 2019); and *Jackson, et al., v. Wendy's International, LLC,* No. 6:16-cv-210-PGB (M.D. Fla.) (final approval of a class settlement entered February 26, 2019); *Henderson v. Kalispell Regional Healthcare*, No. CDV-19-0761 (Montana Eighth Judicial Court – Cascade County) (final approval of class settlement entered January 5, 2021); *In re: Citrix Data Breach Litigation*, No. 19-cv-61350 (S.D. Fla.) (preliminary approval of class action settlement entered on January 26, 2021); *Kuss v. American HomePatient, Inc.,* et al., 18-cv-2348 (M.D. Fla.) (final approval of class action settlement entered on August 13, 2020); *Fulton-Green v. Accolade, Inc*., 18-cv-274 (E.D. Pa.) (final approval of class action settlement entered September 23, 2019); *Nelson v. Roadrunner Transportation Systems, Inc.,* 18-cv-7400 (N.D. Ill.) (final approval of class action settlement entered September 15, 2020).

His experience in these major data breach matters extends far beyond simply briefing threshold issues and negotiating settlements. Rather, he has personally deposed dozens of corporate representatives, software engineers, cyber professionals and CISOs in major data breach cases such as Capital One, Yahoo, and Facebook.  In addition, he has defended experts used in these cases and also deposed defense liability and damage experts.  He has also been co-

lead in three data privacy class cases where the courts certified contested class certification motions. See, *Schmidt, et al., v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal. 2019); *Brown v. Google LLC*, No. 4:20-cv-03664-YGR (N.D. Cal.2022); and *Rodriguez v. Google, LLC*, No. 20-cv-04688-RS (N.D. Cal. 2023).

In 2023 and in data breach cases, Mr. Yanchunis obtained reversals of lower courts in the Eleventh Circuit and Second Circuit Court of Appeals: *Bohnal v. Marsh & McLennan Companies*, No. 22-310 (2d Cir. 2023); *Ramirez v. The Paradies Shops, LLC*, No. 22-12853-HH (11th Cir. 2023); and *Sheffler v. Americold Realty Trust*, No. 22-11789-CC (11th Cir. 2023). On December 7, 2023, he presented argument before the Fourth Circuit in *Ford v. Sandhills Med. Ctr.*, *Inc*., No. 22-2268 (4th Cir. 2023), a class case arising out of a data breach of a health care facility.

As result of his experience in the area of class litigation and ethics, he has served as an expert for The Florida Bar on ethical issues arising in class action litigation.

He is a frequent lecturer on privacy and class litigation nationally and internationally, including at international conferences in London, Amsterdam and Haifa, Israel and Mexico.

Mr. Yanchunis was recognized in 2020 for the second year in a row by Law360 as one of 4 MVPs in the area of Cybersecurity and Privacy, and received the same recognition in 2023. He was recognized as a Titan of the Plaintiffs Bar by Law360 in 2023.  Similarly, Mr. Yanchunis was recognized by the National Law Journal as its 2016 and 2020 Trailblazer in the Area of Cybersecurity & Data Privacy. In 2020, Mr. Yanchunis was named Florida Lawyer of the Year by the Daily Business Review for his work in privacy litigation, and in 2022, he was awarded the Best Mentor Award in the state of Florida.

Mr. Yanchunis has served demonstrated experience in leadership positions on many

professional committees and boards, most prominently as a member of the Board of Directors of The Florida Bar Foundation, a member of The Florida Board of Bar Examiners appointed by the Florida Supreme Court (5-year term, and he continues by appointment to date as an Emeritus Member), and an elected member for two terms to The Board of Governors of The Florida Bar. He has also served as an expert in ethical issues in class litigation for The Florida Bar in disciplinary proceedings.

In his profession, he received the Florida Bar Foundation President's Award of Excellence, the Public Justice Impact Change Award, and The Florida Bar Elder Law Section Chair's Honor Award for his work in representing a class of elderly indigent Floridians on Medicaid in a suit against the State of Florida, which resulted in an increase in the benefits to class members.

Mr. Yanchunis has been recognized as a Super Lawyer for almost 2 decades and is AV rated by Martindale Hubbell.

A copy of Mr. Yanchunis' firm resume is attached hereto as **Exhibit 3.**

d.  <u>**Texas Local Counsel**</u>**: Joe Kendall (Kendall Law PLLC)**

Joe Kendall is a former United States District Judge in the Northern District of Texas, appointed to the bench by President George H.W. Bush in 1992. Before his federal judicial service, Joe spent 5 ½ years as a Texas State District Court Judge. Before ascending to the bench, he practiced as a trial lawyer representing individuals and corporations in complex cases, in both Texas state and federal courts.  Since leaving the bench, he now represents alone, as co-counsel or as local counsel, individuals, pension funds, corporations, and other entities in class action litigation in both state and federal courts.

As a practicing lawyer, he has personally tried numerous jury trials to verdict and has

participated in many significant cases resulting in the recovery of well in excess of 1 billion dollars.  He has served as lead and co-lead counsel in class actions and frequently serves as local counsel for out of state lawyers, all over Texas.  He is admitted to all four U.S. District Courts in Texas. A copy of Joe Kendall's firm resume is attached hereto as **Exhibit 4**.

Based on his experience in class action and complex litigation cases, Mr. Kendall is qualified to assist the Plaintiffs in this matter as Texas Local Counsel.

e.  **Texas Local Counsel: Bruce W. Steckler (Steckler Wayne & Love PLLC)**

Bruce Steckler is known as an aggressive advocate willing to take innovative approaches to achieve success for his clients. His legal acumen has won him recognition by D Magazine's "Best Lawyers" in 2007 through 2023, D Magazine's "Best Lawyers under 40" feature in 2002 through 2006, and Thompson Reuters as a "Texas Super Lawyer" in 2004 through 2023. He was just recently designated a D Magazine "Best Lawyer Legend" for being consistently recognized as a top lawyer for over 15 years. Mr. Steckler enjoys an "AV Preeminent" rating by Martindale-Hubbell Law Directory, its highest peer rating. His $21 million dollar verdict in Dallas County in 2022 was one of the largest medical malpractice verdicts in the State of Texas. Several of his cases have been featured on the NBC Nightly News, CBS News, ABC News, CNN, Univision, and Fox News, as well as the *Dallas Morning News* and *New York Post*.

Mr. Steckler has also been named one of the "Top 100 Trial Lawyers" by the National Trial Lawyers from 2013 through 2023, was named a "2015 Top Rated Lawyer in Insurance Law" by American Lawyer Media and Martindale-Hubbell Law Directory, selected to join the American Institute of Trial Lawyers Litigator of the Year and named as one of the Top 100 Trial Lawyers in America in 2015-2022. Bruce was recognized in 2020

for receiving one of the Top 10 Settlements in Illinois for his settlement in Hansen-Mitchell, et al. v Welspun USA, Inc. et al. Most recently, he was again recognized in the 27th edition of The Best Lawyers in America and his firm named one of the Best Law Firms in Texas by U.S. News & World Report. He was named a finalist for Public Justice Trial Lawyer of the Year 2012, an honor that is awarded to the attorneys who "made the greatest contribution to the public interest within the past year by trying or settling a precedent-setting or socially significant case." He was selected for the Plaintiff's Hot List in 2011 by the National Law Journal.

Most recently, Mr. Steckler has handled two of the largest data-breach privacy cases in North Texas as local counsel in *Kosta v. Dickey's Barbeque Restaurants, Inc. et al* Consolidated Case No. 3:20-cv-3424-K, where he was selected by the Honorable Judge Ed Kinkeade as liaison counsel, and he was selected co-lead counsel by the Honorable Judge Bridgett Whitmore of the 193rd Judicial District Court of Dallas County, Texas *In re: Tenet Healthcare Corporation Data Breach Litigation*. In addition, he is currently lead counsel in two ongoing data breach privacy cases pending in the Western District of Texas.

A copy of Mr. Steckler's curriculum vitae is attached as **Exhibit 5**. In addition, Mr. Steckler has the honor of working with the Honorable Judge Paul Stickney (retired), who served as Magistrate Judge of the Northern District of Texas for twenty (20) years, who is now Of Counsel to his law firm and will be working with him on this matter.

   **3. Proposed Leadership Counsel have and will continue to devote sufficient resources to this case.**

The resources that Proposed Leadership Counsel have already committed and will continue to commit to the case also strongly supports the appointment of Proposed Leadership Counsel. As demonstrated above, Proposed Leadership Counsel and their firms' resources are not merely

financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Leadership Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Leadership Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Leadership Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as their firm résumés and counsels' experience indicate, Proposed Leadership Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Leadership Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the class.

### 4. Additional Factors Supporting Formal Designation of Proposed Leadership Counsel

Plaintiffs and their counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Leadership Counsel. Notably, the proposed leadership structure has the support of all Plaintiffs and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed

by the parties themselves, through their counsel."); *Manual for Complex Litigation* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Indeed, after their cases were filed, Proposed Leadership Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay attendant with potential multi-district litigation proceedings due to the egregious nature of Defendant's unlawful conduct. Proposed Leadership Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See Manual for Complex Litigation* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.* Nowhere could

these sentiments be more accurate than among the counsel proposed for Proposed Leadership Counsel. In other words, Proposed Leadership Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Leadership Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing. As mentioned above, if appointed, Proposed Interim Class Counsel will establish a protocol for regular time and expense reporting to monitor and manage the efficient prosecution of this action.

## CONCLUSION

For these reasons, Coordinated Plaintiffs request the Court consolidate the Related Actions into the first filed action (Civil No. 1:23-cv-01557) for all pretrial purposes, excluding trial, and appoint Bryan L. Bleichner of Chestnut Cambronne PA, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and John Yanchunis of Morgan & Morgan Complex Litigation Group, as Interim Class Counsel; and Joe Kendall of Kendall Law Group, PLLC and Bruce W. Steckler of Steckler Wayne & Love PLLC as Texas Local Counsel. The Coordinated Plaintiffs will contemporaneously file a Proposed Order for the Court's consideration.

Dated: January 9, 2024                    Respectfully submitted,

                                          */s/ Joe Kendall*
                                          JOE KENDALL
                                          Texas Bar No. 11260700
                                          **KENDALL LAW GROUP, PLLC**
                                          3811 Turtle Creek Blvd., Suite 825
                                          Dallas, Texas 75219
                                          Phone: 214-744-3000
                                          Fax: 214-744-3015
                                          jkendall@kendalllawgroup.com

                                          *Counsel for Plaintiffs Jones, Claybo, Guiffre,
                                          Todd and Proposed Texas Local Counsel for
                                          the Putative Class*

                                          Bryan L. Bleichner*
                                          Philip Krzeski*
                                          **CHESTNUT CAMBRONNE PA**
                                          100 Washington Avenue South, Suite 1700
                                          Minneapolis, MN 55401
                                          Phone: (612) 339-7300
                                          Fax: (612) 336-2940
                                          *bbleichner@chestnutcambronne.com*
                                          *pkrzeski@chestnutcambronne.com*

                                          *Counsel for Plaintiff Jones and the Putative
                                          Class*

                                          Gary M. Klinger*
                                          **MILBERG COLEMAN BRYSON
                                          PHILLPS GROSSMAN PLLC**
                                          227 W. Monroe Street, Suite 2100
                                          Chicago, IL 60606
                                          Phone: (866) 252-0878
                                          glkinger@milberg.com

                                          *Counsel for Plaintiff Claybo and the Putative
                                          Class*

                                          Kevin Laukaitis*
                                          **LAUKAITIS LAW LLC**
                                          954 Avenida Ponce De Leon
                                          Suite 205, #10518
                                          San Juan, PR 00907
                                          Phone: (215) 789-4462

29

klaukaitis@laukaitislaw.com

*Counsel for Plaintiff Guiffre*

Bruce W. Steckler
Texas Bar No. 00785039
Paul D. Stickney, Of Counsel
Texas Bar No. 00789924
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@swclaw.com
judgestick@gmail.com

*Counsel for Plaintiffs Love, Smith, and Smith*

John A. Yanchunis
Texas Bar NO. 22121300
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 318-5189
Fax: (813) 222-2496
jyanchunis@ForThePeople.com

*Counsel for Plaintiff Love*

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Phone: 313-621-2000
Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Counsel for Plaintiffs Smith and Smith*

M. Anderson Berry*
**CLAYEO C. ARNOLD, A
PROFESSIONAL CORPORATION**
865 Howe Avenue

30

Sacramento, CA 95825
Phone: (916) 239-4778
Fax: (916) 924-1829
aberry@justice4you.com

*Counsel for Plaintiff Todd*

Terence R. Coates*
Spencer D. Campbell*
**MARKOVITS, STOCK & DE MARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com
scampbell@msdlegal.com

*Counsel for Plaintiff Todd*

*\*Pro Hac Vice Application Forthcoming*

## CERTIFICATE OF CONFERENCE

I certify that on January 8, 2024, counsel for Plaintiffs conferred with counsel for Defendant regarding the substance of this motion and they stated that the Defendant does not oppose consolidation and takes no position on the appointment of Interim Class Counsel.

 */s/ Joe Kendall*
JOE KENDALL

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2024, I caused a true and correct copy of the foregoing motion to be filed with the Clerk of the Court for the Western District of Texas via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

*/s/ Joe Kendall*
JOE KENDALL