**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
| **IN RE ESO SOLUTIONS, INC.** | § | **Case No. 1:23-cv-01557-RP** |
| **BREACH LITIGATION** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS**
**ACTION COMPLAINT**

COMES NOW Defendant ESO Solutions Inc. (hereinafter "ESO") to file this Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint, pursuant to Fed. R. Civ. P. 12b(1) and 12b(6), for lack of standing and for failure to state a claim upon which relief may be granted, and in support thereof, respectfully shows the Court as follows:

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION & SUMMARY OF ARGUMENTS.................................................. iii

II.   STATEMENT OF RELEVANT FACTS .................................................................1

IV.  STANDARD OF REVIEW .................................................................................2

    A.    Federal Rule of Civil Procedure 12(b)(1) Standard..................................................2

    B.    Federal Rule of Civil Procedure 12(b)(6) Standard..................................................3

V.   ARGUMENT ..................................................................................................4

    A.    Plaintiffs Lack Article III standing and the Consolidated Complaint must be   dismissed pursuant to FRCP 12(b)(1). ...................................................4

        1.    Plaintiffs fail to properly allege any injuries; therefore, Plaintiffs' Consolidated Complaint fails to establish subject matter jurisdiction.................................................................4

            (a)    A mere risk of future harm is not a concrete injury........................4

            (b)    Plaintiffs' claims for diminished value of PII do not constitute an injury in    fact...........................................6

            (c)    Plaintiffs' claims for mitigation expenses and lost time are insufficient to  establish an injury in fact.........................7

            (d)    Plaintiffs' claims for loss of benefit of the bargain are insufficient to establish an injury in fact.........................8

            (e)    Plaintiffs' claims for actual misuse and theft of their Private Information are insufficient to establish an injury in fact..............10

        2.    Plaintiffs fail to properly trace their alleged injuries to the Data Security Incident; therefore this Court lacks subject matter jurisdiction. ..................................................................13

    B.    Plaintiffs' Amended Consolidated Complaint fails to state a claim upon which relief can be granted................................................................15

        1.    Plaintiffs' negligence claim fails as a matter of law..................................15

            (a)    ESO owed no duty to the Plaintiffs..................................15

            (b)    Plaintiffs' allegations demonstrate no proximate cause. ...............16

            (c)    Plaintiffs have not alleged sufficient damages............................17

        2.    Plaintiffs' negligence *per se* claim fails as a matter of law. ......................18

        3.    Plaintiffs' breach of third-party beneficiary contract claim fails as a matter of law. .................................................................19

        4.    Plaintiffs' unjust enrichment claim fails as a matter of law. .....................20

5.    Plaintiffs' Violation of the Florida Deceptive and Unfair Trade Practice Act fails a matter of law..........................................................23

6.    Plaintiffs' Violation of the North Carolina Deceptive and Unfair Trade Practice Act fails as a matter of law. ................................................26

7.    Plaintiffs' Violation of the New York Deceptive and Unfair Trade Practice Act fails as a matter of law..........................................................28

VI.    CONCLUSION....................................................................................................30

## INDEX OF AUTHORITIES

### **Statutes**

Fla. Stat. §§ 501.201 ("FDUTPA") .............................................................................. 23

N.C. Gen. Stat. Ann § 75-1.1 ("NCUDTPA") ............................................................. 26

New York Gen. Bus. Law § 349 ("NYGBL") .............................................................. 28

### **Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1,3

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 3

### **Cases**

*Acara v. Banks*,
    470 F.3d 569 (5th Cir. 2006) ................................................................................ 18

*Almon v. Conduent Bus. Servs., LLC*,
    No. SA-19-CV-01075-XR, 2022 WL 902992 (W.D. Tex. Mar. 25, 2022)................... 4, 13, 17

*Argyle Indep. Sch. Dist. ex rel. Bd. of Trustees v. Wolf*,
    234 S.W.3d 229 (Tex. App.—Fort Worth 2007, no pet.). ...................................... 21

*Armstrong v. Southwest Airlines Co.*,
    No. 3:20-CV-3610-BT, 2021 WL 4391247 (N.D. Tex. Sept. 24, 2021)................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................. 3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................. 3

*Bell v. Campbell*,
    434 S.W.2d 117 (Tex. 1968)................................................................................ 17

*Benchmark Elecs. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir.2003) ................................................................................ 23

*Bledsoe v. FCA US LLC*,
    663 F. Supp. 3d 753  (E.D. Mich. 2023)............................................................... 28

*Campbell v. Facebook, Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................................... 6

*Carey v. Pure Distrib. Corp.*,

    124 S.W.2d 847 (Tex. 1939)..................................................................... 17

*Carico Invs., Inc. v. Texas Alcoholic Beverage Comm'n*,

    No. CV H-03-5532, 2005 WL 8164504 (S.D. Tex. Aug. 25, 2005) ........................ 13

*Carlton v. Allstate Prop. & Cas. Ins. Co.*,

    551 F. Supp. 3d 663 (E.D. La. 2021)........................................................... 22

*Carpenter v. Arredondo*,

    No. SA-16-CA-00188-XR, 2017 WL 8948612 (W.D. Tex. Feb. 1, 2017) ............. 18

*Carriuolo v. Gen. Motors Co.*,

    823 F.3d 977 (11th Cir. 2016) .................................................................. 23

*Chambliss v. Carefirst*, Inc,

    189 F. Supp. 3d 564 (D. Md. 2016). ........................................................... 9

*Clapper v. American Realty Investors, Inc.*,

    No. 2019 WL 5865709 (N.D. Tex. Nov. 7, 2019).................................................. 21

*Clapper v. Amnesty Int'l USA*,

    568 U.S. 398 (2013)..................................................................... 4, 5, 7, 8

*Corpus Christi Bank & Trust v. Smith*,

    525 S.W.2d 501 (Tex.1975)..................................................................... 19

*Cox v. Valley Hope Ass'n*,

    No. 2:16-CV-04127-NKL, 2016 WL 4680165 (W.D. Mo. Sept. 6, 2016)................. 9

*Dennis v. U.S. Postal Serv.*,

    564 F. App'x 85 (5th Cir. 2014)................................................................. 19

*Doe 1 v. Baylor Univ.*,

    240 F. Supp. 3d 646,  (W.D. Tex. 2017)...................................................... 15

*Doe v. Apostolic Assembly of Faith in Christ Jesus*,

    452 F. Supp. 3d 503 (W.D. Tex. 2020)........................................................ 15

*Doe v. Boys Clubs of Greater Dallas, Inc.*,

    907 S.W.2d 472 (Tex. 1995)..................................................................... 17

*Doe v. Harrison Cnty., Texas*,

    No. 2:19-CV-00254-RSP, 2021 WL 3128650 (E.D. Tex. July 23, 2021).......... 16, 17

*Doe v. MySpace, Inc.*,

474 F. Supp. 2d 843 (W.D. Tex. 2007)....................................................................... 16

*Elephant Ins. Co. v. Kenyon*,
644 S.W.3d 137 (Tex. 2022)................................................................................... 15

*Ellis v. Cargill Meat Sols.*,
No. 4:22-CV-864-Y, 2023 WL 9547632 (N.D. Tex. Oct. 31, 2023) ..................... 4, 6

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.*,
No. 15-CV-02129-MSK-NYW, 2016 WL 8578096 (D. Colo. June 20, 2016)......... 9

*Fishon v. Peloton Interactive, Inc.*,
No. 19-CV-11711 (LJL), 2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020)................. 29

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ....................................................................... 29

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
774 N.E.2d 1190 (N.Y. 2002)................................................................................ 29

*Greater Hous. Transp. Co. v. Phillips*,
801 S.W.2d 523 (Tex. 1990).................................................................................. 15

*Green v. eBay Inc.*,
No. CIV.A. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015).................. passim

*Hancock v. Chi. Title Ins. Co.*,
635 F. Supp. 2d 539 (N.D. Tex. 2009) ................................................................. 21

*Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*,
480 S.W.2d 607 (Tex. 1972).................................................................................. 22

*Hill v. AQ Textiles LLC*,
582 F. Supp. 3d 297 (M.D.N.C. 2022) .................................................................. 26

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
No. CV 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ............. 24, 26, 29

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ................................................................. 30

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
567 F. Supp. 3d 667 (D.S.C. 2021)....................................................................... 19

*In re Brinker Data Incident Litigation*,
No. 3:18-CV-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ........... 25

*In re Facebook Privacy Litig.*,

791 F. Supp. 2d 705 (N.D. Cal. 2011) ...................................................................... 6

*In re iPhone Application Litig.*,

844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................... 6

*In re Legendary Field Exhibitions, LLC*,

No. 19-50900-CAG, 2023 WL 7852657 (Bankr. W.D. Tex. Nov. 13, 2023) ......................... 21

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,

603 F. Supp. 3d 1183 (S.D. Fla. 2022) ..................................................... 24, 26, 27

*In re NE 40 Partners, Ltd. P'ship*,

440 B.R. 124 (Bankr. S.D. Tex. 2010) ...................................................................... 23

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,

613 F. Supp. 3d 1284 (S.D. Cal. 2020) .................................................................... 26

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,

996 F. Supp. 2d 942 (S.D. Cal. 2014) ..................................................... 24, 26

*In re Zappos*,

108 F. Supp. 3d 949 (D. Nev. 2015) ........................................................................ 9

*Johansson v. Emmons*,

No. 609-CV2053-ORL-19KRS, 2010 WL 457335 (M.D. Fla. Feb. 4, 2010) ......................... 6

*Kostka v. Dickey's Barbecue Restaurants, Inc.*,

No. 3:20-CV-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ........................ 3, 4, 13

*Lambert v. Hartman*,

517 F.3d 433 (6th Cir. 2008) .................................................................................. 6

*Low v. LinkedIn Corp.*,

900 F. Supp. 2d 1010 (N.D. Cal 2012) ..................................................................... 6

*Lozano v. Baylor Univ.*,

No. 6:16-CV-403-RP, 2017 WL 4324704 (W.D. Tex. Sept. 28, 2017) .................................. 16

*Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992) ............................................................................................... 2

*Max-George v. Equifax Info. Servs LLC*,

No. 9:19CV223, 2022 WL 1788784 (E.D. Tex. June 1, 2022) ................................................ 4

*Max-George v. Oath, Inc.*,

No. 9:20CV237, 2022 WL 2307387 (E.D. Tex. June 27, 2022) ............................................... 4

*McCumber v. Invitation Homes, Inc.*,

    No. 3:21-CV-2194-B, 2022 WL 1747855 (N.D. Tex. May 31, 2022) .............................. 23, 24

*MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*,

    995 S.W.2d 647 (Tex. 1999) ......................................................................................... 19, 20

*Medoff v. Minka Lighting, LLC*,

    No. 222CV08885SVWPVC, 2023 WL 4291973 (C.D. Cal. May 8, 2023) ............................ 30

*Middaugh v. InterBank*,

    528 F. Supp. 3d 509 (N.D. Tex. 2021) ..................................................................................... 21

*MJR Corp. v. B & B Vending Co.*,

    760 S.W.2d 4 (Tex. App. 1988) ................................................................................................ 20

*Nabors Drilling, U.S.A., Inc. v. Escoto*,

    288 S.W.3d 401 (Tex. 2009) ..................................................................................................... 15

*Nixon v. Mr. Prop. Mgmt. Co.*,

    690 S.W.2d 546 (Tex.1985) ...................................................................................................... 18

*Norwood v. United Med. Recovery, LLC*,

    No. 4:21-CV-134-DMB-JMV, 2022 WL 4088081 (N.D. Miss. Sept. 6, 2022) ........................ 8

*Palmer v. Wiley Coll.*,

    No. 218CV00440JRGRSP, 2019 WL 12498123 (E.D. Tex. Sept. 6, 2019) ............................ 16

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,

    45 F.4th 816 (5th Cir. 2022) .................................................................................................. 7, 8

*Peters v. St. Joseph Servs. Corp.*,

    74 F. Supp. 3d 847 (S.D. Tex. 2015) ............................................................................. passim

*Plotkin v. Joekel*,

    304 S.W.3d 455 (Tex. App. 2009) ............................................................................................ 22

*Ray v. CarMax Auto Superstores, Inc.*,

    No. SA-06-CA-366-OG, 2007 WL 9710494  (W.D. Tex. Sept. 27, 2007). ............................. 16

*Rollins, Inc. v. Butland*,

    951 So. 2d 860 (Fla. Dist. Ct. App. 2006) .............................................................................. 24

*Ruiz v. Gap, Inc.*,

    540 F. Supp. 2d 1121 (N.D. Cal. 2008) .................................................................................... 6

*S. Christian Leadership Conf. v. Supreme Ct. of State of La.*,

   252 F.3d 781 (5th Cir. 2001). ........................................................................... 11, 13

*Schnurr v. Preston*,

   No. 5:17-CV-512-DAE, 2018 WL 8140949 (W.D. Tex. Jan. 26, 2018) ................................. 22

*Simon v. E. Kentucky Welfare Rts. Org.*,

   426 U.S. 26 (1976). ........................................................................................ 13

*Spokeo, Inc. v. Robins*,

   578 U.S. 330 (2016) ......................................................................................... 2

*Strange v. Wal-Mart Inc.*,

   No. CV 18-0325, 2018 WL 2269919 (W.D. La. May 16, 2018) ................................. 7

*Strautins v. Trustwave Holdings, Inc.*,

   27 F.Supp.3d 871 (N.D.Ill.2014) ............................................................................. 5

*Stross v. Redfin Corp.*,

   730 App'x 198 (5th Cir. 2018) ............................................................................ 19

*Tawes v. Barnes*,

   340 S.W.3d 419 (Tex. 2011) ................................................................................ 19

*Taylor v. Westly*,

   488 F.3d 1197 (9th Cir. 2007) ............................................................................. 30

*Toca v. Tutco, LLC*,

   430 F. Supp. 3d 1313 (S.D. Fla. 2020) .................................................................. 23

*TransUnion LLC v. Ramirez*,

   141 S. Ct. 2190 (2021) ................................................................................... 3, 7

*Walker v. Harris*,

   924 S.W.2d 375 (Tex. 1996) ............................................................................... 16

*Wal-Mart Stores, Inc. v. Xerox*,

   663 S.W.3d 569 (Tex. 2023) ............................................................................... 19

*Walters v. Blue Cross & Blue Shield of Texas, Inc.*,

   No. 3:21-CV-981-L, 2022 WL 902735 (N.D. Tex. Mar. 28, 2022) ................................. 18, 19

*Williams v. WMX Techs., Inc.*,

   112 F.3d 175 (5th Cir.1997) ............................................................................... 23

*Youngblood v. Zaccaria*,

608 S.W.3d 134 (Tex. App. 2020) ............................................................................. 30

## I.     INTRODUCTION & SUMMARY OF ARGUMENTS

The Consolidated Complaint alleges that ESO "fail[ed] to properly secure and safeguard the sensitive information that it collected and maintained as part of its regular business practices, including, but not limited to: medical treatment information, which is protected health information [('PHI')]…as well as names, phone numbers, address, and in some cases, Social Security numbers [('PII'), collectively with PHI, "Personally Identifiable Information")]." *See* Consolidated Complaint, at ¶ 3. Plaintiffs propose one class and three subclasses. *Id.,* at ¶ 218-221. The Consolidated Complaint alleges the total number of persons affected by the Data Security Incident as 2.7 million people. *Id.*, at ¶ 224. As discussed in further detail below, ESO moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiffs' Consolidated Complaint for lack of Article III standing. In the alternative, ESO moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss each of Plaintiffs' claims for failure to state a claim for which relief can be granted.

## II.     STATEMENT OF RELEVANT FACTS

Plaintiffs allege that ESO "provides software services that help hospitals and healthcare systems improve operations, quality, and patient outcomes." *See* Consolidated Complaint, at ¶¶ *Id.,* at ¶ 2. Plaintiffs allege that ESO received Plaintiffs' Private Information "through a contract with a medical service provider from whom Plaintiff…has received care" and that "as a condition of obtaining medical service from ESO's client, Plaintiffs…were required to provide Defendant, directly or indirectly with [their] Private Information, including [their] name, address, phone number, and other sensitive information." *Id.,* at ¶¶ 160-161, 172-173, 184-185, 195-196, 208-209; *see also Id.*, at ¶¶ 148-149. Plaintiffs allege they received notice of the Data Security Incident between December 12, 2023 through January 10, 2024, via the Breach Letter, that on September 28, 2023, ESO detected and stopped a sophisticated ransomware incident, in which an

unauthorized third party accessed and encrypted some of ESO's computer systems. (the "Data Security Incident') *Id*., at ¶ 35. Plaintiffs allege that as a result of the Data Security Incident, they have sustained actual injuries and damages, including: "(i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages: and (ix) the present and continuing risk to their Private Information…" Id., at ¶115. Finally, Plaintiff Simpson alleges that he was a victim "*from a previous breach* [emphasis added] and his accounts are frozen" and Plaintiff Todd alleges her "credit monitoring service, Norton Lifelock, has alerted her that her name, email, and phone number was on the dark web in the *months before she was in receipt of the data breach letter* [emphasis added]." *Id*., at ¶177, ¶206.

## IV.     STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1) Standard.

A United States District Court has subject matter jurisdiction only where the plaintiff has "[s]tanding to sue" under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016). Plaintiffs bear the burden of adequately pleading standing, pursuant to Article III of the Constitution, in order to state a claim for relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).To satisfy Article III's standing requirements, (1) "the plaintiff must have suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury must be "fairly traceable" to the challenged conduct of the defendant, and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. 555, 560-61; *Spokeo,* 578 U.S. 330, 338-39. "And standing is not dispensed in gross; rather,

plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "[E]very class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-CV-03424-K, 2022 WL 16821685, at *3 (N.D. Tex. Oct. 14, 2022), report and recommendation adopted, No. 3:20-CV-03424-K, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); quoting *TransUnion*, 141 S. Ct. 2190, 2208.

### B.    Federal Rule of Civil Procedure 12(b)(6) Standard.

Pursuant to Fed. R. Civ. P. 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…" *Id.*, at 555 (internal citations omitted). Legal conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Id., at* 678 (2009) (*quoting Twombly*, 550 U.S. 544, 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Twombly*, 550 U.S. 544, 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (*quoting Twombly*, 550 U.S. 544, 557).

## V.    ARGUMENT

### A.    Plaintiffs Lack Article III standing and the Consolidated Complaint must be dismissed pursuant to FRCP 12(b)(1).

1.    <u>Plaintiffs fail to properly allege any injuries; therefore, Plaintiffs' Consolidated Complaint fails to establish subject matter jurisdiction.</u>

Since the Supreme Court's 2021 landmark decision of *TransUnion*, Courts within the Fifth Circuit have continuously favored dismissal of complaints for failure to sufficiently allege a concrete injury necessary to confer Article III standing as an injury must be real, and not abstract. *See Ellis v. Cargill Meat Sols*., No. 4:22-CV-864-Y, 2023 WL 9547632, at *5 (N.D. Tex. Oct. 31, 2023); *Green v. eBay Inc*., No. CIV.A. 14-1688, 2015 WL 2066531, at *6 (E.D. La. May 4, 2015).[1]

*(a)    A mere risk of future harm is not a concrete injury.*

Plaintiffs cannot "manufacture" standing by inflicting harm on themselves based on fears of hypothetical, unsubstantiated, or speculative future harm that is not certainly impending, even if the fear is not fanciful, irrational, or clearly unreasonable. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416-19 (2013); *see also Kostka*, 2022 WL 16821685, at *4. In *Peters*, the Court analyzed "whether the heightened risk of a future identity theft/fraud posed by a data security breach confers Article III standing on persons whose information may have been accessed." *Peters v. St. Joseph Servs. Corp.,* 74 F. Supp. 3d 847, 849 (S.D. Tex. 2015). There, the plaintiff claimed that the increased risk she faces of future identity theft/fraud constitutes "imminent" injury by invoking Federal Trade Commission and the United States Government Accountability Office authority to

---

[1] *See also Max-George v. Oath, Inc*., No. 9:20CV237, 2022 WL 2307387, at *1 (E.D. Tex. June 27, 2022), appeal dismissed, No. 23-40253, 2023 WL 7180619 (5th Cir. July 11, 2023); *Max-George v. Equifax Info. Servs LLC*, No. 9:19CV223, 2022 WL 1788784, at *1 (E.D. Tex. June 1, 2022); *Peters v. St. Joseph Servs. Corp*., 74 F. Supp. 3d 847, 856 (S.D. Tex. 2015); *Almon v. Conduent Bus. Servs., LLC*, No. SA-19-CV-01075-XR, 2022 WL 902992, at *23 (W.D. Tex. Mar. 25, 2022);

argue "that savvy thieves could potentially use her personal information to: drain her bank account(s); make charges on her credit card(s) or on new cards fraudulently opened in her name; obtain false identification cards; perpetrate tax, medical and insurance fraud; or develop phishing schemes over the internet. *Id.*, at 854. And that if such activity could go undetected for years and cause "significant harm to [her] credit rating and finances." *Id.* Yet, the Court found that the "plaintiff's alleged future injuries are speculative—even hypothetical—but certainly not imminent" and that her theory of standing relied "on a highly attenuated chain of possibilities." *Id.*, quoting *Clapper*, 133 S.Ct. 1138, 1148. *Peters* further held that "the future injuries alleged in this case fail for the same reasons the injuries in *Lujan* and *Clapper* were rejected by the Supreme Court." *Id.* "The allegation that risk has been increased does not transform that assertion into a cognizable injury. In fact, as one district court has observed, '*Clapper* seems rather plainly to reject the premise ... that any [emphasis added] marginal increase in risk is sufficient to confer standing.'" *Id.*, at 855; *quoting Strautins v. Trustwave Holdings, Inc.*, 27 F.Supp.3d 871, 878 (N.D.Ill.2014). Furthermore, "courts nonetheless have found that the mere risk of identity theft is insufficient to confer standing, even in cases where there were actual attempts to use the stolen information [emphasis added]." *Green*, 2015 WL 2066531, at *4 (E.D. La. May 4, 2015).

Here, Plaintiffs devote an entire section within the Consolidated Complaint to explaining that "the data breach increases Plaintiffs' & Class Members' risk of identity theft. *See* Consolidated Complaint, at ¶ ¶ 116 – 125. However, the Fifth Circuit has unequivocally held that the mere fact that Plaintiffs' data was part of the Data Security Incident does not constitute a concrete injury. *See Peters*, 74 F. Supp. 3d 847, 858; *Green*, 2015 WL 2066531, at *6. By their own admission, Plaintiffs assert merely a potential rather than an actual harm. The potential for injury based on the

supposition that their Personal Information has been improperly utilized is not a concrete injury in the post-*TransUnion* world .[2]

        (b)      *Plaintiffs' claims for diminished value of PII do not constitute an injury in fact.*

The Fifth Circuit and federal courts throughout the country have consistently rejected the idea that individuals have an inherent property right in their personal information, or that said information has any independent monetary value. *See Ellis*, 2023 WL 9547632, at *5. In fact, the Court in *Ellis* rejected the notion that plaintiff suffered an injury in fact where he alleged a loss in value of his personal information. *See Id.*. This holds especially true where a plaintiff "avers no further factual detail as to how the value of his information was diminished." *Id.* Here, Plaintiffs allege that as a result of the data security incident, their Private Information "has been damaged" and the "transfer of value occurred without any consideration paid…"*See* Consolidated Complaint, at ¶ 137. Plaintiffs' allegations are a red herring however, as they are trying to group together two separate and distinct concepts, consideration and market value. Whether or not Plaintiffs were allegedly entitled to compensation does not correlate with loss in market value as to their Personal Information. Furthermore, while Plaintiffs try to create a market value for their Personal Information, Plaintiffs have wholly failed to establish any of the minimum necessary elements to support their allegations of diminished value related to their Personal Information. To wit, there are no allegations indicating that Plaintiffs have attempted to sell their Personal Information, plan

---

[2] *See also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), aff'd 572 F. App'x 494 (9th Cir.2014); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal 2012); *Lambert v. Hartman*, 517 F.3d 433, 445 (6th Cir. 2008); *Johansson v. Emmons*, No. 609-CV2053-ORL-19KRS, 2010 WL 457335, at *6 (M.D. Fla. Feb. 4, 2010).

to sell their Personal Information in the future, or were foreclosed from entering into a transaction related to their Personal Information. Here, Plaintiffs make the same allegations as the plaintiff in *Ellis,* which the court rejected. *See* Consolidated Complaint, at ¶ 137. Additionally, some Plaintiffs, including Plaintiff Simpson, were victims of a previous data breach. *See* Consolidated Complaint at ¶177. As such, even assuming a data security incident has the potential to reduce the value of Personal Information, Plaintiffs' Personal Information was already diminished via a prior, non-related data security incident.

> ### (c)    Plaintiffs' claims for mitigation expenses and lost time are insufficient to establish an injury in fact.

"Mitigation expenses do not qualify as injury-in-fact when the alleged harm is not imminent." *Green, 2015 WL 2066531, at \*5; citing Clapper*, 133 S.Ct. 1138, 1155. "Therefore,…allegations relating to costs already incurred or that may be incurred to monitor against future identity theft or identity fraud likewise fail to constitute injury-in-fact for standing purposes." *Id.* Furthermore, lost time does not confer an injury-in-fact to establish standing. *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022). In *Perez*, the Court held that the plaintiff "doesn't offer a common-law analog to the time-based injury she claims to have suffered. In other words, she has not met her "burden [to] demonstrate[e] that [she has] standing" based on that theory. *Id., quoting TransUnion*, 141 S. Ct. 2190, 2207. "Besides, we are not aware of any tort that makes a person liable for wasting another's time." *Id.*.[3]

Here, Plaintiffs allege they have suffered injuries in the form of "lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach." *See*

---

[3] *see also Norwood v. United Med. Recovery, LLC,* No. 4:21-CV-134-DMB-JMV, 2022 WL 4088081, at \*5 (N.D. Miss. Sept. 6, 2022) ; *Strange v. Wal-Mart Inc*., No. CV 18-0325, 2018 WL 2269919, at \*3 (W.D. La. May 16, 2018).

Consolidated Complaint, at ¶ 115. However, as explained in *Perez*, *Norwood*, and *Strange*, lost time is insufficient to convey Article III standing. *See Perez*, 45 F.4th 816, 825; *Norwood*, 2022 WL 4088081, at *5. Furthermore, Plaintiffs allege that they "are at an increased **<u>risk</u>** [emphasis added] of fraud and identity theft for many years in the future… The retail cost of credit monitoring and identity theft can cost around $200 a year per Class Member. This is a reasonable and necessary cost for monitoring to protect Class Members from the **<u>risk</u>** [emphasis added] of identity theft that arose from Defendant's Data Breach." *See* Consolidated Complaint, at ¶ 146. Plaintiff's do not claim damages for actual expenses related to the Data Security Incident. In contrast, they claim damages for "future costs" premised on a "risk" of fraud and identity theft. As explained above, future risk is not enough to conjure an injury-in-fact. Also, as explained in *Green* and *Clapper*, mitigation expenses do not qualify as injury-in-fact when the alleged harm is not imminent. *See Green*, 2015 WL 2066531, at *5; *Clapper*, 133 S.Ct. at 1155 As explained below, the alleged harm here is not imminent because there are no allegations or evidence to suggest Plaintiffs' Personal Information is being used by an unauthorized third party. Other than Plaintiff Todd trying to connect a single vague instance of unauthorized charges on her Amazon account to the Data Security Incident, she has not alleged that the Data Security Incident posed any imminent threat of identity theft to him or to any class member. The remaining lead Plaintiffs have not met their burden either, since their allegations are merely that they spent time addressing the Data Security Incident without articulating any real and/or imminent identity theft.

> (d)     *Plaintiffs' claims for loss of benefit of the bargain are insufficient to establish an injury in fact.*

District Courts throughout the United States hold that loss of benefit of the bargain "is consistently rejected in data breach cases where plaintiffs have not alleged that the value of the goods or services they purchased was diminished as a result of the data breach." *Chambliss v.*

*Carefirst*, Inc, 189 F. Supp. 3d 564, 572 (D. Md. 2016).[4]  In *Chambliss*, the Court held that the plaintiffs' allegations that they lost the benefit of their bargain with a health insurer as a result of the alleged theft of their personal information during a data breach were insufficient to establish an injury in fact, as required for Article III standing. *Id*., 189 F. Supp. 3d 564, 572. In doing so, the court held that the plaintiffs did not allege that the data breach diminished the value of the health insurance they purchased, and they made no allegations indicating that the prices they paid for insurance included a sum to be used for data security and that the parties understood that sum would be used for that purpose, and plaintiffs could not even quantify the alleged loss. *Id.*. Similarly, the Court in *In re Zappos* rejected the plaintiffs' benefit-of-the-bargain theory because the plaintiffs failed to explain how the data breach affected the value of the goods purchased. *In re Zappos*, 108 F.Supp.3d 949, 962 n. 5. Even further, the *In re Zappos* plaintiffs alleged no facts indicating that the prices they paid incorporated some form of protection premium that the plaintiffs knew would be used to secure their data. *Id*.  Here, Plaintiffs allege that "Defendant's poor data security deprived Plaintiffs and Class members of the benefit of the bargain…Plaintiffs and Class members received **medical services** of a lesser value than what reasonably expected to receive **under the bargains they struck with Defendant's clients**." *See* Consolidated Complaint, at ¶ 147. Plaintiffs' allegations are misguided as they openly admit there is no privity between ESO and Plaintiffs. Rather, the privity is between ESO's clients and Plaintiffs, as such only ESO's clients have standing to assert potential claims for loss of the benefit of the bargain. Plaintiffs also fail to

---

[4] *see also In re Zappos*, 108 F. Supp. 3d 949, 962 n.6 (D. Nev. 2015); *Engl v. Nat. Grocers by Vitamin Cottage, Inc*., No. 15-CV-02129-MSK-NYW, 2016 WL 8578096, at *9 (D. Colo. June 20, 2016), report and recommendation adopted, No. 15-CV-02129-MSK-NYW, 2016 WL 8578252 (D. Colo. Sept. 21, 2016); *Cox v. Valley Hope Ass'n*, No. 2:16-CV-04127-NKL, 2016 WL 4680165, at *4 (W.D. Mo. Sept. 6, 2016).

allege that they purchased a good or service directly from ESO. Even assuming, *arguendo*, that Plaintiffs did purchase a good or service directly from ESO, Plaintiffs fail to allege that the prices they paid for the good or service included a sum to be used for data security and that the parties understood that sum would be used for that purpose. Furthermore, other than Plaintiffs' conclusory statement that "they received **medical services** of a lesser value than what reasonably expected to receive", they do not allege how the medical services were diminished as a result of the data breach. *See* Consolidated Complaint, at ¶ 147. Additionally, Plaintiffs argument defines logic because they admit in their Consolidated Complaint that ESO does not provide medical services, rather ESO "provides software services." *See* Consolidated Complaint, at ¶ 2. Therefore, by Plaintiffs' own admission, it is impossible that ESO diminished the value of medical services that were provided to Plaintiffs when ESO provided software services.

        (e)    *Plaintiffs' claims for actual misuse and theft of their Private Information are insufficient to establish an injury in fact.*

Even where actual fraudulent credit card charges are made after a data breach, courts have held that "the injury requirement still is not satisfied if the plaintiffs were not held financially responsible for paying such charges." *Green*, 2015 WL 2066531, at *4. Additionally, in *Peters*, hackers infiltrated a health care service provider's network and accessed personal information of patients and employees, including names, social security numbers, birthdates, addresses, medical records, and bank account information. *Peters*, 74 F. Supp. 3d 847, 850. The plaintiff in *Peters* alleged that the hackers accessed and stole her information from defendant's network, then disseminated it into the public domain where it has been misused by unauthorized and unknown third parties. *Id*. On one occasion, someone attempted to make a retail purchase on her Discover card, which she previously submitted to defendant in connection with purchasing health care services. *Id*. It is alleged that on another occasion, someone attempted to access Peters'

Amazon.com account by using her son's name. Peters also alleges that her email account and mailing address were compromised, her friends and family received large volumes of spam email from her email account, and she received unsolicited marketing materials and emails targeting the medical conditions recorded in her personal information. *Id*. The Fifth Circuit in *Peters* held that plaintiff's injuries are "'the result of the independent action of a third party' and therefore not cognizable under Article III." *Id*., at 857; *quoting S. Christian Leadership Conf. v. Supreme Ct. of State of La*., 252 F.3d 781, 788 (5th Cir. 2001). *Peters* also held that plaintiff was not injured because Discover never charged her for the fraudulent purchase. *Id*.

Here, Plaintiff Todd fails to allege any facts that establish her financial responsibility for the alleged unauthorized charges on her Amazon account or a nexus between the unauthorized charges and the theft of her Personal Information. Without a showing of financial responsibility for the charges, Plaintiff Todd cannot demonstrate any financial injury that flows from the alleged unauthorized charges. *See Peters*, 74 F. Supp. 3d 847, 857; *Green*, 2015 WL 2066531, at *4. Furthermore, the allegations surrounding the alleged unauthorized charges are vague and, on their face, do not identify any nexus to the Personal Information that is the subject of the present litigation. Indeed, Plaintiff Todd does not allege that her amazon account information was compromised in the Data Security Incident, and Plaintiff Todd's allegations involve allegedly fraudulent purchases on an existing amazon account, not a new account. *See* Consolidated Complaint, at ¶ 203.

Plaintiff Guiffre further alleges that he suffered actual injury as he "received a call from a blocked number and he was asked questions about his trust fund, specifically involving his accounts, balances, and access to those accounts." *See* Consolidated Complaint at ¶155. Plaintiff Guiffre claims "this call was fraudulent and an attempt to obtain further information from him, as

---

Plaintiff Guiffre knows his trust fund account is very secure and such questions would not be asked of him by his trustee." *Id.*, at ¶155. However, Plaintiff Guiffre fails to allege that he suffered financial loss as a result of the incident. Plaintiff Guiffre also mischaracterizes this loss as an actual injury when in fact it is a future risk of injury, which as explained above is not enough to conjure standing. If the caller already had Plaintiff Guiffre's personal information, he would not have called requesting the same information.  Plaintiff Guiffre does not identify any nexus between the phone call and the Personal Information that is the subject of the present litigation. Additionally, the fact that Plaintiff Guiffre cannot confirm whether or not the trustee of his alleged trust was the caller shows that his trust lacked adequate security measures well before the Data Security Incident. If the caller was in fact his trustee, Plaintiff Guiffre's alleged injury is moot. Plaintiff Guiffre also alleges that "he has been notified of his information being found on the dark web by Equifax credit monitoring services". See *Id.*, ¶158.  However, Plaintiff Guiffre fails to allege what type of information was found on the dark web, and whether it was the sort of Personal Information allegedly accessed during the Data Security Incident. Plaintiff Guiffre also fails to identify when this information first became available on the dark web, or allege specific facts to show a nexus to the Data Security Incident.

Similar to Plaintiff Guiffre, Plaintiff Todd alleges her "credit monitoring service, Norton Lifelock, has alerted her that her name, email, and phone number was on the dark web in the *months before she was in receipt of the data breach letter* [emphasis added]." *See Id.*, at ¶177. For the same reasons explained above, this is not enough to show an injury. Furthermore, given that the breach letters were sent out in December 2023, the Data Breach Incident allegedly occurred in September 2023, and Plaintiff Todd's information was on the dark web "months before she was in receipt of the data breach letter," it is unlikely the Data Breach incident caused her information to

be on the dark web. *See Id,* at ¶ 206. Plaintiff Todd provides no facts to identify a nexus and standing. Plaintiff Guiffre, Love, Sampson, Thomas, and Todd allege that they "suffered actual injury in the form of experiencing an increase in spam calls, texts, and/or emails". ¶155, 167, 179, 202. However, as discussed in *Peters*, this is not enough to conjure standing.

> 2.    Plaintiffs fail to properly trace their alleged injuries to the Data Security Incident; therefore this Court lacks subject matter jurisdiction.

Plaintiffs fail to sufficiently plead facts to suggest their alleged injuries are fairly traceable to ESO's alleged conduct. In line with the Supreme Court's holdings in *Iqbal* and *Lujan*, there must be a causal connection between the injury and the defendant's conduct. In *Peters*, the Court held that although it is alleged that "St. Joseph's failures 'proximately caused' these injuries, the allegation is conclusory and fails to account for the sufficient break in causation caused by opportunistic third parties. The injuries, to the extent that they meet the first prong, are "the result of the independent action of a third party' and therefore not cognizable under Article III." *Peters*, 74 F. Supp. 3d 847, 857; *quoting S. Christian Leadership Conference*, 252 F.3d 781, 788. [5] Plaintiffs fail to even allege the bare minimum of how their actual injuries are traceable to the Data Security Incident. Specifically, some Plaintiffs, including Plaintiff Simpson, even admit that they were a victim "*from a previous breach* [emphasis added]" and as a result their "account are frozen." *See* Consolidated Complaint, at ¶177. Plaintiffs fail to plead any facts to suggest their alleged damages are traceable to the Data Security Incident rather than previous, unrelated data security incident they were involved in.

---

[5] *see also Almon*, 2022 WL 902992, at *23; *Carico Invs., Inc. v. Texas Alcoholic Beverage Comm'n*, No. CV H-03-5532, 2005 WL 8164504, at *12 (S.D. Tex. Aug. 25, 2005); *Kostka*, 2022 WL 16821685, at *3; *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976).

Plaintiff Todd alleged that "unauthorized and unknown third parties made unauthorized, fraudulent, charges to her Amazon account." *See* Consolidated Complaint, at ¶ 203. However, Plaintiff Todd fails to trace the alleged fraudulent charges to the Data Security Incident because the Personal Information allegedly compromised as a result of the Data Security Incident did not include her Amazon or credit card information such as a card number, expiration date, pin number, username, or password. *See* Consolidated Complaint, at ¶ 3. There is neither an allegation nor a reason to believe that Plaintiff Todd provided her Amazon login details to her medical provider. In sum, none of the alleged Personal Information compromised in the Data Security Incident would grant a third party access to Plaintiff Todd's Amazon account, as that would require Plaintiff's Amazon username, password, email address, and answer to her security question(s). To further this point, Plaintiff Todd does not allege that a third party used her Personal Information to create a new Amazon account, rather the alleged fraudulent charge was made on Plaintiff Todd's *existing Amazon account* (emphasis added) which makes it factually impossible to trace the charges to the Data Security Incident.

As to Plaintiff Guiffre's allegations that he "received a call from a blocked number and he was asked questions about his trust fund", he fails to allege how this is traceable to the Data Security Incident, nor can he because there is, of course, no reason why Guiffre would have provide details concerning his trust fund to his healthcare provider. Plaintiff Guiffre also fails to identify which type of Personal Information allegedly exfiltrated in the Data Security Incident led to this phone call. Plaintiff Guiffre alleges that he was also "notified of his information being found on the dark web by Equifax credit monitoring services", and Plaintiff Todd alleges that her credit monitoring service "alerted her that her name, email, and phone number was on the dark web in the *months before she was in receipt of the data breach letter* [emphasis added]." See Consolidated

Complaint, at ¶¶ 158, 206. Again, Plaintiff Guiffre and Todd fail to specifically allege when those incidents occurred, which could have happened before the Data Security Incident or been caused by a separate, unrelated data security incident. Additionally, Plaintiff Guiffre and Todd fail to allege which type of Personal Information led to these incidents. As to Plaintiff Todd, her allegations further ESO's point that this incident is not traceable to the Data Security Incident because based on the allegations in the Consolidated Complaint and Breach Letter, email addresses were not listed as a type of Personal Information infiltrated. *See* Consolidated Complaint, at ¶ 3. As for the same reasons explained above, Plaintiffs fail to allege how spam phone calls and messages are traceable to the Data Security Incident.

**B.    Plaintiffs' Amended Consolidated Complaint fails to state a claim upon which relief can be granted.**

1.    <u>Plaintiffs' negligence claim fails as a matter of law.</u>

A negligence claim under Texas law requires proof of four elements: (1) a duty was owed to the plaintiff, (2) the defendant breached that duty, (3) the breach resulted in an injury, and (4) the defendant's breach was a proximate cause of the injury alleged. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022); *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

*(a)    ESO owed no duty to the Plaintiffs.*

In Texas, generally "there is no duty to control the conduct of third persons." *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 517 (W.D. Tex. 2020); *quoting Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *see also Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 666 (W.D. Tex. 2017).  "Examples of relationships that have been recognized as giving rise to a duty to control include employer/employee, parent/child, and independent contractor/contractee. *Palmer v. Wiley Coll.*, No. 218CV00440JRGRSP, 2019 WL

12498123, at *1 (E.D. Tex. Sept. 6, 2019), report and recommendation adopted, No. 218CV00440JRGRSP, 2019 WL 12498124 (E.D. Tex. Sept. 27, 2019). Furthermore "a person has no legal duty to protect another from the criminal acts of a third person." *Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2017 WL 4324704, at *6 (W.D. Tex. Sept. 28, 2017); *quoting Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). "A mere mission statement to promote the greater common good is insufficient to create a legal duty to protect another from the criminal acts of a third person as a matter of law." *Doe v. Harrison Cnty., Texas*, No. 2:19-CV-00254-RSP, 2021 WL 3128650, at *5 (E.D. Tex. July 23, 2021). In *Carmax*, the Court held that defendant owed no duty to plaintiff to verify the identity of an imposter of plaintiff before accepting her signature on the automobile loan documents. *Ray v. CarMax Auto Superstores, Inc.,* No. SA-06-CA-366-OG, 2007 WL 9710494, at *1 (W.D. Tex. Sept. 27, 2007). In doing so, the Court explained that the plaintiff "has shown no special relationship of the kind that would impose a legal duty on defendants exist between her and defendants". *Id*. (internal citations omitted).

Here, ESO has no duty to control the conduct of third-party hackers because it had no privity or relationship with the Plaintiffs. Even assuming, *arguendo*, that ESO did have a relationship with the Plaintiffs, it did not rise to the level of an employer/employee, parent/child, or independent contractor/contractee. ESO has no legal duty to protect Plaintiffs from the criminal acts of the third-party hackers. To impose a duty on ESO to protect Plaintiffs and Class Members from any conceivable risk of data security incident, especially where the Class is composed of millions of members, would stop ESO's "business in its tracks", which "Congress in its wisdom has decided to protect." *See Doe v. MySpace, Inc*., 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007), aff'd, 528 F.3d 413 (5th Cir. 2008).

> (b)    *Plaintiffs' allegations demonstrate no proximate cause.*

"The test for cause-in-fact is whether the negligent 'act or omission was a substantial factor in bringing about injury,' without which the harm would not have occurred." *Harrison Cnty*, 2021 WL 3128650, at \*2; *quoting Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). "Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible." *Boys Clubs of Greater Dallas,* 907 S.W.2d 472, 477; citing *Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex. 1968). "The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries.... [and] justify the conclusion that such injury was the natural and probable result thereof." *Id.*; *quoting Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (Tex. 1939). Here, as further discussed above in the traceability analysis section, Plaintiffs fail to establish the causal connection needed to support Plaintiffs' negligence claim. *See* Section V(A)(2), *supra*. Plaintiffs fail to allege facts to suggest that ESO was the proximate cause of their injuries. Rather, Plaintiffs allegations are remote and at best allege that ESO did no more than furnish a condition which made their injuries possible, which is not enough to satisfy the causation factor.

(c)    <em>Plaintiffs have not alleged sufficient damages.</em>

As further explained in the injury-in-fact analysis of Section V(A)(1), *supra*,  Plaintiffs have not alleged sufficient damages to bring a negligence claim. As such, ESO is entitled to dismissal with respect to Plaintiffs' negligence claim. *See Almon v. Conduent Bus. Servs., LLC, No. SA-19-CV-01075-XR, 2022 WL 902992, at \*23 (W.D. Tex. Mar. 25, 2022).* Additionally, in the Fifth Circuit, to sufficiently allege damages caused by a data security incident, a Plaintiff must show that she suffered a financial loss and incurred the responsibility for the financial loss. *See Peters*, 74 F. Supp. 3d 847, 857; *Green*, 2015 WL 2066531, at \*4. While Plaintiffs may attempt to argue that the alleged unauthorized charges on Plaintiff Todd's Amazon account are sufficient

damages to maintain their negligence claim, such an argument fails because Plaintiffs fail to allege

that Amazon or her credit card company required her to bear the financial responsibility for these

unauthorized charges. In short, Plaintiffs have failed to allege they suffered legally cognizable

damages to recover under a negligence theory.

2.    Plaintiffs' negligence *per se* claim fails as a matter of law.

A negligence *per se* claim under Texas law requires proof of five elements: (1) a plaintiff

must identify a statute that was designed to protect people like the plaintiff; (2) the statute must

have been designed to prevent the type of injury that the plaintiff suffered; (3) the statute must

provide for an action in tort; (4) the defendant must have no excuse; and (5) defendant's act or

omission must have proximately caused the plaintiff's injury. *Nixon v. Mr. Prop. Mgmt. Co.*, 690

S.W.2d 546, 549 (Tex.1985). Here, Plaintiffs negligence *per se* claim is premised on ESO's alleged

violations of its statutory duties pursuant to 15 U.S.C. § 5 of the FTCA and 45 C.F.R. §

164.530(c)(1) of HIPAA. *See* Consolidated Complaint, at ¶ 272-273. However, "under Texas law,

a statute is not an appropriate basis for a negligence *per se* claim when 'a legislative body declines

to provide for an individual private right of action in a statute and instead provides a comprehensive

regulatory scheme with limited private remedies." *Walters v. Blue Cross & Blue Shield of Texas,

Inc.*, No. 3:21-CV-981-L, 2022 WL 902735 at 5 (N.D. Tex. Mar. 28, 2022); *quoting Armstrong v.

Southwest Airlines* Co., No. 3:20-CV-3610-BT, 2021 WL 4391247, at *3 (N.D. Tex. Sept. 24,

2021). On these grounds, the *Walters* court dismissed the plaintiff's negligence per se claim as

there is no private right of action under HIPAA. *Id*., at *6.[6] Furthermore, "Under no circumstances

---

[6] *see also Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006); *Carpenter v. Arredondo*, No. SA-16-CA-00188-XR, 2017 WL 8948612, at *1 (W.D. Tex. Feb. 1, 2017), report and recommendation adopted, No. SA-16-CV-188-XR, 2017 WL 1424334 (W.D. Tex. Apr. 10, 2017).

does the FTCA create a cause of action against individuals." *Dennis v. U.S. Postal Serv.*, 564 F. App'x 85, 86 (5th Cir. 2014).[7] Even assuming, *arguendo*, a violation of HIPAA and the FTCA can support a negligence *per se* claim in Texas, the Plaintiffs have failed to allege that HIPAA and the FTCA was designed to protect a particular group of people and that the Plaintiffs are members of said group. *See, Walters*, 2022 WL 902735 at 5. Doing so requires Plaintiffs to "define or otherwise explain the parameters of such group," which they have not done. *See, In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 684–85 (D.S.C. 2021).

### 3. Plaintiffs' breach of third-party beneficiary contract claim fails as a matter of law.

A breach of third-party beneficiary claim under Texas law requires that (1) the contracting parties intended to secure a benefit for the third party and (2) the contracting parties entered into the contract directly for the third party's benefit. *Wal-Mart Stores, Inc. v. Xerox*, 663 S.W.3d 569 at 583 (Tex. 2023). "Texas law disfavors contract interpretations that imply a third-party beneficiary." *Stross v. Redfin Corp.*, 730 App'x 198, 205 (5th Cir. 2018) (*quoting Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)). "The fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).

"In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling." *Id.*, *citing Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex.1975). "A court will not create a third-party beneficiary contract by implication." *Id.*, *citing*

---

[7] *see also Rico-Pineda v. Lucero*, No. SA-15-CA-126-OLG, 2015 WL 13805331, at *2 (W.D. Tex. July 6, 2015), report and recommendation adopted, No. SA-15-CV-126-OLG, 2015 WL 13805330 (W.D. Tex. July 24, 2015).

*MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 12 (Tex. App. 1988), writ denied (Mar. 29, 1989). "The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* "Consequently, a presumption exists that parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." *Id.* (internal citations omitted).

Here, Plaintiffs allege that "upon information and belief, Defendant entered into virtually identical contracts with its client to provides software products and/or services, which included data security practices, procedures, and protocols to safeguard the Private Information that was to be entrusted with it. Such contracts were made expressly for the benefit of Plaintiffs and the Class…Thus the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties." *See* Consolidated Complaint, at ¶ ¶ 282, 283. Plaintiffs' allegations fail to overcome the presumption against, not in favor of, third-party beneficiary agreements. Specifically, Plaintiffs have failed to allege facts which identify a clear and unequivocal expression of ESO and its clients' to directly benefit Plaintiffs. Rather, Plaintiffs allege implied consent, based upon "information and belief." *See* Consolidated Complaint, at ¶ 282.  This is not a manifestation of express intent. Here, ESO entered into contracts with various entities for business reasons, while its clients entered into the contracts to avoid fines, penalties, and their licenses being revoked. Even assuming, *arguendo*, Plaintiffs received an incidental benefit from the contracts between ESO and its client, this does not give Plaintiffs a right of action to enforce the contracts.

        4.      <u>Plaintiffs' unjust enrichment claim fails as a matter of law.</u>

"Texas law…does not recognize unjust enrichment as an independent cause of action." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 552 (N.D. Tex. 2021). [8] Instead, it is an equitable remedy under a quasi-contract theory of recovery, and it cannot stand even as an equitable remedy under a quasi-contract theory if there is a contract that governs the subject matter, so it must be pleaded in the alternate to breach of contract claims. *See In re Legendary Field Exhibitions, LLC*, No. 19-50900-CAG, 2023 WL 7852657, at *28 (Bankr. W.D. Tex. Nov. 13, 2023) (citing *Middaugh,* 528 F. Supp. 3d 509, 552.). In any event, it is only appropriate where one person has obtained a benefit from another by fraud, duress, or taking undue advantage" that would be unconscionable to retain without compensation. *Id.* (*quoting Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Here, the Plaintiffs unjust enrichment claim must fail as matter of law as Texas does not recognize this as an independent cause of action. Even if this court were to recognize Plaintiffs' unjust enrichment claim under a quasi-contractual theory, it must fail for two reasons: First, they plead breach of contract, as an alleged third-party beneficiary, for count three: "Defendant entered into virtually identical **contracts** with its clients…such **contracts** were made expressly for the benefit of Plaintiffs…Defendant breached its **contracts**…" *See* Consolidated Complaint, at ¶ ¶ 282,283, 285. This is a classic example of Plaintiffs trying to have their cake and eat it too. As valid, express contracts exist between ESO and its clients, from which Plaintiffs are alleging they were an intended beneficiary, Plaintiff's unjust enrichment/quasi-contractual claim must fail as a matter of law. Even if Plaintiffs were to claim that an implied, rather than express, contract existed

---

[8] *see also Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 556–61 (N.D. Tex. 2009); *Clapper v. American Realty Investors, Inc.*, No. 2019 WL 5865709, at *10–11 (N.D. Tex. Nov. 7, 2019); *Argyle Indep. Sch. Dist. ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229, 246–47 (Tex. App.—Fort Worth 2007, no pet.).

directly between ESO and Plaintiffs, Plaintiffs failed to allege the elements of an implied contract.

In Texas, an "implied contract is like an express contract." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 608-09 (Tex. 1972). An express contract requires (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Plotkin v. Joekel*, 304 S.W.3d 455 (Tex. App. 2009). In implied contracts, "the meeting of the minds of the parties [is] implied from and evidenced by their conduct and course of dealing." *Haws*, 480 S.W.2d 607, 608-09. Here, Plaintiffs fail to allege any of the elements of an implied contract. As discussed above, while Plaintiffs allege ESO conferred a monetary benefit when Plaintiffs provided ESO with their private information, any monetary benefit was derived from a valid, express contract with ESO's clients, not an implied contract with the Plaintiffs. Indeed no privity of action is alleged between ESO and plaintiff's from which they could have inferred ESO's assent. Plaintiffs also fail to plead that ESO received a benefit from fraud, duress, or taking unfair advantage of Plaintiffs. To properly bring a cause of action under a theory of unjust enrichment/quasi-contract, Plaintiffs must plead that ESO received a benefit from fraud. However, a "claim for fraud is subject to heightened pleading standards pursuant to Fed. R. Civ. P. 9(b)." *Carlton v. Allstate Prop. & Cas. Ins. Co.*, 551 F. Supp. 3d 663, 671 (E.D. La. 2021); *see also, Schnurr v. Preston*, No. 5:17-CV-512-DAE, 2018 WL 8140949, at *3 (W.D. Tex. Jan. 26, 2018). "The Fifth Circuit 'interprets Rule 9(b) strictly' and requires 'a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Carlton*, 551 F. Supp. 3d 663, 671 (internal citations omitted). Plaintiffs' failed to properly plead that ESO received a benefit from fraud, duress or, taking advantage of Plaintiffs. Plaintiffs merely allege Plaintiff had

inadequate security measures and that if they knew ESO had not reasonably secured their private information, they would not have allowed their private information to be provided to ESO. However, Plaintiffs' paid their healthcare providers for healthcare services; they did not pay ESO for data protection services. Additionally, Plaintiffs do not allege that ESO knew of any alleged deficiencies in their data security or made any false statements or misleading representations which would rise to the level of intent required for fraud and duress.

5.    <u>Plaintiffs' Violation of the Florida Deceptive and Unfair Trade Practice Act fails as a matter of law.</u>

A FDUTPA[9] claim requires proof of three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *McCumber v. Invitation Homes, Inc.*, No. 3:21-CV-2194-B, 2022 WL 1747855, at *10 (N.D. Tex. May 31, 2022); *citing Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 983 (11th Cir. 2016). "FDUTPA claims are subject to the federal rules' 'heightened' pleading standard under Rule 9(b)." *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020); *citing USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *2 (S.D. Fla. 2016). "Fifth Circuit precedent has strictly interpreted Rule 9(b). Indeed, the Fifth Circuit requires plaintiffs to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 128 (Bankr. S.D. Tex. 2010); *quoting Williams v. WMX Techs., Inc*., 112 F.3d 175, 177 (5th Cir.1997); *Nathenson v. Zonagen, Inc*., 267 F.3d 400, 412 (5th Cir.2001). "Put simply, Rule 9(b) requires the 'who, what, when, where, and how' to be laid out." *Id*., *quoting Benchmark Elecs. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir.2003). FDUTPA only applies to "non-Florida residents if the offending conduct took place predominantly

---

[9] Fla. Stat. §§ 501.201 ("FDUTPA")

or entirely in Florida.'" *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1212 (S.D. Fla. 2022); *quoting Felice v. Invicta Watch Co. of Am., Inc.*, No. 16-62772, 2017 WL 3336715, at *2–3 (S.D. Fla. Aug. 4, 2017). Pursuant to FDUTPA, "a deceptive practice is one that is 'likely to mislead' consumers." *McCumber*, 2022 WL 1747855, at *10 (*quoting Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)). Furthermore, "an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.,*(quoting Rollins, 951 So. 2d 860, 869). FDUTPA only permits recovery of "actual damages", which constitutes "'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *In re Mednax*, 603 F. Supp. 3d 1183, 1212 (S.D. Fla. 2022); *quoting Rollins*, 951 So. 2d 869. FDUPTA "does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services." *Id.* (internal citation omitted).

　　*In re Mednax* was a data breach class action case filed within the Southern District of Florida. Analyzing FDUTPA, the court held that claimants "ultimately fail to sufficiently allege damages attributable to the diminished value of the healthcare services they received from defendants…the damages alleged in the amended complaint…including the diminution in value of PHI and PII as reiterated in plaintiffs' response, as well as future risk of identity theft and emotional distress…are consequential damages insufficient to state a claim under FDUTPA." *In re Mednax,* 603 F. Supp. 3d 1183, 1212; *see also, In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 994 (S.D. Cal. 2014); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, at *28 (D.N.J. Dec. 16, 2021).

Here, as a preliminary matter only Florida residents can bring a FDUTPA claim because the Data Security Incident took place in Texas, not Florida. Next, all of Plaintiffs alleged injuries are consequential and not recoverable. Plaintiffs could only recover under the FDUTPA for diminished value of any goods involved in the healthcare services they actually purchased. *See In re Brinker Data Incident Litigation*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848 *13 (M.D. Fla. Jan. 27, 2020) . Plaintiffs allege that ESO engaged in unfair or deceptive acts or practices due to their "failure to implement adequate data security practices…failure to make only authorized disclosures of its clients' current and former patients' Private information…failure to disclose that their data security practices were inadequate…and failure to timely and accurately disclose the Data Breach…" *See* Consolidated Complaint, at ¶ 312. Plaintiffs' conclusory allegations fail to satisfy the heightened pleading standards under Rule 9(b) because they fail to allege who, what, when, where, and how. ESO's data security measures were adequate and Plaintiff's fail to allege any facts to suggest that ESO had knowledge that their security measures were allegedly inadequate, which would then warrant disclosure. Plaintiff's fail to allege what statements ESO made regarding their security measures which were allegedly deceptive and unfair, when those statements were made, where those statements were made, who made those statements, and how those statements were made. Other than a conclusory statement that "as a direct and proximate result of Defendant engaged in unconscionable, deceptive, and unfair acts and practices", Plaintiffs fail to allege causation.  *See* Consolidated Complaint, at ¶ 315. Given that some Plaintiffs, including Plaintiff Simpson, were victims of prior, unrelated dated breach, Plaintiffs have failed to properly allege causation. *See Id*., at ¶ 315. Plaintiffs also fail to allege actual damages. Specifically, Plaintiffs allege that as a result of ESO's alleged FDUTPA violation, they have suffered damages, including "invasion of privacy…theft of their Private Information…lost or

diminished value of Private Information…lost time and opportunity costs…loss of benefit of the bargain….increased in spam calls, texts, and/or emails…fraudulent charges…and…the continued and certainly increased risk to their Private Information." *See* Consolidated Complaint, at ¶ 315. However, all these alleged damages are consequential damages, and not recoverable under FDUTPA. *See, In re Am. Med. Collection*, 2021 WL 5937742, at *28; *In re Mednax,* 603 F. Supp. 3d 1212; *see also, In re Sony.*, 996 F. Supp. 2d 942, 994.

6.    <u>Plaintiffs' Violation of the North Carolina Deceptive and Unfair Trade Practice Act fails as a matter of law.</u>

A NCUDTPA[10] claim requires proof of three elements: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused injury to the plaintiff or his business. *Hill v. AQ Textiles LLC*, 582 F. Supp. 3d 297, 316 (M.D.N.C. 2022). NCUDTPA claims are subject to the federal rules' 'heightened' pleading standard under Rule 9(b). *See, In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1307 (S.D. Cal. 2020) (Interpreting NCUDTPA in the context of a data breach class action). "An act is unfair when it is unethical or unscrupulous, and it is deceptive if it tends to deceive." *Id., quoting Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397, 403 (1981). Pursuant to NCUDTPA, a duty to disclose arises where "a party has taken affirmative steps to conceal material facts from the other; or ... one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *In re Mednax*, 603 F. Supp. 3d 1183, 1215–16 (*quoting City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 636 (M.D.N.C. 2020)). In *In re Mednax,* the Court determined that plaintiffs' allegations were sufficient to state a claim under NCUDTPA where plaintiffs plead (1)

---

[10] N.C. Gen. Stat. Ann § 75-1.1 ("NCUDTPA")

that defendants' duty to disclose arose from their possession of exclusive knowledge regarding their data security, active concealment of the state of their security, and incomplete representations about the security and integrity of their computer and data systems; and (2) defendant purposefully withheld material facts from plaintiffs and putative class members. *In re Mednax* 603 F. Supp. 3d 1183, 1216.

Here, Plaintiffs allege that ESO "misrepresent[ed] that it would protect the privacy and confidentiality of its client's patients Personal Information; misrepresent[ed] that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs'…Private Information; omitt[ed], surpress[ed], and conceal[ed] the material fact that it did not reasonably or adequately secure Plaintiffs'…Private Information, and omitt[ed], surpress[ed], and conceal[ed] the material fact that it did not comply with common law and statutory duties pertain to the security and privacy of Plaintiffs'…Private Information." *See* Consolidated Complaint, at ¶ 319. However, as explained above, Plaintiffs conclusory allegations fail to satisfy the heightened pleading standards under Rule 9(b) because they fail to allege who, what, when, where, and how. Plaintiff's fail to allege any facts to suggest that ESO had knowledge that their security measures were allegedly inadequate, which would then warrant a duty to disclose under NCUDTPA. Plaintiffs fail to allege with particularity that ESO took affirmative steps to conceal material facts regarding its security measures or that it had knowledge of the alleged latent defect in its security measures. Plaintiff's fail to allege what statements ESO made regarding their security measures were deceptive and unfair, when those statements were made, where those statements were made, who made those statements, and how those statements were made. Plaintiffs fail to allege the intent element, that ESO "purposefully withheld" material facts regarding it security measures.

Plaintiffs allege that ESO's acts and practice were "'unfair' because they caused or were likely to cause substantial injury to their client's patients which was not reasonably avoidable by patients themselves and not outweighed by countervailing benefits to patients or to competition". *See* Consolidated Complaint, at ¶ 321. However, that is not the legal standard under NCUDTPA. Rather, Plaintiffs must allege that ESO's acts were unfair because they were unethical or unscrupulous, which Plaintiffs failed to allege. Under this standard, it is irrelevant whether or not ESO's alleged acts and practices caused substantial injury. Plaintiffs allege that ESO's omissions were "likely to deceive reasonable **consumers** about the adequacy of Defendant's data security." *See* Consolidated Complaint, at ¶ 321. Not only is this a conclusory allegation, however Plaintiffs fail to allege how they are consumers. As Plaintiffs point out in Count Three, ESO's contracts are between ESO and its clients. *See Id.,* at ¶ 282.  Plaintiffs fail to allege what product or service they consumed from ESO. Again, other than a conclusory statement that "as a direct and proximate result of Defendant's unfair deceptive acts or practices, Plaintiffs…have suffered and will continue to suffer injury", Plaintiffs fail to allege causation.  *See* Consolidated Complaint, at ¶ 337. Given that some Plaintiffs, including Plaintiff Simpson, were victims of prior, unrelated dated breach, Plaintiffs have failed to properly allege causation. See *Id.*, at ¶ 315. [11]

7.    Plaintiffs' Violation of the New York Deceptive and Unfair Trade Practice Act fails as a matter of law.

A NYGBL[12] claim requires proof of three elements: (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way, and

---

[11] *See also, Bledsoe v. FCA US LLC*, 663 F. Supp. 3d 753, 804–05 (E.D. Mich. 2023); *quoting Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006) (applying the economic loss doctrine to NCUDTPA claims)

[12] New York Gen. Bus. Law § 349 ("NYGBL")

(3) that the plaintiff has been injured as a result." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc*., 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). Under NYGBL, the phrase "deceptive acts or practices" means an "actual misrepresentation or omission to a consumer." *In re Am. Med. Collection,* 2021 WL 5937742, at *32 (D.N.J. Dec. 16, 2021); *quoting Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002). New York Courts have held that medical provider's "alleged failure to safeguard information on [their] networks did not mislead plaintiff in any material way and does not constitute a deceptive practice within the meaning of [the NYGBL]." *In re Am. Med. Collection,* 2021 WL 5937742, at *32 (internal citations omitted).[13]

A plaintiff that brings a NYGBL claim based on an omission must allege that the defendant possessed material information and failed to disclose that information. *Fishon v. Peloton Interactive, Inc*., No. 19-CV-11711 (LJL), 2020 WL 6564755, at *3 (S.D.N.Y. Nov. 9, 2020) (internal citation omitted). Here Plaintiffs allege that ESO "misrepresent[ed] material facts to its client's patients…and omitt[ed],suppress[ed], and/or conceal[ed] material facts…" *See* Consolidated Complaint, at ¶ 331. Again, as a common theme, Plaintiffs fail to allege that ESO possessed material information relating to its alleged inadequate security measures. Whether or not Plaintiffs claim ESO should have known about ESO's alleged inadequate security measures, this is not the legal standard. Plaintiffs also fail to allege the explicit statements ESO made to them which misrepresented the adequacy of ESO's data privacy and security practices. Additionally, other than a conclusory statement that "as a direct and proximate result of Defendant's multiple separate violations…Plaintiff and the Class suffered damages", Plaintiffs fail to allege causation.

---

[13] *See also Smahaj v. Retrieval-Masters Creditors Bureau, Inc*., 131 N.Y.S.3d 817, 827-28 (N.Y. Sup. Ct. 2020); *see also Yuille v. Uphold HQ Inc*., No. 22-CV-7453 (LJL), 2023 WL 5206888, at *14 (S.D.N.Y. Aug. 11, 2023).

*See* Consolidated Complaint, at ¶ 341. Given that some Plaintiffs, including Plaintiff Simpson, were victims of prior, unrelated dated breach, Plaintiffs have failed to properly allege causation.

        8.    <u>Plaintiffs' claim for declaratory and injunctive relief fails as a matter of law.</u>

In Texas, a declaratory judgment is a not a cause of action, rather it is more precisely a type of remedy that may be obtained with respect to a cause of action or other substantive right. *See, Youngblood v. Zaccaria*, 608 S.W.3d 134 (Tex. App. 2020). Furthermore, "to demonstrate standing to pursue prospective injunctive relief, plaintiffs must demonstrate a concrete injury and a realistic likelihood that the injury will be repeated." *Taylor v. Westly*, 488 F.3d 1197, 1199 (9th Cir. 2007).[14] In *Peters*, the Court held that even if the injuries were traceable to the defendant " it is not likely that a favorable decision from this Court would redress the harm she had has experienced'. *Peters*, 74 F. Supp. 3d 847, 857.  Here, Plaintiffs have not included any specific allegations that ESO is at risk of being hacked again. *See, Medoff*, 2023 WL 4291973 at *7. Rather, Plaintiffs allege in a conclusory fashion that they "are at risk of harm due to the exposure of their Personal Information and Defendant's failure to address the security failings that lead to such exposure." *See* Consolidated Complaint, at ¶ 308. Furthermore, Plaintiffs disregard the Breach Letter which noted that ESO has addressed the circumstances causing the breach.[15]

## VI.   CONCLUSION

For the reasons stated above, ESO respectfully requests that the Court dismiss Plaintiffs' Consolidated Complaint in its entirely pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6).

---

[14] *See also, In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1141 (C.D. Cal. 2021); *Medoff v. Minka Lighting, LLC*, No. 222CV08885SVWPVC, 2023 WL 4291973, at *7 (C.D. Cal. May 8, 2023).

[15] *See* Consolidated Complaint, at ¶ 224; *See also,* https://apps.web.maine.gov/online/aeviewer/ME/40/bd939a31-70fd-4f7c-99cf d6b87906489f.shtml

Respectfully submitted,

**WOOD SMITH HENNING & BERMAN, LLP**

*/s/ Daniel J. Paret*
Daniel J. Paret
State Bar No. 24088181
Christopher J. Seusing
*Pro hac vice*
14860 Landmark Blvd., Suite 120
Dallas, Texas 75254
Telephone:  (469) 210-2050
Fax:  (469) 210-2051
dparet@wshblaw.com
cseusing@wshblaw.com

**Attorneys for ESO Solutions, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that March 28, 2024, a true and correct copy of the foregoing instrument was served on all parties and/or counsel of record by electronic service in accordance with the FEDERAL RULES OF CIVIL PROCEDURE. My email address is dparet@wshblaw.com.

*Interim Class Counsel for Plaintiff and the Proposed Class*
**Chestnut Cambronne PA**
100 Washington Avenue South
Suite 1700
Minneapolis, MN 55401
Bryan L. Bleichner (*Pro Hac Vice*)
Philip J. Krzeski (*Pro Hac Vice*)
bbleichner@chesnutcambronne.com
pkrzeski@chesnutcambronne.com
phone: (612) 339-7300

**Milberg Coleman Bryson Phillips Grossman LLC**
800 S. Gay St., Suite 1100
Knoxville, TN 37929
Gary M. Klinger (*Pro Hac Vice*)
gklinger@milberg.com
phone: (865) 247-0080

**Morgan & Morgan Complex Litigation Group**
201 N. Franklin Street, 7th Fl
Tampa, Florida 33602
John A. Yanchunis
State Bar No. 22121300
jyanchunis@forthepeople.com
phone: (813) 318-5189

*Texas Local Counsel for Plaintiffs and the Proposed Class*
**Kendall Law Group, PLLC**
3811 Turtle Creek Blvd., Suite 825
Joe Kendall
State Bar. No. 11260700
jkendall@kendalllawgroup.com
phone: (214) 744-3000

**Steckler Wayne & Love, PLLC**
12720 Hillcrest Rd. Suite 1045
Dallas, Texas 75230
Bruce W. Steckler
State Bar No. 00785039
Paul D. Stickney
State Bar No. 00789924
bruce@swclaw.com
judgestick@gmail.com
phone: (972) 387-4040

/s/ Daniel J. Paret
Daniel J. Paret