**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **IN RE ESO SOLUTIONS INC. BREACH LITIGATION** | **CASE NO. 1:23-CV-01557-RP** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE CLASS ALLEGATIONS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.    THE ISSUE OF CLASS CERTIFICATION IS PREMATURE. ........................................ 1

II.   ESO'S REQUEST TO STRIKE CLASS ALLEGATIONS IS WITHOUT MERIT .............. 5

   A.    Plaintiffs Satisfy the Requirements of Rule 23(a). ............................................. 5

     1.    The class satisfies the commonality requirement. ........................................... 5

     2.    The class satisfies the typicality requirement. ................................................ 8

   B.    Plaintiffs Satisfy the Requirements of Rule 23(b). ............................................. 9

     1.    Plaintiffs are not seeking certification of a 23(b)(1) class. ........................... 10

     2.    Plaintiffs satisfy the requirements of Rule 23(b)(2) ...................................... 10

     3.    Plaintiffs have properly alleged the requirements of Rule 23(b)(3). ............. 12

       a.    The allegations of the CCAC sufficiently allege predominance .............................. 12

       b.    A class action is the superior method of adjudicating this case. .............................. 16

   C.    The Class is Easily Ascertainable. .................................................................... 17

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170 (11th Cir. 2019) ..................................................................................................................................11

*Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686 (N.D. Cal. 2019) ..................................................11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).................................................................. 16

*Andrade v. Odessa Police Dep't*, 2011 WL 13177746 (W.D. Tex. July 8, 2011) .......................... 2

*Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 2018 WL 11430890 (N.D. Tex. Nov. 20, 2018).......................................................................................................... 3

*Attias v. CareFirst, Inc.*, 2024 WL 1344401 (D.D.C. Mar. 29, 2024) .......................................... 14

*Bell Atlantic Corp. v. AT & T Corp.*, 339 F.3d 294 (5th Cir. 2003) ............................................. 13

*Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017) .................. 5

*Buford v. H & R Block, Inc.*, 168 F.R.D. 340 (S.D. Ga. 1996)....................................................... 8

*Bywaters v. United States*, 196 F.R.D. 458 (E.D. Tex. 2000) ........................................................ 8

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)............................................................ 16

*Cleary v. Am. Airlines, Inc.*, 2021 WL 11485383 (N.D. Tex. Sept. 2, 2021)................................. 6

*Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350 (5th Cir. 2005).................................. 13

*Crutchfield v. Sewerage and Water Bd. of New Orleans*, 829 F.3d 370 (5th Cir. 2016).............. 12

*Davis v. S. Bell Tel. & Tel. Co.*, 1993 WL 593999 (S.D. Fla. Dec. 23, 1993).............................. 12

*Delarue v. State Farm Lloyds*, 2010 WL 11530499 (E.D. Tex. Mar. 10, 2010) ........................ 2, 4

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012)................................................... 14

*Elson v. Black*, 56 F.4th 1002 (5th Cir. 2023) ........................................................................... 2, 4

*Flaherty v. Clinique Lab'ys LLC*, 2021 WL 5299773 (N.D. Ill. Nov. 15, 2021)......................... 14

*Frey v. First Nat. Bank Sw.*, 602 F. App'x 164 (5th Cir. 2015).................................................... 17

*Gant v. Whynotleaseit, LLC*, 2014 WL 12606313 (S.D. Tex. Dec. 11, 2014) ................................ 3

*Gardiner v. Walmart Inc.*, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ......................................... 4

*Gardner v. Health Net, Inc.*, 2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ................................ 5

*Gen Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982) ...................................................................... 3

*Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) ............................................. 15

*Hobbs v. Kroger Ltd. P'ship I*, No. 3:18-CV-01026, 2019 WL 1861330 (M.D. Tenn. Apr. 24, 2019) ............................................................................................................................................. 2

*Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) ................................................................................... 13

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ...................................... 7

*In re Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ....................... 15

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .................................................................................................................... 15

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 568 F. Supp. 3d 837 (E.D. Mich. 2021) .............................................................................................................................. 14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ......................................................................................................... 6, 9, 15, 16

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022) ...... 15

*In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112 (E.D. La. 2013) ............................ 6

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................................... 14

*In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015) ............. 15

*International Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457 (N.D. Cal. 1983) .......................................................................................................................... 8

*John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007) ................................................. 2

*Johnson v. United States*, 208 F.R.D. 148 (W.D. Tex. 2001) ......................................................... 8

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045 (5th Cir. 1982) ...... 1

*Kelly v. Ringler Assocs. Inc.*, 2017 WL 1363338 (D. Or. Feb. 21, 2017) ..................................... 14

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ......................................................... 16

*Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521 (5th Cir. 2007) ..................................... 2

*McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810 (E.D. Ky. 2019) ............................................. 4

*Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) .............................................................................. 2

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1997) ....................................... 6, 8

*Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727 (S.D. Iowa 2007) ................................ 2

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) .......................................................... 7

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159
    (11th Cir. 2010) ........................................................................................................................ 16

*Savidge v. Pharm-Save, Inc.*, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) ......................... 7, 14

*Scott v. Scribd, Inc.*, 2010 WL 11646816 (S.D. Tex. Feb. 24, 2010) ............................................ 3

*Simpson v. Best W. Int'l, Inc.*, 2012 WL 5499928 (N.D. Cal. Nov. 13, 2012) .............................. 3

*Sims v. Allstate Fire & Cas. Ins. Co.*, 650 F. Supp. 3d 540 (W.D. Tex. 2023) .............................. 3

*Smith v. Triad of Alabama, LLC*, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ....................... 15

*Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537 (W.D. Tex. 2020) ......................................... 12, 13

*Tucker v. Marietta Area Health Care, Inc.*, 2023 WL 423504 (S.D. Ohio Jan. 26, 2023) ............. 4

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ......................................................... 12, 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......................................................... 5, 6, 11

*Whitfield v. ATC Healthcare Servs., LLC*, 2023 WL 5417330 (E.D.N.Y. Aug. 22, 2023) ............. 4

## STATUTES

Fla. Stat. Ann. § 501.211(1) ........................................................................................................... 11

N.C. Gen. Stat. § 75-16 .................................................................................................................. 11

N.Y. Gen. Bus. Law § 349(h)................................................................................................11

**OTHER AUTHORITIES**

Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97
(2009)........................................................................................................................ 10

Plaintiffs Steven Guiffre, Billy Love, George Simpson, Jamie Thomas, Deborah Todd, and Robert Day ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, hereby submit this opposition to Defendant ESO Solutions, Inc.'s ("ESO" or "Defendant") Motion to Strike Class Action Allegations ("Motion to Strike") (ECF 24).

## INTRODUCTION

This case presents a worst-case data breach scenario for the 2.7 million individuals whose highly sensitive personal information, including names, phone numbers, addresses, Social Security numbers, and protected health information was compromised in a ransomware attack against ESO. In the course of its business, ESO was entrusted with these individuals' highly sensitive personal information but failed to take basic precautions to protect that information, thus leaving it vulnerable to cyber criminals. On behalf of these individuals, Plaintiffs have filed their Consolidated Class Action Complaint ("CCAC"), (ECF 16), which asserts multiple claims arising from ESO's failure to protect their personal information. ESO now moves to strike the class allegations in the CCAC. As set forth herein, Defendant's Motion to Strike is both premature and meritless, and therefore, must be denied.

## ARGUMENT

## I.    THE ISSUE OF CLASS CERTIFICATION IS PREMATURE.

Pursuant to Rule 12(f), ESO moves to strike the class allegations in the CCAC on the basis that Plaintiffs cannot satisfy the class action prerequisites of Rule 23(a) and (b). A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, the Fifth Circuit has cautioned that motions to strike are generally disfavored. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982). Indeed, "[t]hey are viewed with disfavor and infrequently

granted, both because striking portions of pleadings is a drastic remedy and because it is often sought by a movant simply as a dilatory tactic." *Andrade v. Odessa Police Dep't*, 2011 WL 13177746, at *1 (W.D. Tex. July 8, 2011). Generally, a motion to strike should be granted only when "the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and ... their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Hobbs v. Kroger Ltd. P'ship I*, No. 3:18-CV-01026, 2019 WL 1861330, at *3 (M.D. Tenn. Apr. 24, 2019) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, at 650 (2nd ed. 1990)).

With respect to striking class allegations in particular, a defendant may move to strike such allegations prior to discovery "in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Delarue v. State Farm Lloyds*, 2010 WL 11530499, at *2 (E.D. Tex. Mar. 10, 2010) (citing *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)).

"An order striking class allegations is functionally equivalent to an order denying class certification." *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017) (quotation marks omitted). However, "[t]here is a distinction between a motion to strike class action allegations at the pleadings stage and the actual class certification analysis." *Id.* (citing *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 523 (5th Cir. 2007). "District courts are permitted to make such determinations on the pleadings and before discovery is complete when it is apparent from the complaint that a class action cannot be maintained." *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). Dismissal of a class at the pleading stage is rare, however, because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of

action." *Gen Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982). Thus, while a defendant is not prohibited from moving to strike class allegations before the motion for class certification, courts often deny such motions "because the shape and form of a class action evolves only through the process of discovery." *Simpson v. Best W. Int'l, Inc.*, 2012 WL 5499928, at *9 (N.D. Cal. Nov. 13, 2012) (internal citation and quotations omitted).

Accordingly, district courts in Texas and throughout the country have routinely denied motions to strike class allegations when discovery has not yet commenced or concluded. *See, e.g.*, *Sims v. Allstate Fire & Cas. Ins. Co.*, 650 F. Supp. 3d 540, 546–47 (W.D. Tex. 2023) ("Here, discovery has not commenced, and Plaintiffs have not yet filed a Motion for class certification…. Defendants' arguments to strike any class allegations are more appropriately resolved at class certification stage of proceedings."); *Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 2018 WL 11430890, at *3 (N.D. Tex. Nov. 20, 2018) ("As described above, class certification discovery is ongoing and issues regarding class certification have not been briefed or argued to the Court. At this time, the Court cannot find that "it is facially apparent from the pleadings that there is no ascertainable class" or that the action is otherwise wholly unsuited to proceed as a class action."); *Gant v. Whynotleaseit, LLC*, 2014 WL 12606313, at *2 (S.D. Tex. Dec. 11, 2014), *report and recommendation adopted*, 2015 WL 12804529 (S.D. Tex. Jan. 16, 2015) ("[D]iscovery in this case is ongoing. At this stage in the proceedings, it is premature to strike Plaintiff's class allegations. Defendant is correct that several cases have found that individualized consent has prevented plaintiffs from pursuing class certification under Rule 23(a) and (b), but these determinations were made only after those plaintiffs conducted discovery and moved for class certification."); *Scott v. Scribd, Inc.*, 2010 WL 11646816, at *1 (S.D. Tex. Feb. 24, 2010) ("Whether Plaintiff can meet the requirements of Rule 23(b) … may well depend on the evidence

obtained in discovery. Moreover, a decision should not be made on class certification prior to Plaintiff moving for such."); *Delarue*, 2010 WL 11530499 at *4 ("The undersigned further concludes that striking the Plaintiff's allegations now would be a premature sanction without allowing at least some discovery and the opportunity to amend the claims before engaging in an analysis on the merits of the class action as currently pled."). *Compare Elson*, 56 F.4th at 1005 (affirming the district court's order striking class allegations only "[a]fter a hearing and some limited discovery.")

Routinely, in data breach cases similar to this one, district courts reject defendants' attempts to strike class allegations at the pleading stage. *See, e.g.*, *Whitfield v. ATC Healthcare Servs., LLC*, 2023 WL 5417330, at *2 (E.D.N.Y. Aug. 22, 2023) ("To the extent Defendant posits that some members of the proposed class and subclass may prove not to have Article III standing, that question is appropriately addressed at the class certification stage, where, with the benefit of discovery, the Court may better address class-wide Article III concerns…. Any concern that individual issues may predominate is also better suited to be litigated at class certification."); *Tucker v. Marietta Area Health Care, Inc.*, 2023 WL 423504, at *8 (S.D. Ohio Jan. 26, 2023) (denying motion to strike class allegations in a data breach and noting "courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *10 (N.D. Cal. Mar. 5, 2021) (same); *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 823–24 (E.D. Ky. 2019) (denying motion to strike class allegations without the benefit of discovery because "[a]t present, it is unclear how many potential class members exist, where they are located, and whether the potential class members have suffered common injuries."); *Brush v. Miami Beach Healthcare*

*Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (same); *Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *13 (C.D. Cal. Aug. 12, 2010) (same).

Like these courts, this Court should also reserve judgment on the suitability of the class until after discovery has taken place and the issues of class certification have been properly presented by Plaintiffs in a motion.

## II.    ESO'S REQUEST TO STRIKE CLASS ALLEGATIONS IS WITHOUT MERIT.

Even if the Court does not find it premature to address class certification at this early stage in the case, ESO has not demonstrated from the face of the complaint that it will be impossible to certify the class.

### A.    Plaintiffs Satisfy the Requirements of Rule 23(a).

Class certification is appropriate when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

#### 1.    The class satisfies the commonality requirement.

ESO argues that Plaintiffs "fail to sufficiently allege shared legal issues or a common core of salient facts because the type of information potentially compromised and the severity of the effects of the Data Security Incident varies widely from one class member to another." ECF 24 at 7. ESO's contention is without merit.

Commonality turns on "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Fifth Circuit has held that the test for commonality "is not demanding and is met

where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1997). "*Dukes* does not require that all questions of law and fact be common or that each class member have suffered a violation of the same provision of law. Instead, their claims must depend upon a common contention. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1052–53 (S.D. Tex. 2012) (internal quotation marks, citations, and alterations omitted). Rather, commonality "is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members[.]" *Id.* (citation omitted). "Even where there are individual variations in the facts relating to a particular named plaintiff or proposed class member, the commonality requirement is satisfied so long as the class shares some common question of law or fact." *Cleary v. Am. Airlines, Inc.*, 2021 WL 11485383, at *4 (N.D. Tex. Sept. 2, 2021). Thus, common questions of fact exist when an incident "was the single common event giving rise to the claims of each of the Class Members." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 134 (E.D. La. 2013). Here, such a single common event—the Data Breach—occurred and caused the injuries alleged in Plaintiffs' complaint.

ESO argues that differences in the type of information compromised in the data breach or the severity of harm they suffered defeat commonality. Notably, it cites no data breach case in which a court has held that the plaintiffs failed to satisfy the commonality requirement due to such differences. This is unsurprising, since "the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is on whether the defendant's conduct was common as to all

of the class members." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation marks and citation omitted).

In fact, courts have routinely held that commonality is satisfied in data breach cases because the common issues in such cases—including the adequacy of the defendant's systems, data security practices, and policies safeguarding patient data—underlie all Class Members' claims, and the defendant's course of conduct caused all Class Members to be harmed. *See*, *e.g.*, *Savidge v. Pharm-Save, Inc.*, 2024 WL 1366832, at *2 (W.D. Ky. Mar. 29, 2024) (stating in a data breach case that "there exist common questions of whether [Defendant's] conduct was negligent or a contractual breach"); *In re Marriott*, 341 F.R.D. at 147 ("Common questions of fact include whether Defendants knew about their data security vulnerabilities, what Defendants did or did not do to address those vulnerabilities, and whether the hacker(s) exploited those vulnerabilities to exfiltrate customers' PII. These questions of fact, and their answers, are common because every class member was subject to the same Marriott and Accenture policies and practices related to data security."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. 2018) ("The extensiveness and adequacy of Anthem's security measures lie at the heart of every claim…. Related factual questions about whether Anthem knew that its data security was inadequate and whether Anthem amply responded to the data breach also apply uniformly across the entire Class."). Plaintiffs have identified similar common factual issues in this case. S*ee* CCAC, ¶ 225. Because ESO's liability to each Class Member stems from the same Data Breach, the resolution of any of those legal and factual questions would advance the litigation for all Class Members, thus satisfying the commonality requirement.

### 2.    The class satisfies the typicality requirement.

ESO next argues that Plaintiffs cannot satisfy the typicality requirement because "there are numerous variables as to the type of personal information of each class member that was purportedly accessed, and whether any personal information had ever been misused, and the disparate and unsupported claims of each class member's damages." ECF 24 at 9. Again, ESO cites no data breach case holding that the typicality requirement is not met for these reasons. And, again, ESO's argument is fatally flawed because it focuses on minor variations among Plaintiffs' claims rather than the similarities between them.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999). "Typicality exists when the claims of both named and unnamed class members stem from 'the same event or course of conduct and are based on the same legal theory' even if factual distinctions exist between these same members." *Johnson v. United States*, 208 F.R.D. 148, 168 (W.D. Tex. 2001) (quoting *Bywaters v. United States*, 196 F.R.D. 458, 467 (E.D. Tex. 2000)).

Contrary to ESO's argument, the typicality "requirement does not demand factual homogeneity." *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 351 (S.D. Ga. 1996), aff'd sub nom. *Jones v. H & R Block Tax Servs.*, 117 F.3d 1433 (11th Cir. 1997) (citing *International Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 462 (N.D. Cal. 1983)). Rather, "[t]he requirement is that Plaintiff and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such interest, particular factual differences,

differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical." *Id.* at 350.

Here, because Plaintiffs' injuries all stem from the same source, their claims and legal theories arise under the same factual predicate as those of the Class Members. Plaintiffs' and Class Members' PII and PHI was compromised in the same Data Breach, which was caused by ESO's inadequate data security practices. If ESO owed a duty to protect the PII and PHI it collected in the course of its business, it owed that duty to the entire Class, and common evidence that its inadequate security protocols and procedures created ripe conditions for the Data Breach will establish ESO's breach of that duty to the entire Class. Additionally, Plaintiffs and Class Members experienced the same harm of having their PII and PHI exposed to fraudulent misuse and suffered damages typical to the Class, including having unauthorized accounts opened in their names, experiencing increased phishing attempts, and having to monitor their accounts and credit reports for fraudulent activity. Typicality is thus satisfied. *See In re Heartland Payment Sys.*, 851 F. Supp. at 1054 (finding typicality in a data breach where "the state-law claims that the Consumer Plaintiffs assert in this case—negligence, breach of contract, and violations of state consumer-protection laws—are recognized in some form in all jurisdictions and therefore available for all [class members.] . . . Despite possible state-by-state variations in the elements of these claims, they arise from a single course of conduct by [defendant] and a single set of legal theories.") (citations and internal quotation omitted).

### B.    Plaintiffs Satisfy the Requirements of Rule 23(b).

ESO also contends that Plaintiffs fail to satisfy the requirements of Rule 23(b). But all of its arguments fail as demonstrated below.

**1.      Plaintiffs are not seeking certification of a 23(b)(1) class.**

ESO provides a lengthy discussion of why Plaintiffs fail to satisfy the requirements of Rule

23(b)(1)(A) and 12(b)(1)(B). However, this discussion is mooted by the fact that Plaintiffs do not

seek certification of a mandatory class action under Rule 23(b)(1). The Court therefore need not

consider whether Plaintiffs' allegations have satisfied the requirements of Rule 23(b)(1).

**2.      Plaintiffs satisfy the requirements of Rule 23(b)(2).**

Class certification of a claim seeking injunctive relief is appropriate when, in addition to

the four requirements of Rule 23(a), "the party opposing the class has acted or refused to act on

grounds generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

"When a class seeks an indivisible injunction benefiting all its members at once, there is no reason

to undertake a case-specific inquiry into whether class issues predominate or whether class action

is a superior method of adjudicating the dispute." *Dukes*, 564 U.S. at 362–63. Accordingly, the

"key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy

warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as

to all of the class members or as to none of them.'" *Id.* at 360 (quoting Nagareda, *Class

Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Here, the injunctive relief sought by Plaintiffs meets the Rule 23(b)(2) standard because

ESO acted in a manner common to the Class. ESO subjected all Class Members' PII and PHI to

the same inadequate data security; Class Members' PII and PHI was compromised as a result of

those data security deficiencies; ESO is still in possession of Class Members' PII and PHI; and

ESO still has not adequately secured Class Members' PII and PHI.[1] Injunctive relief is thus needed to correct ESO's ongoing inadequate data security practices, which uniformly apply to all class members. *See Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 697-99 (N.D. Cal. 2019) (certifying Rule 23(b)(2) class seeking declaration of insufficient data security practices and corresponding injunctive relief).

ESO argues in its Motion to Strike that Plaintiffs cannot satisfy Rule 23(b)(2) because the primary relief sought in this case is damages. But this argument misinterprets and misunderstands the Supreme Court's opinion in *Dukes*. *Dukes* does not stand for the proposition that a court cannot certify both a (b)(2) class and a (b)(3) class in the same action. It stands only for the proposition that claims that will require an individualized determination of money damages (like the claims for backpay female employees asserted in that case) must be certified as (b)(3) claims for due process reasons so plaintiffs have an opportunity to opt out of the class, which they cannot do in a mandatory (b)(2) class. *See Dukes*, 564 U.S. at 362–63. Similarly, plaintiffs cannot use (b)(2) to obtain an injunction or declaratory relief that redresses past harms (e.g., requiring a company to give backpay or requiring an auto insurance company to reprocess claims that were previously capped at a lower dollar amount than they should have been). *See, e.g.*, *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1175 (11th Cir. 2019). The purpose of (b)(2) relief is solely to prevent future injury, not past harms.

However, nothing in the rationale of *Dukes* prevents courts from certifying in the same action a (b)(3) class for damages redressing injuries the class has already suffered and a separate

---

[1] Injunctive relief is also available and can be resolved on a class-wide basis for the respective subclasses' claims under the FDUTPA (Fla. Stat. Ann. § 501.211(1), the NCUDTPA (N.C. Gen. Stat. § 75-16), and the New York GBL (N.Y. Gen. Bus. Law § 349(h)).

(b)(2) class to prevent future harm to the class. Judge Garcia recognized this in *Spegele v. USAA Life Ins. Co.*, where he approved "'divided certification,' certifying the damages claims under Rule 23(b)(3) while certifying the injunctive relief under 23(b)(2)" where the plaintiffs requested injunctive relief in a separate count from its claims for money damages, as Plaintiffs to here (*see* CCAC, Count V). 336 F.R.D. 537, 558 (W.D. Tex. 2020) (collecting cases that have similarly approved (b)(3) and (b)(2) claims in the same action); *see also Davis v. S. Bell Tel. & Tel. Co.*, 1993 WL 593999, at *7 (S.D. Fla. Dec. 23, 1993) ("Nothing in the language of Rule 23 precludes certification of both an injunctive class and a damages class in the same action. In fact, where injunctive relief and damages are both important components of the relief requested, court[s] have regularly certified an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) in the same action.").

### 3.    Plaintiffs have properly alleged the requirements of Rule 23(b)(3).

To certify a (b)(3) class, Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### a.    The allegations of the CCAC sufficiently allege predominance.

The predominance inquiry "requires courts to carefully scrutinize the relationship between common and individual questions in a case." *Crutchfield v. Sewerage and Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one ... susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453. "This determination

requires an inquiry into how the case will be tried, which 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'" *Spegele*, 336 F.R.D. at 554 (quoting *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016)).

ESO's discussion of the purported reasons Plaintiffs fail to satisfy the predominance requirement only demonstrates why its Motion is premature and ill-timed. First, citing *Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350, 355 (5th Cir. 2005), ESO argues that "[t]he most important factor is the necessity of individualized damage calculations." ECF 24 at 17. The Supreme Court has instructed that individualized damages do not preclude a finding of predominance. *Tyson Foods*, 577 U.S. at 453-54. The *Corley* thus court recognized that "relatively few motions to certify a class fail because of disparities in the damages suffered by the class members." 152 F. App'x at 355 (quoting *Bell Atlantic Corp. v. AT & T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003)). The Fifth Circuit went on to explain that what matters for predominance purposes is not the existence of individualized damages, but whether plaintiffs can demonstrate "a suitable formula for calculation of damages." *Id.* Thus, Plaintiffs must be able to show that the case "lend[s] itself to ... mechanical calculation," rather than requiring "separate mini-trial[s] of an overwhelmingly large number of individual claims." *Id.*

At this stage, in the absence of any fact or expert discovery or a motion for class certification setting forth a methodology for calculating Plaintiffs' damages, the Court cannot make an informed determination of whether the damages in this case lend themselves to mechanical calculation. As discussed *supra* at 3, this is precisely the reason why courts have cautioned that decisions about the suitability of a class should be made at the class certification stage, not the pleading stage.

Similarly, an analysis of choice of law issues and the extent to which choice of law presents predominance concerns are also properly addressed at the class certification stage. *See Flaherty v. Clinique Lab'ys LLC*, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021) ("Courts in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable."); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 568 F. Supp. 3d 837, 844–45 (E.D. Mich. 2021) ("The potential variations in state laws is a serious issue, and one that could defeat class certification…. But the Court concludes that striking Plaintiffs' class allegations is not the appropriate remedy at this [pleading] stage of the proceedings."); *Kelly v. Ringler Assocs. Inc.*, 2017 WL 1363338, at *6 (D. Or. Feb. 21, 2017); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal. 2012); *In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010) (same). This Court, too, should reserve considering these issues until such time as Plaintiffs file a motion for class certification.

Furthermore, to the extent ESO argues that "generalized proof cannot resolve a significant aspect of the case in a single adjudication "that individualized causation issues predominate because some Plaintiffs were victims of previous data breaches, and that the application of potentially all fifty state laws defeats predominance (ECF. 24 at 18-19), these contentions are belied by the numerous courts that have certified data breach classes, including nationwide classes, based on common liability issues. *See, e.g.*, *Savidge v. Pharm-Save, Inc.*, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) (certifying class of employees whose PII was compromised in a data breach suffered by their employer for claims of negligence and breach of implied contract); *Attias v. CareFirst, Inc.*, 2024 WL 1344401 (D.D.C. Mar. 29, 2024) (certifying a consumer class for breach of contract claims arising out of a data breach); *In re Marriott Int'l, Inc., Customer Data Sec.*

14

*Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022) (certifying consumer class of hotel customers whose PII was compromised in a data breach), vacated and remanded sub nom. *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), and reinstated by *In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023); *In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021) (certifying class of restaurant customers whose payment card information was disclosed in a data breach), vacated in part sub nom. *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023); *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, *12 (M.D. Ala. Mar. 17, 2017) (certifying adversarial class and finding "[t]he extent to which [hospital] was obliged to protect patient records, and whether it breached that obligation, are the predominant issues in this case—answering these questions one way or another will effectively decide the parties' dispute."); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 485 (D. Minn. 2015) (certifying adversarial class of financial institutions that issued payment cards compromised in a data breach); *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1059 (finding predominance as "this case presents several common questions of law and fact arising from a central issue: Heartland's conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct" and certifying settlement class); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *7 (W.D. Ky. Dec. 22, 2009) (finding "[a]lthough there are variations in the damages claims of each class member and their appropriate amounts of recovery, these issues are predominated by the main issue of fault" and certifying settlement class).

Here, too, this case concerns ESO's conduct before, during, and after the Data Breach. Questions of law regarding ESO's duty to protect Plaintiffs' and Class Members' PII and PHI and whether ESO breached this duty can be determined regardless of slight variations among Plaintiffs

and Class Members' subsequent injuries. The same is true as to whether ESO's behavior was negligent, breached a third-party contract, was unjustly enriched, or violated state consumer protection statutes. Accordingly, generalized proof applicable to the Class as a whole is sufficient to determine ESO's liability.

### b.    A class action is the superior method of adjudicating this case.

"Superiority examines whether a class action is a better vehicle for resolving a case than other possible methods, such as individual litigation or consolidation." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1059. "The predominance and superiority inquiries are closely related." *Id.* (citing *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010)). "'The most compelling rationale for finding superiority in a class action' is 'the existence of a negative value suit.'" *Id.* (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)). Superiority is satisfied by "[t]he finding that common issues of law and fact predominate over individual issues, and … that this suit is a consumer class action comprised of negative-value suits." *Id.* As the Supreme Court has explained:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Here, the Data Breach affects 2.7 million people, many of whom likely have damages resulting from the Data Breach, but few of whom likely have damages significant enough to justify the expense of individual suits. Individual suits would thus be a vastly inferior method of adjudication in this case. Superiority is thus satisfied.

C.      **The Class is Easily Ascertainable.**

Finally, ESO argues in its Motion that the class is not ascertainable because it is not "administratively feasible for the court to determine whether a particular individual is a member of the Class because each proposed class member had a different form of personal information allegedly exfiltrated as part of the Data Security Incident and the few harms alleged to have materialized as a result … are already widely disparate." ECF 24 at 23. This argument is wholly without merit.

The "court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (affirming the district court's holding that the class was ascertainable because class members could be identified from defendant bank's account numbers and identification numbers associated with the subject ATM transactions.). Here, the Class Members are ascertainable because ESO is in possession of all their names and addresses, which it has already used to preliminarily identify them and send them notice of the Data Breach. Neither the types of information disclosed about each proposed class member nor the injuries suffered by each proposed class member affect the parties' or the Court's ability to identify the members of the Class. And it should be noted that ESO sent the same notice letter to each affected individual; it did not send different notices based on what type of information was disclosed. Moreover, having used its own records to identify those individuals who should be notified of the Data Breach (CCAC, ¶ 232), ESO cannot now credibly argue that it would not be "administratively feasible" to determine the members of the class. "In general, courts do not look favorably upon the argument that records a defendant treats as accurate for business

17

purposes are not accurate enough to define a class." *In re Marriott*, 341 F.R.D. at 145  (citation omitted).

## CONCLUSION

For all the foregoing reasons, the Court should deny Defendant's Motion to Strike Class Allegations in its entirety.

Dated: April 9, 2024

Respectfully submitted,

*/s/ John A. Yanchunis*
John A. Yanchunis
Texas Bar NO. 22121300
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 318-5189
Fax: (813) 222-2496
jyanchunis@ForThePeople.com

Bryan L. Bleichner*
Philip Krzeski*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
glkinger@milberg.com

*Interim Class Counsel for Plaintiffs and the Proposed Class*
**Admitted Pro Hac Vice*

Joe Kendall
Texas Bar No. 11260700
SDTX Bar No. 30973
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Phone: 214-744-3000
Fax: 214-744-3015
jkendall@kendalllawgroup.com

Bruce W. Steckler
Texas Bar No. 00785039
Paul D. Stickney, Of Counsel
Texas Bar No. 00789924
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@swclaw.com
judgestick@gmail.com

*Texas Local Counsel for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2024, I caused a true and correct copy of the foregoing motion to be filed with the Clerk of the Court for the Western District of Texas via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

*/s/ John A. Yanchunis*
John A. Yanchunis