# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| IN RE ESO SOLUTIONS, INC. BREACH LITIGATION, | Case No. 1:23-cv-01557-RP |

## PLAINTIFF'S *UNOPPOSED* MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 2

    A.  Factual and Procedural Background ..................................................................... 2

    B.  Negotiations and Settlement ................................................................................ 4

    C.  Summary of Settlement Terms ............................................................................. 4

        1.   Settlement Benefits ..................................................................................... 5

        2.   Scope of the Release .................................................................................... 6

        3.   The Notice and Administration Plan ........................................................... 6

        4.   Attorneys' Fees, Costs, Expenses, and Service Awards ........................................ 7

III.  ARGUMENT ................................................................................................................. 7

    A.  The Court Should Preliminarily Approve the Settlement ............................................. 7

    B.  Legal Standard ..................................................................................................... 8

    C.  The Proposed Settlement is Fair, Adequate, and Reasonable ................................... 10

        1.   The Class Representative and Class Counsel Have Adequately
            Represented the Class .............................................................................. 10

        2.   The Proposed Class Settlement Was Negotiated at Arm's Length
            Without Fraud or Collusion ..................................................................... 11

        3.   The Settlement is Favorable Given Litigation Risks ..................................... 12

        4.   The Stage of Proceedings and Amount of Discovery Support Settlement .......... 13

        5.   The Settlement Terms Represent a Favorable Compromise, Balancing the
            Likelihood of Success with Attendant Risks ............................................... 14

        6.   The Recovery is Within an Appropriate Range ........................................... 14

         7.   The Settlement is Supported by Experienced Class Counsel and
            the Proposed Class Representative ........................................................... 15

        8.   The Settlement Treats Settlement Class Members Equitably Relative
             to Each Other ......................................................................................... 15

    D.  The Court Should Preliminarily Certify the Settlement Class ................................... 16

        1.   The Settlement Class Meets the Requirements of Rule 23(a) of
            the Federal Rules of Civil Procedure ........................................................ 16

        2.   The Settlement Class Meets the Demands of Rule 23(b)(3) ........................... 19

        3.   The Court Should Approve the Proposed Notice Program ............................. 21

IV.   CONCLUSION ............................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ahmad v. Old Republic Nat. Title Ins. Co.*,
  690 F.3d 698 (5th Cir. 2012) ................................................................................ 19

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  No. H-17-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ..................................... 9

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 16, 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) .............................................................................................. 20

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) ............................................................................ 12

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ............................................................................ 12, 13

*Cotter v. Checkers Drive-In Rests., Inc.*,
  No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ........................... 12

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .......................................................................... 10, 12

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
  829 F.3d 370 (5th Cir. 2016) ................................................................................ 20

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................... 15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .............................................................................................. 21

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
  446 U.S. 318 (1980) .............................................................................................. 16

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
  No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 3, 2019) ................... 12

*In re Citrix Data Breach Litig.*,
   No. 19-61350- CIV, 2021 WL 2410651 (S.D. Fla. Jun 11, 2021).....................................12, 14

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1322 (5th Cir. 1981)...................................................................................14

*In re Deepwater Horizon*,
   739 F.3d.................................................................................................................17, 18

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*,
   447 F. Supp. 2d 612 (E.D. La. 2006) .................................................................................13

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...............................................................12, 13, 17, 19

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, on Apr. 20,
   2010, 910 F.Supp.2d 891 (E.D. La. 2012) .................................................................................9

*In re Talbert*,
   347 B.R. 804 (E.D. La. 2005) .............................................................................................16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16- MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .........................17, 20

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001)...................................................................................................18

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017)...................................................................................................18

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010).........................................................................9, 10, 15

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007)...................................................................................................18

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999)..............................................................................................16, 21

*O'Donnell v. Harris County*,
   No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) .......................................9, 16, 22

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978)...........................................................................................10, 15

*Purdie v. Ace Cash Express, Inc.*,
  No. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ........................................ 9

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ................................................................. 8, 9, 14, 15

*Sosna v. Iowa*,
  419 U.S. 393 (1975) ............................................................................................. 18

*Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012) ............................................................................... 17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ................................................................................. 9

*Valley Drug Co. v. Geneva Pharms., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) ........................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................. 17

*Welsh v. Navy Fed. Credit Union*,
  No. 16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .................................. 11

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. passim

Fed. R. Civ. P. 23(a) ........................................................................................ 16, 19

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 16

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 17

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 18

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 18

Fed. R. Civ. P. 23(b)(1), (2), or (3) ...................................................................... 19

Fed. R. Civ. P. 23(b)(3) ............................................................................... 19, 20, 21

Fed. R. Civ. P. 23(b)(3)(B) .................................................................................. 21

Fed. R. Civ. P. 23(b)(3)(C) .................................................................................. 21

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 21, 22

v

Fed. R. Civ. P. 23(c)(3) .................................................................................................... 22

Fed. R. Civ. P. 23(e) ................................................................................................... passim

Fed. R. Civ. P. 23(e)(1) .................................................................................................. 21

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 8, 9

Fed. R. Civ. P. 23(e)(3) .................................................................................................... 8

**Other Authorities**

*Manual for Complex Litigation*, § 21.632 .................................................................. 16

*McLaughlin on Class Actions* § 6:7 (15th ed. 2018) ................................................... 8

*Newberg on Class Actions* § 13:10 (5th ed.) ............................................................... 7

*Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992) .......................................... 16

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Robert Day in the Consolidated Action of *In Re ESO Solutions, Inc. Breach Litigation* ("Plaintiff"), individually and on behalf of himself and all others similarly situated, hereby moves this Court for preliminary approval of a proposed class action settlement. In support thereof, Plaintiff relies upon the accompanying Memorandum in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement; the Settlement Agreement ("Settlement Agreement") attached as **Exhibit 1**; the Declaration of Bryan L. Bleichner in Support of Preliminary Approval of Class Action Settlement ("Bleichner Decl.") attached as **Exhibit 2**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Preliminary Approval of Class Action Settlement is attached as **Exhibit 3**.

## MEMORANDUM IN SUPPORT

Plaintiff in the above titled action individually and on behalf of himself and all others similarly situated, respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

Plaintiff and the proposed Class have reached a  class action settlement with Defendant ESO Solutions, Inc. ("ESO" or "Defendant") for a $757,500 non-reversionary common fund to resolve claims arising from September 2023 cyberattack that potentially impacted the highly sensitive information retained by ESO, a third-party software and data solutions company, for approximately 49,472 Texas residents (the "Data Breach"). *See* Bleichner Decl. ¶ 6. The Data Breach involved the potential access and exfiltration of names, phone numbers, addresses, Social Security numbers, patient account numbers, medical record numbers, insurance information, payer

information, diagnosis information, injury information, and medical treatment information (collectively "Personal Information"). Settlement Agreement ¶ 1.28.

The proposed Settlement is the result of arm's length negotiations with the assistance of an experienced mediator, the Honorable David E. Jones (ret.) of Resolute Systems, LLC, and provides significant relief to the Settlement Class. Settlement Agreement ¶ I; *see also* Bleichner Decl. ¶¶ 8-9. The settlement lies well within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Rule 23(e). *See* Bleichner Decl. ¶¶ 13, 23. Therefore, the Court should: (1) preliminarily approve the settlement, (2) appoint Robert Day as Class Representative, (3) appoint Plaintiff's Counsel as Class Counsel, (4) certify the Settlement Class for settlement purposes only, (5) direct that notice be sent to all Settlement Class Members in the reasonable manner outlined below, (6) set necessary settlement deadlines, and (7) schedule a Final Approval Hearing.

## II.    BACKGROUND

### A.  Factual and Procedural Background

This case arises from the potential compromise of Personal Information because of a September 2023 cyberattack experienced by ESO. CAC ¶ 35; *see also* Bleichner Decl. ¶ 6. Plaintiff and Class Members include Texas residents whose Personal Information was stored by ESO in its role as a software service that contracts with hospitals and healthcare systems. CAC ¶ 24. In response to the Data Breach, beginning on or around December 12, 2023, Defendant sent a Notice of Data Security Incident to Plaintiff and Class Members ("Notice Letter") providing a description of the type of Personal Information potentially involved. *Id.* ¶¶ 35-36.

Following the Data Breach, six separate putative class action lawsuits were filed. These cases were consolidated on January 10, 2024, and a consolidated complaint was filed on February

9, 2024. On January 10, 2024, the Court also entered an Order appointing Bryan L. Bleichner of Chestnut Cambronne PA, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and John Yanchunis of Morgan & Morgan Complex Litigation Group as Interim Class Counsel for Plaintiff and Joe Kendall of Kendall Law Group PLLC and Bruce W. Steckler of Steckler Wayne & Love PLLC as Texas Local Counsel. *Jones v. ESO Solutions, Inc.*, No. 1:23-cv-01557, ECF No. 8 (W.D. Tex. Jan. 10, 2024).

On February 09, 2024, the Consolidated Complaint was filed alleging that Plaintiff, individually and on behalf of the Class, suffered numerous actual and concrete injuries and would likely suffer additional harm in the future as a direct result of the Data Breach. CAC ¶ 115. Plaintiff's claims for damages include but are not limited to the following categories of harms: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time, spent on activities remedying harms resulting from the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; and (v) the present and continuing risk to their Private Information. *Id.* ¶ 341.

Plaintiff, individually and on behalf of other members of the Classes proposed in the CAC asserted claims for Negligence (Count I), Negligence Per Se (Count II), Breach of Third-Party Beneficiary Contract (Count III), Unjust Enrichment (Count IV), Declaratory Judgment and Injunctive Relief (Count V), Violation of the Florida Deceptive and Unfair Trade Practices Act (Count VI), Violation of the North Carolina Unfair and Deceptive Trade Practices Act (Count VII), and Violation of the New York Deceptive Trade Practices Act (Count VIII). *Id.* ¶¶ 233-345. Plaintiff sought injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law. *Id.* at pp. 81-84.

### B. Negotiations and Settlement

This Settlement is the result of lengthy arm's-length negotiations and hard bargaining. Bleichner Decl. ¶¶ 8-9. Before entering into this Settlement Agreement, Defendant produced informal discovery confirming the class size of roughly 49,472 potentially impacted Texas residents, the scope and source of the Data Breach, and Defendant's available insurance for the Data Breach. *Id.* ¶ 8. Through the informal settlement discovery, motion practice, and the mediation process, Plaintiff was able to properly evaluate damages on a class-wide basis. *Id*. On May 8, 2025, the Parties attended mediation with the Honorable David E. Jones (ret.) of Resolute Systems, LLC and reached a settlement in principle. *Id*. Subsequently, five plaintiffs entered into individual settlements and were dismissed from the CAC. *Id.* ¶ 9. This Settlement will resolve all claims related to the Data Breach for the Settlement Class. *See generally*, Settlement Agreement.

### C. Summary of Settlement Terms

Under the proposed settlement, Defendant will pay seven hundred fifty-seven thousand five hundred dollars ($757,500.00), which shall be deposited into the Escrow Account within thirty (30) business days of the Preliminary Approval Order. Settlement Agreement ¶ 1.37. The Settlement defines the Class as:

> **All Persons who received a Notice Letter from ESO and were residents of Texas at the time ESO distributed the Notice Letter to individuals.**

*Id.* ¶ 1.7. The Class specifically excludes all Persons who timely and validly request exclusion from the Class. *Id*. Additionally, the Class excludes Defendant's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is

found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.* ¶ 1.30. Under the Proposed Settlement, Defendant agrees to pay a total of $757,500.00 into the Settlement Fund. *Id.* ¶ 1.37.Furthermore, Defendant agrees under the Settlement Agreement to implement business practice changes, the cost of which shall also be borne by Defendant separate and apart from the Settlement Fund. *Id.* ¶ 2(C).

### 1. Settlement Benefits

The Settlement Fund will provide broad relief to the Class and offer several categories of relief. First, the Settlement Fund will be used to pay Cash Payments to all Settlement Class Members who submit a valid claim. Those valid claims may be subject to *pro rata* increase or decrease depending on the aggregated number of payments to valid claimants. *Id.* ¶ 2. In addition to the Pro Rata Cash Payment, Settlement Class Members may submit a Claim Form selecting the Out-of-Pocket Loss option, under which they may be compensated for valid and timely claims up to a maximum amount of $5,000 per individual. *Id.* The Settlement Fund shall be used to pay, in the following order: (i) all costs of Settlement Administration; (ii) Fees and Costs/Expenses; (iii) Service Awards; and (iv) Settlement Benefits. *Id.* ¶ 8.5.

To the extent any monies remain in the Settlement Fund following payment of all Settlement Administrative Costs, Attorneys' Fees, Costs, and Expenses, Service Awards, and Settlement Benefits, at the expiration of all monetary payments distributed to Settlement Class Members, a "Subsequent Settlement Payment" shall be distributed to the Cy Pres Designee subject to Court approval. *Id.*

## 2.    Scope of the Release

In exchange for consideration above, Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Breach at issue in this Litigation. *Id*. ¶ 6.1.

## 3.    The Notice and Administration Plan

Class Counsel, with Defendant's approval, has selected Kroll Settlement Administration LLC ("KSA") to be the Settlement Administrator. KSA will provide the Class with Notice and administer the claims. Defendant will send a Class List with all Settlement Class Members' names and mailing addresses, to the Settlement Administrator for the purpose of issuing Notice to the Settlement Class. Class Counsel reviewed settlement administration proposals from three settlement administrators before selecting KSA as the appropriate settlement administrator for this case. Bleichner Decl. ¶ 15. Class Counsel's decision, with Defendant's consent, to select KSA was based on the scope of settlement administrator KSA's proposed balanced against the cost for such services. *Id*. Class Counsel understands that any settlement administration costs and expenses will be deducted from the Settlement Fund and endeavored to select a settlement administrator for this case offering the broadest services for a price favorable to the Class. *Id*.

The Settlement Administrator has reviewed and approved the proposed Notice Plan, including the Claim Form, Long Notice, and Short Notice agreed upon by the Settling Parties. Settlement Agreement, Exhs. A (Claim Form); B (Long Notice); D (Short Notice). The Settlement Administrator shall establish a Settlement Website, along with a tollfree help line. Settlement Agreement ¶ 1.39.  The Settlement Administrator shall provide the approved Notice commencing within 30 days of the entry of a Preliminary Approval Order. Settlement Agreement ¶ 1.21.

The proposed Short Form Notice clearly and concisely informs Class Members of the amount of the Settlement Fund and their options: they may do nothing and be bound by the settlement, submit an objection, exclude themselves by completing an exclusion form, or file a claim form and be bound by the settlement. Settlement Agreement, Ex. B. The Settlement Administrator will also publish a Long Form Notice and Claim Form on the Settlement Website established and administered by the Settlement Administrator, which shall contain information about the settlement, including copies of the Notice, the Settlement Agreement, and all court documents related to the Settlement. Settlement Agreement ¶ 1.19. The Settlement Administrator will be responsible for accounting all claims made and exclusions requested, determining eligibility, and disbursing funds to Class Members. Settlement Agreement ¶ 9.1.

#### 4.    Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiff will also separately seek an award of attorneys' fees not to exceed 1/3 of the Settlement Fund (i.e., $252,475.00), and for reimbursement of Class Counsel's reasonable costs and litigation expenses which shall be paid from the Settlement Fund. Settlement Agreement ¶ 7.2; Bleichner Decl. ¶ 19. The Settlement Agreement further provides that Class Counsel will seek a Class Representative Service Award of $2,500 for the Class Representative. Settlement Agreement SA ¶ 7.3.

### III.    ARGUMENT

#### A.  The Court Should Preliminarily Approve the Settlement

Before the Settlement can be finally approved, the Settlement Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed Settlement. Fed. R. Civ. P. 23(e). This notification process takes time and can be expensive, so courts will generally first conduct a preliminary fairness review. *See Newberg on*

*Class Actions* § 13:10 (5th ed.). Here, preliminary approval of the Settlement is warranted for the reasons set forth.

### B.  Legal Standard

Under the revised Rule 23(e), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which is the requisite provision that governs final approval. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arm's-length negotiation." *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors to consider:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing-class member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23 factors. In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit identified six factors for courts to consider in

determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc*., 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *O'Donnell v. Harris County*, No. H-16-1414, 2019 WL 4224040, at *8–9 (S.D. Tex. Sept. 5, 2019)*.* (citation omitted); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019); see also Fed. R. Civ. P. 23(e)(2) Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to displace any [circuit caselaw] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

"When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003); *see also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, on Apr. 20, 2010, 910 F.Supp.2d 891, 930-31 (E.D. La. 2012), *aff'd sub nom.*; *In re Deepwater Horizon—Appeals of the Econ. & Prop. Damage Class Action Settlement*, 739 F.3d 790 (5th Cir. 2014) ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D.

Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement … the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

Here, the foregoing Rule 23 and *Reed* factors weigh in favor of preliminary approval, as there are no grounds to doubt the fairness of the settlement.

### C. The Proposed Settlement is Fair, Adequate, and Reasonable

#### 1. The Class Representative and Class Counsel Have Adequately Represented the Class

It has been approximately 18 months since the consolidation of the separate complaints, and Class Counsel have vigorously and actively represented the proposed Class, including coordinating among counsel to establish a leadership structure for Plaintiff's counsel, filing a Consolidated Amended Complaint, engaging Defendant's counsel to discuss efficiently litigating this matter, engaging in informal discovery, and—of most importance to the current motion—engaging in extensive negotiations that led to the proposed Settlement. Bleichner Decl. ¶¶ 6-9. The

proposed Class Representative has been an active participant in this process. *Id.* ¶¶ 21-22. Neither the Class Representative nor Class Counsel have any conflict with regard to representing the proposed Class. *Id.* ¶ 21. The adequacy of proposed Class Counsel is also demonstrated by their extensive experience, and prior success, in resolving litigation related to potential data breaches. *Id.* ¶¶ 4-5; *see also* Coordinated Plaintiffs' Motion to Appoint Interim Class Counsel, *Jones v. ESO Solutions, Inc.*, No. 1:23-cv-01557, ECF No. 7 (W.D. Tex. Jan. 09, 2024).

### 2. The Proposed Class Settlement Was Negotiated at Arm's Length Without Fraud or Collusion

The proposed Class Settlement in this case was the product of rigorous, hard-fought negotiations conducted at arm's length between opposing counsel who are familiar with class action litigation and the legal and factual issues in this Action. Bleichner Decl. ¶ 8. The negotiations ultimately leading to the Settlement required the services of an experienced, independent mediator for ultimate resolution. *Id.* ¶¶ 8-9.

There has been no fraud or collusion, and there are no agreements among the Settling Parties or their counsel apart from the Settlement Agreement. *Id.* ¶ 14. *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary."). The Parties engaged in extensive negotiations before the Honorable David E. Jones (ret.) of Resolute Systems, LLC. Bleichner Decl. ¶ 8. The parties exchanged lengthy mediation briefs in advance of the mediation wherein they discussed the strengths and weakness of their respective claims and defenses. *Id.* This free exchange of information, and the guidance of Judge Jones, allowed the Parties to reach an agreement in principle as the material terms of the Settlement. *Id.* ¶ 8-9. After reaching an agreement in

principle, the Parties spent significant time apart from the mediator negotiating the specific terms and language of the Settlement Agreement. *Id.* ¶ 9.

### 3.   The Settlement is Favorable Given Litigation Risks

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

Here, the parties settled this case approximately 18 months after Plaintiff first sought class wide relief. ESO during that time has repeatedly denied its liability and proved it was willing and able to vigorously defend itself, including through the filing of an extensive motion to dismiss. *Jones v. ESO Solutions, Inc.*, No. 1:23-cv-01557, ECF No. 25 (W.D. Tex. Mar. 28, 2024). Furthermore, data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350- CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception. The pursuit of class claims and

relief presents complex issues of law and fact and would require years of time to resolve and involve expensive expert discovery, among other issues. Yet there is no guarantee that lengthy litigation and expensive discovery would lead to greater benefits for the Class Members. In contrast, the Settlement provides Class Members with immediate monetary relief. Bleichner Decl. ¶¶ 8, 10.

### 4. The Stage of Proceedings and Amount of Discovery Support Settlement

The next factor asks whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. "Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it*." In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006); *see also In re Heartland*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The information necessary to evaluate the Settlement has been obtained through public sources as well as through informal discovery prior to mediation. There is no dispute that a Data Breach occurred, that certain types of unencrypted Personal Information were potentially accessed and exfiltrated, and that this occurred for approximately 49,472 Class Members. These data points alone enable a thorough assessment of the Settlement, particularly where the legal positions involved have been litigated in many other cases, providing a solid basis for a reasoned judgment.

13

**5.    The Settlement Terms Represent a Favorable Compromise,
Balancing the Likelihood of Success with Attendant Risks**

While Class Counsel believe that Plaintiff has a strong case on the merits, Defendant has a similarly strong belief to the contrary. There are numerous difficult factual issues involved in litigation of potential data breach issues, as well as complicated legal issues relating to causation and damages. *In re Citrix*, 2021 WL 2410651, at *3. A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming the district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

The settlement afforded here, as compared to the uncertainty of damages even following a successful finding of liability, weighs in favor of preliminary approval. Bleichner Decl. ¶ 8. As discussed in the section above relating to litigation risks, the time and expense involved for all Parties in resolving those issues suggests a reasonable early settlement is the wisest course for everyone concerned.

**6.    The Recovery is Within an Appropriate Range**

Class Counsel has handled numerous cases involving data breach allegations. *Id.* ¶¶ 4-5. This allows for a strong database of information on which to judge a proposed settlement. *Id.* A chart describing some of those settlements, including the proposed Settlement of this case, demonstrates that the proposed recovery is well within an appropriate range in terms of the amount recovered per Class Member. *Id.* ¶ 13.

### 7.   The Settlement is Supported by Experienced Class Counsel and the Proposed Class Representative

As previously discussed, Class Counsel have extensive experience with class actions of this nature and strongly support the proposal. *See* Bleichner  Decl. ¶¶ 4-5. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. 2d at 649 (*citing Pettway*, 576 F.2d at 1216); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference."). By their review and consent to the terms of the Settlement Agreement the proposed Class Representative is of the same opinion.

### 8.   The Settlement Treats Settlement Class Members Equitably Relative to Each Other

The final factor, Rule 23(e)(2)(D), looks at whether Settlement Class Members are treated equitably. Here, the Settlement provides for a Notice plan that is designed to reach as many Settlement Class Members as possible and provides Settlement Class Members with direct mail notice of the Settlement. *See* Section II(D)(3), infra. It also informs Settlement Class Members of their right to object to, or opt out of, the Settlement. *Id*. Every Settlement Class Member who submits a valid claim and who attests that he or she was potentially impacted by the Data Breach is eligible to receive a pro rata cash payment, and those who can prove out-of-pocket damages are eligible to receive payment up to $5,000. Settlement Agreement ¶ 2. The Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D).

In sum, each factor identified under Rule 23(e)(2) and as required by the Fifth Circuit in *Reed* is satisfied. *Reed*, 703 F.2d at 172. Given the litigation risks involved and the complexity of the underlying issues, the $757,500 non-reversionary common fund is an excellent result. It could not have been achieved without full commitment from the proposed Class Representative and

Class Counsel. We respectfully submit that the Settlement is both fair and adequate and that it meets each of the Rule 23(e)(2) and *Reed* factors such that notice of the Settlement should be sent to the Settlement Class. *See O'Donnell*, 2019 WL 4224040, at *9–10 (preliminarily finding the proposed consent decree and settlement agreement terms were fair, reasonable and adequate under Rule 23(e) and the governing case all where "[a]ll of the Rule 23(e)(2) and *Reed* factors weigh[ed] in favor of preliminarily approving the proposed consent decree and settlement agreement.").

### D.  The Court Should Preliminarily Certify the Settlement Class

#### 1.  The Settlement Class Meets the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure

Before assessing the Parties' Settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632. The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here.

#### *(a) Numerosity*

Rule 23 first requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no specific threshold that must be surpassed to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). That said, a showing that the class consists of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting *Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992)); see *In re Talbert*, 347 B.R. 804, 808-809 (E.D. La. 2005) (finding numerosity requirement met when class potentially consisted of 88 members).

Here, the numerosity requirement is easily met. The Settlement Class consists of approximately 49,472 members. *See* CAC ¶ 7.

### *(b) Commonality*

Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 368 (2011) (citing Fed. R. Civ. P. 23). "The principal requirement of [*Dukes*] is merely a single common contention that enables the class action 'to generate common answers apt to drive the resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d at 811 (citing *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)). "These 'common answers' may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct." *Id.* Regardless, "a single common question will do." *Id.* (citing *Dukes*, 564 U.S. at 359).

The commonality requirement is easily satisfied here. All Settlement Class Members' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Personal Information. Thus, common questions include, *inter alia*, whether Defendant engaged in the wrongful conduct alleged; whether Settlement Class Members' Personal Information was compromised in the Data Breach; whether Defendant owed a duty to Plaintiff and Settlement Class Members; whether Defendant breached its duties; whether Defendant unreasonably delayed in notifying Plaintiff and Settlement Class Members of the material facts of the Data Breach; and whether Defendant committed the common law and statutory violations alleged in the CAC. *See, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1054 ("The common factual question in this case is what actions Heartland took before, during, and after the data breach to safeguard the Consumer Plaintiffs' financial information."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16- MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020)

(common questions of whether defendant employed sufficient data security measures, knew of inadequacies, and timeliness of data breach disclosure satisfy commonality requirement).

### (c)  Typicality

Rule 23(a)(3) "requires that the named representatives' claims be typical of those of the class." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007). Here, Plaintiff's claims are typical of Settlement Class Members' claims because they arise from the same course of alleged conduct and are premised on the same legal theory. Plaintiff had Personal Information that was stored on Defendant's systems that was potentially compromised in the Data Breach, and so they suffered the same alleged injury, were allegedly harmed by the same alleged inadequate data security, and seek to assert the same underlying claims as the rest of the Settlement Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

### (d)  Adequacy of Representation

The Court should also easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). This requirement is satisfied when (i) there are no substantial conflicts of interest between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017). The existence of minor conflicts of interest between the plaintiff and the class "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d

at 814 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Both prongs are satisfied here.

The Plaintiff adequately represents the Settlement Class, as he has no conflicts of interest with other Settlement Class Members, is subject to no unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Bleichner Decl. ¶ 21. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *Id.* ¶ 4-5; *In re Heartland*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). Bleichner Decl. ¶ 4-5.

### 2. The Settlement Class Meets the Demands of Rule 23(b)(3)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at 614. Plaintiff seeks class certification under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### (a) Common Legal and Factual Questions Predominate in This Litigation

Common legal and factual questions predominate in this Litigation relating to the Data Breach and related allegations. The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible

to class-wide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it requires that common questions predominate over any questions affecting only individual class members. *Id.* "A common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (citations and quotations omitted).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendant owed a duty to Plaintiff and Settlement Class Members, whether Defendant breached its duty, and whether Defendant unreasonably delayed in notifying Plaintiff and Settlement Class Members of the material facts of the Data Breach. These issues are subject to "class-wide proof" and "outweigh those issues that are subject to individualized proof." *Id.* "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citations and quotations omitted). Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc.*, 2020 WL 4212811, at *7 (quotation marks omitted) (collecting cases). The Settlement Class meets the predominance requirement for settlement purposes, and certification will meet the objective of Rule 23(b)(3) to promote economy and efficiency of time, effort, and expense over separate suits.

### (b) A Class Action is the Superior Means to Adjudicate Plaintiff's Claims

The Court should find that the class action is the superior means of adjudication under Rule 23(b)(3). Each of the Rule 23(b)(3) factors, below, weigh in favor of finding superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

All of these factors favor class treatment in this case. The value of each Settlement Class Members' claim is much smaller than the cost it would take to litigate individual actions. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. It is desirable to concentrate the litigation of the claims into the present forum in view of the scale of the class under Rule 23(b)(3)(C). With approximately 49,472Class Members, a class action would be superior to individual adjudication. *See Mullen*, 186 F.3d at 627 (comparing a class that would consist of hundreds, instead of millions, of members). As detailed above, this Litigation includes other consolidated actions initiated by other Settlement Class Members, which weighs in favor of class treatment under Rule 23(b)(3)(B).

### 3. The Court Should Approve the Proposed Notice Program

Rule 23(e) requires that the Court "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable," under Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172 (1974). The proposed Notice

program meets these requirements. Here, the proposed Notice Program includes that Defendant will provide the Claims Administrator with a list of Settlement Class Members no later than 21 days following Preliminary Approval. *See* Settlement Agreement ¶ 3. Within 30 days of Preliminary Approval, the Settlement Administrator will send Notice to the Class (the "Notice Date"). *Id.* ¶ 1.21. The Settlement Administrator will also establish a dedicated Settlement Website with the Short Notice, the Long Notice, the Claim Form, and will update that website throughout the claim period. *Id*. ¶ 3.2. A tollfree line staffed with a reasonable number of live operators will be made available to address Settlement Class Members' inquiries. *Id*.

Substantively, Rule 23(c)(2)(B) requires, and the Notice Program provides, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *O'Donnell*, 2019 WL 4224040, at *26. Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id*. (citations and quotation marks omitted).

The Short Notice defines the Settlement Class, explains all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out. Further, it describes in detail the monetary relief provided by the Settlement Agreement, including the procedures for allocating and distributing the Settlement Fund amongst the Settlement Class Members, all Class Counsel, and the Settlement Administrator.

Settlement Agreement, Ex. D. The Notice will also indicate the time and place of the Final Approval Hearing, and explain the methods for objecting to, or opting out of, the Settlement. *Id*. It details the provisions for payment of Attorneys' Fees, Costs and Service Awards, and provides contact information for Settlement Class Counsel. *Id*. In light of the foregoing, the Notice Program has been designed to give the best notice practicable, is tailored to reach the Settlement Class Members, and ensures their due process rights are amply protected.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of this class action settlement including provisionally granting class certification for settlement purposes, preliminarily approving the terms of the Settlement Agreement as fair, adequate, and reasonable; preliminarily appointing Plaintiff as the Class Representative for settlement purposes only; preliminarily approving the Notice Program as set forth in the Settlement Agreement and set the dates for the Claims Deadline, Opt-Out Deadline, and Objection Deadline; and appointing KSA as the Settlement Administrator.

Dated: October 31, 2025

Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

John A. Yanchunis
Texas Bar No. 22121300
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, Florida 33602
Telephone: (813) 318-5189

23

*Jyanchunis@ForThePeople.com*

Bryan L. Bleichner*
Philip J. Krzeski*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
bbleichner@chestnucambronne.com
pkrzeski@chestnutcambronne.com

***Interim Class Counsel for Plaintiffs and the
Proposed Class***

\* Admitted *Pro Hac Vice*

Joe Kendall, State Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Telephone: (214) 744-3000
*jkendall@kendalllawgroup.com*

Bruce W. Steckler, State Bar No. 00785039
Paul D. Stickney, State Bar No. 00789924
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
*bruce@swclaw.com*
*judgestick@gmail.com*

***Texas Local Counsel for Plaintiffs and the
Proposed Class***

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service are being served this 31st day of October 2025, via the Court's CM/ECF System.

<u>/s/ *Gary M. Klinger*</u>
Gary M. Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

* Admitted *Pro Hac Vice*