**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE ESO SOLUTIONS, INC. BREACH LITIGATION | Case No. 1:23-cv-01557-RP |

<u>**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD**</u>

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

    A.    Plaintiff's Request for Attorneys' Fee Is Fair and Reasonable.................................... 3

    B.    The Court May Award Fees Based On The Percentage Of The Common Fund Method. 4

    C.    The Requested Attorneys' Fees Are Also Warranted Under The Lodestar Method. ... 6

    D.    The *Johnson* Factors Favor Plaintiff's Fee Request. ..................................................... 7

        1.    Substantial time and labor was required; class counsel assumed great risks.......... 8

        2.    The novelty and difficulty of the questions ............................................................. 9

        3.    The skill requisite to perform the legal service properly ..................................... 11

        4.    Preclusion of other employment by the attorney due to acceptance of the case... 12

        5.    Customary fee for similar work in the community ............................................... 12

        6.    Whether the fee is fixed or contingent .................................................................. 13

        7.    Time limitations imposed by the client or the circumstances .............................. 14

        8.    The amount involved and the results obtained ...................................................... 14

        9.    The experience, reputation, and ability of the attorneys ...................................... 14

        10.    The undesirability of the case ............................................................................... 15

        11.    The nature and length of the professional relationship with the client ................. 15

        12.    Awards in similar cases ........................................................................................ 16

    E.    The Requested Service Awards Are Reasonable ........................................................ 17

CONCLUSION ................................................................................................................. 17

ii

## **TABLE OF AUTHORITIES**

**Cases**

*Attias v. CareFirst, Inc.,* 2024 WL 1344401 (D.D.C. Mar. 29, 2024)..........................................11

*Batchelder v. Kerr-McGee Corp.,* 246 F. Supp. 2d 525 (N.D. Miss. 2003)...................................5

*Blackburn v. Conduent Commer. Sols. LLC,* 2020 WL 9810023 (W.D. Tex. Dec. 22, 2020).....17

*Blum v. Stenson,* 465 U.S. 886 (1984) ..........................................................................................12

*Boeing Co. v. Van Gamert*, 444 U.S. 472 (1980) ............................................................................3

*Brantley v. Surles,* 804 F.2d 321 (5th Cir. 1986)............................................................................8

*City of San Antonio v. Hotels.com, L.P.,* 2017 WL 1382553 (W.D. Tex. Apr. 17, 2017) .............6

*Cunningham v. Kitchen Collection, LLC,* 2019 WL 2865080 (E.D. Tex. July 3, 2019)................5

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373 (S.D. Tex. Dec. 18, 2001)............11

*Dickey's Barbecue,* 2023 WL 3914266 (N.D. Tex. June 8, 2023) .................................................16

*Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .......5

*Farrar v. Hobby,* 506 U.S. 103 (1992) ..........................................................................................14

*Fessler v. Porcelana Corona de Mex., S.A. de C.V,* 2020 WL 1974246 (E.D. Tex. Apr. 24, 2020) ...............................................................................................................................................6

*Fessler v. Porcelana Corona De Mex., S.A. DE C.V.,* 23 F.4th 408 (5th Cir. 2022) ...................14

*Fox v. Iowa Health Sys.,* 2021 WL 826741 (W.D. Wis. Mar. 4, 2021).....................................6, 10

*Fulton-Green v. Accolade, Inc.,* 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...........................14

*Garcia v. Matson*, 2022 WL 6935303 (5th Cir. Oct. 12, 2022) ....................................................17

*Gordon v. Chipotle Mexican Grill, Inc.,* 2019 WL 6972701 (D. Colo. Dec. 16, 2019)...............10

*Green-Cooper v. Brinker Intl., Inc.,* 73 F. 4th 883 (11th Cir. 2023) ............................................10

*Guadalupe v. Am. Campus Cmtys. Servs.,* 2020 WL 12029307 (W.D. Tex. Oct. 23, 2020) .......17

*Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621 (S.D. Iowa 2016).....................................................8

*Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017) ...............................................................................8

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) .............................................................................8

*In re Anthem, Inc. Data Breach Litig.,* 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...............14

*In re Brinker Data Incident Litig.,* 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ......................10

*In re CaptureRx Data Breach Litig.,* No. 5:21-CV-00523, ECF 54 (W.D. Tex. June 23, 2022). 16

*In re Catfish Antitrust Litig.,* 939 F. Supp. 493 (N.D. Miss. 1996)................................................5

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)..............................4

*In re Equifax Inc. Customer Data Sec. Breach Litig.,* 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .............................................................................................................................................13

*In re Marriott Int. Inc. Customer Data Security Breach Litig.,* 345 F.R.D. 137 (D. Md. 2023).. 10

*In Re Marriott Int. Inc. Customer Data Security Breach Litig.,* 2022 WL 1396522 (D. Md. May 3, 2022) ...........................................................................................................................................10

*In re Marriott Int. Inc.,* 78 F.4th 677 (4th Cir. 2023) ...................................................................10

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002)........................................3

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* 2020 WL 4212811 (N.D. Cal. July 22, 2020) .............................................................................................................................................13

*Johnson v. Ga. Highway Exp., Inc.,* 488 F.2d 714 (5th Cir. 1974)........................................4, 6, 7

*Johnson. Forbush v. J.C. Penney Co.,* 98 F.3d 817 (5th Cir. 1996)...............................................6

*King v. United SA Fed. Credit Union,* 744 F. Supp. 2d 607 (W.D. Tex. 2010) ...........................11

*Kostka*, 2022 WL 16821685 (5 Cir. Dec. 5, 2022) .......................................................................10

*Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976)................................................3

*Longden v. Sunderman,* 979 F.2d 1095 (5th Cir. 1992) .................................................................4

*Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319 (5th Cir. 1995) ..................................... 6

*Matson v. NIBCO Inc.,* 2021 WL 4895915 (W.D. Tex. Oct. 20, 2021) ........................................ 17

*Matthews v. Priority Energy Servs.,* 2018 WL 1939327 (E.D. Tex. Apr. 20, 2018)...................... 4

*McClain v. Lufkin Indus.,* 649 F.3d 374 (5th Cir. 2011)............................................................... 6

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .................................................................... 3

*Missouri v. Jenkins,* 491 U.S. 274 (1989)..................................................................................... 6

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .......................................................... 3

*Phillips v. Bay Bridge Administrators, LLC,* No. 1:23-CV-022-LY, ECF 53 (W.D. Tex. Apr. 24, 2023) ..................................................................................................................................... 16

*Ramirez v. J.C. Penney Corp., Inc.,* 2017 WL 6462355 (E.D. Tex. Nov. 30, 2017)...................... 5

*Ramirez v. J.C. Penney Corp., Inc.,* 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017) ...................... 5

*Savidge v. Pharm-Save, Inc.,* 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) .............................. 11

*Schwartz v. TXU Corp.,* 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).......................................... 5

*Smith v. Triad of Ala., LLC,* 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) .............................. 10

*Spano v. Boeing Co.,* 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016)............................................. 13

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632 (5th Cir. 2012) .............................. 4

*Von Clark v. Butler,* 916 F.2d 255 (5th Cir. 1990) ....................................................................... 8

*Welsh v. Navy Fed. Credit Union,* 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018)....................... 5

*Wilson v. Frontier Commc'ns Parent, Inc.*, 2025 WL 2421373 (N.D. Tex. June 20, 2025)........ 10

**Rules**

Fed. R. Civ. P. 23(h) .............................................................................................................. 1, 3

Fed. R. Civ. P. 54(d) ................................................................................................................. 1

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d), and as set forth in the settlement agreement (the "Settlement Agreement" or "Settlement") between Plaintiff Robert Day ("Plaintiff") and ESO Solutions, Inc. ("ESO" or "Defendant") (together with Plaintiff, the "Parties" or "Settling Parties"), Bryan L. Bleichner of Chestnut Cambronne PA, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and Bruce W. Steckler of Steckler Wayne & Love, PLLC (collectively, "Class Counsel") respectfully request that the Court award attorneys' fees in the amount of $252,475.00, and costs in the amount of $6,800.64 for reimbursement of reasonable litigation expenses. Additionally, Class Counsel request that the Court award Plaintiff a service award in the amount of $2,500.00.

## MEMORANDUM IN SUPPORT

Plaintiff individually and on behalf of himself and all others similarly situated, respectfully submits this Memorandum of Law in support of Plaintiff's Motion for an Award of Attorneys' Fees, Costs, and a Service Award.

## INTRODUCTION

This class action arises out of a targeted cyberattack on Defendant's network in September 2023 that Plaintiff alleges resulted in unauthorized access to the highly sensitive information retained by ESO, a third-party software and data solutions company, of approximately 49,472 Texas residents, among others (the "Data Incident"). Plaintiff alleges that Defendant failed to properly safeguard the information of similarly situated individuals, and that involved the potential access and exfiltration of names, phone numbers, addresses, Social Security numbers, patient account numbers, medical record numbers, insurance information, payer information, diagnosis information, injury information, and medical treatment information (collectively "Personal

1

Information").

Following the Data Incident, six putative class actions were filed, these cases were later consolidated by Order dated January 10, 2024. On February 9, 2024, a Consolidated Complaint was filed in which Plaintiff asserted claims for Negligence, Negligence Per Se, Breach of Third-Party Beneficiary Contract, Unjust Enrichment, Declaratory Judgment and Injunctive Relief, Violation of the Florida Deceptive and Unfair Trade Practices Act, Violation of the North Carolina Unfair and Deceptive Trade Practices Act, and Violation of the New York Deceptive Trade Practices Act.[1] While Defendant denied all of the allegations, the Parties engaged in mediation after having exchanged informal discovery. On May 8, 2025, the Parties attended mediation with the Honorable David E. Jones (ret.) of Resolute Systems, LLC and reached a settlement in principle.

This Settlement is largely attributable to Class Counsel's litigation efforts. The work that led to this result included pre-suit investigations, preparing and filing the initial and amended complaints; briefing oppositions to Defendant's motion to dismiss; engaging in informal discovery via the mediation process; and engaging in arm's-length settlement negotiations. For these efforts, Class Counsel now seek (1) $252,475.00 (approximately one third of the $757,500.00 recovered through the Settlement) as their reasonable attorneys' fees, (2) $6,800.64 in costs for reimbursement of out-of-pocket expenses incurred in the prosecution of this litigation; and (3) $2,500.00 as a service award to Plaintiff for his efforts taken on behalf of the Class. This amount will compensate Class Counsel for work already performed in this case and for all the work remaining to be performed, including making sure that the Settlement is fairly administered and implemented, preparing for and attending the final fairness hearing, and obtaining dismissal of this

---

[1] The Complaint included five additional Plaintiffs who were not Texas residents. Because this Settlement only pertains to residents of the state of Texas, they are not serving as Class Representatives.

action. Indeed, Class Counsel's lodestar is $561,462.35, which means the requested fees represent a multiplier of less than 0.5. Joint Decl. ¶¶ 25-26. As explained below, the requested fees and expenses are in line with Fifth Circuit precedent for fees and expenses in similar cases.

Further, the Notice Plan, which was implemented in accordance with the Preliminary Approval Order, informed Class Members that Class Counsel intended to apply to the Court for award of attorneys' fees up to $252,475.00 in addition to case costs and expenses, and an incentive payment for Plaintiff of $2,500.00. Class Members were made aware of Class Counsel's intentions to request the fees sought in this action, and not a single Class Member to date has objected to the Settlement or sought to be excluded from the Class. Thus, the Settlement enjoys the implicit support of the Class.

## ARGUMENT

### A.    Plaintiff's Request for Attorneys' Fee Is Fair and Reasonable.

An award of attorneys' fees is within the sound discretion of the district court. Fed. R. Civ. P. 23(h); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). The common fund doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, has long been a staple of class action settlements in federal courts. "[A] lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gamert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and thereby promote private enforcement of, and compliance with, federal and state laws. Indeed, the success of lawsuits, such as the instant case, depends on the availability and willingness of attorneys to bring them. Substantial fee awards encourage reputable law firms with skilled, capable attorneys to take the risk of serving as "private attorneys

3

general." *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1090 (3d Cir. 1976) (recognizing the importance of private attorneys general in the class action context to ensure "that legislative mandates be obeyed, administrative regulations respected, and constitutional guarantees observed."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002) ("A class action facilitates spreading of litigation costs among numerous litigants and encourages private attorney general enforcement of statutes."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993) (recognizing that "in order to encourage 'private attorney general' class actions" a "financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases for which they may never be paid.").

**B.**     <u>**The Court May Award Fees Based On The Percentage Of The Common Fund Method.**</u>

To calculate attorneys' fees in common fund cases, courts in the Fifth Circuit will typically use: (1) the percentage of the fund method, in which the court awards fees as a reasonable percentage of the common fund cross-checked with (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 644 (5th Cir. 2012) (endorsing "the district courts' continued use of the percentage method cross-checked with the *Johnson* factors"). *See also Matthews v. Priority Energy Servs.,* No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), report and recommendation adopted, No. 6:15CV448, 2018 WL 2193030 (E.D. Tex. May 11, 2018). In cross-checking the percentage fee, "courts set the lodestar multiplier by applying factors arising out of *Johnson v. Ga. Highway Exp., Inc.,* 488 F.2d 714, 718 (5th Cir. 1974) ("the *Johnson* factors"). Here, the requested fee of approximately one-third (33.33%) of the Settlement Fund is reasonable under the percentage of the fund method and is further confirmed by a loadstar

cross-check.

The Fifth Circuit has employed, and even favors, the percentage of the fund method when assessing whether the awards sought for attorneys' fees are reasonable and appropriate. *See Longden v. Sunderman,* 979 F.2d 1095, 1100 n.11 (5th Cir. 1992) (affirming district court's percentage fee award in securities class action, noting that the district court stated its preference for the percentage of recovery approach "as a matter of policy."); *Ramirez v. J.C. Penney Corp., Inc.,* No. 6:14-CV-601, 2017 WL 6462355, at *5 (E.D. Tex. Nov. 30, 2017), report and recommendation adopted, No. 6:14CV601, 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017); *Cunningham v. Kitchen Collection, LLC,* No. 4:17-CV-770, 2019 WL 2865080, at *3 (E.D. Tex. July 3, 2019); *Batchelder v. Kerr-McGee Corp.,* 246 F. Supp. 2d 525, 531 (N.D. Miss. 2003) ("A percentage fee approach, as opposed to a lodestar computation, is the preferred method for determining awards of attorneys' fees in common fund, or class action, cases."). In this action, Defendant has agreed to pay $757,500 into a Settlement Fund, which will fund, in addition to the claims of class members, the service awards, and attorneys' fees, costs, and expenses. Class Counsel requests an award of approximately one-third (33.33 percent) of the Settlement Fund, or $252,475.00, as reasonable attorneys' fees. Class Counsel also requests reimbursement of $6,800.64 in out-of-pocket expenses and costs reasonably incurred in the prosecution of this case.

This fee is reasonable and appropriate. Courts in the Fifth Circuit routinely award fees in the range of 30%-36% of the Settlement Fund. *See, e.g., Welsh v. Navy Fed. Credit Union,* No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the upper end[.]") (citing *In re Catfish Antitrust Litig.,* 939 F. Supp. 493, 503 (N.D. Miss. 1996) ("The petitioners present to the court citations of numerous cases wherein the presiding judge awarded

5

fees within a range of fifteen (15) to fifty (50) percent."); *Erica P. John Fund, Inc. v. Halliburton Co.,* No. 3:02-CV-1152-M, 2018 WL 1942227, at \*12 (N.D. Tex. Apr. 25, 2018) (awarding one-third of the Settlement Fund); *Schwartz v. TXU Corp.,* No. 3:02-CV-2243-K, 2005 WL 3148350, at \*27 (N.D. Tex. Nov. 8, 2005) ("Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method."). Therefore, the requested attorneys' fees of one-third of the Settlement Fund, or $252,475.00, is reasonable.

**C.      The Requested Attorneys' Fees Are Also Warranted Under The Lodestar Method.**

Under the lodestar approach, courts first multiply the number of hours reasonably spent on the case by each attorney's reasonable hourly rate in order to compute the lodestar and then adjusts that figure (by applying a multiplier) depending on the respective weights of the twelve factors set forth in *Johnson. Forbush v. J.C. Penney Co.,* 98 F.3d 817, 821 (5th Cir. 1996) (citing *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.), cert. denied, 133 L. Ed. 2d 113, 116 S. Ct. 173 (1995); *Johnson,* 488 F.2d at 717-719). To compensate Plaintiff's counsel for their work in prosecuting this case, it is appropriate to use current billing rates in calculating the lodestar. *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989) (current rates, rather than historical rates, should be applied in order to compensate for delay in payment). Courts also determine whether the hourly rates are reasonable by comparing them to prevailing hourly rates in the community for similar services by lawyers of comparable caliber in their skills, legal reputation, experience, and status (e.g., partner, counsel, associate). *See, e.g., City of San Antonio v. Hotels.com, L.P.,* No. 5-06-CV-381-OLG, 2017 WL 1382553, at \*10 (W.D. Tex. Apr. 17, 2017); *McClain v. Lufkin Indus.,* 649 F.3d 374, 381 (5th Cir. 2011). "The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' The relevant legal community is the community where the district court sits." *Fessler v. Porcelana*

*Corona de Mex., S.A. de C.V,* No. 4:17-CV-00001, 2020 WL 1974246, at *5 (E.D. Tex. Apr. 24, 2020).

Here, as reflected in the Joint Declaration of Class Counsel in support of Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Awards ("Joint Decl."), Plaintiff's counsel collectively spent approximately 629 hours litigating this or related actions, for a total current lodestar of $561,462.35. *See* Joint Decl., ¶ 25. The time reflected in Plaintiff's counsel's lodestar calculations is reasonable and was necessary for the effective and efficient prosecution and resolution of this litigation. In addition, the fees and expenses incurred in this litigation are all of a type that would normally be charged to a fee-paying client in the private legal marketplace. Plaintiff's counsel's current rates are also appropriate in light of prevailing rates for similar legal services provided by lawyers of reasonably comparable skill, experience, and reputation. Other courts have found Plaintiff's counsel's rates to be reasonable and have approved them. Further, Plaintiff's requested fee award currently represents less than a 0.5 multiplier of Plaintiff's counsel's collective lodestar. *Id.* ¶ 26. Because there is additional work required to obtain final approval, monitor the settlement, and assist Class Members, this multiplier will ultimately decrease. *Id.* Therefore, the lodestar crosscheck verifies the reasonableness of the attorneys' fee request.

**D.     The *Johnson* Factors Favor Plaintiff's Fee Request.**

There are 12 *Johnson* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 719–20 (internal quotations omitted). "Not all of the [*Johnson*] factors apply in every case, and the Court has broad discretion to determine which factors are relevant and the weight to assign those factors." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 628 (S.D. Iowa 2016), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017), and *aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017). Each of the *Johnson* factors will vary, depending on the case, and, rather than imposing a rigid application of each factor, the Fifth Circuit has entrusted the lower courts to apply those factors in view of the circumstances of a particular case. *Brantley v. Surles,* 804 F.2d 321, 325-26 (5th Cir. 1986). Courts should pay special attention to the time and labor involved, the customary fee, the amount involved, the result obtained, and the experience, reputation, and ability of counsel. *Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir. 1990). Here, however, all the *Johnson* factors support the requested fees award

### 1. <u>Substantial time and labor was required; class counsel assumed great risks.</u>

Class Counsel took this case on a fully contingent basis, investing time, effort and money with no guarantee of ever getting paid. Consideration of the efforts and time expended by Class Counsel and the risk they assumed establish that the requested fee is reasonable and fair.

As noted above, since the inception of this litigation, Class Counsel have exerted substantial efforts to move this case along expeditiously. Collectively, Class Counsel has expended 629 hours to litigate and resolve this dispute. All work performed by Class Counsel was necessary, performed without duplicity, and successfully advanced this litigation toward Settlement.

Class Counsel, among other things, have:

a.  before filing their respective complaints, investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers;

b.    self-organized the respective cases, moved for consolidation and leadership of the six actions, and moved for appointment of leadership;

c.    drafted and filed individual plaintiff Class Action Complaints and a Consolidated Class Action Complaint after the Court granted consolidation and appointed a leadership structure;

d.    fully briefed an extensive and detailed opposition to the motion to dismiss prepared by highly regarded defense counsel, resulting in the survival of at least one cause of action;

e.    discussed with Defendant the potential for early resolution, and exchanged confidential information in advance of the settlement discussions, which information provided by Defendant aided Plaintiff's counsel in developing an understanding the Data Incident, the breadth of the Data Incident, the size and composition of the Class and the potential damages to Class Members;

f.    conducted extensive direct negotiations with Defendant through its counsel, which proved successful in resolving the claims and resulted in the terms that would become the present Settlement;

g.    prepared for and attended mediation with the Honorable David E. Jones (ret.) of Resolute Systems, LLC which led to reaching a settlement in principle;

h.    prepared the Settlement Agreement and supporting documents, including the Notice, Summary Notice, claim form, proposed preliminary and proposed final approval orders;

i.    prepared and submitted Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and supporting brief, as well as a motion to amend the preliminary approval Order (ECF Docs. 57 and 59), which was ultimately granted when the Court preliminarily approved the Settlement (ECF Doc. 60);

j.    when necessary, conferred with one another about the status, strategy, and direction of the case and settlement negotiations; and,

k.    regularly conferred with the Plaintiff about the status, strategy, and direction of the case and settlement negotiations.

Therefore, the time and labor devoted to the litigation by Class Counsel supports the requested fee.

### 2.    The novelty and difficulty of the questions

The second *Johnson* factor also weighs in favor of awarding the fee requested because data breach class actions are still new and can present novel and complex issues, making a successful

outcome difficult to predict. Also, a successful outcome would ensue, if at all, only after prolonged and arduous litigation with an attendant risk of drawn-out appeals. Among national consumer protection class action litigation, data breach cases are some of the most complex and involve a rapidly evolving area of law. As one federal district court observed: "Data breach litigation is evolving; there is no guarantee of the ultimate result." *See Fox v. Iowa Health Sys.,* No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (quoting *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

Data breach class actions present novel and difficult legal questions, and are notoriously risky, complex cases involving issues of law and fact as data security continues to develop and evolve. *See, e.g., Kostka*, 2022 WL 16821685, at *11 ("in the Fifth Circuit, there is little case law on the subject of data breaches" and "[t]he fact that the case is now only at the pleading stage indicates that the greatest costs of potential litigation are still ahead, to say nothing of potential appeals"); *Wilson v. Frontier Commc'ns Parent, Inc*., 2025 WL 2421373, at * 7 (N.D. Tex. June 20, 2025), adopted 2025 WL 2419872 (N.D. Tex. Aug. 20, 2025) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them" and the dearth of Fifth Circuit case law on data breaches);

Class certification in contested consumer data breach cases is not common-first occurring in *Smith v. Triad of Ala., LLC,* No. 1:14-CV-324-WKW, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017), on reconsideration in part, No. 1:14-CV-324-WKW, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017), and more recently in *In re Brinker Data Incident Litig.,* No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021) (vacated in part *Green-Cooper v. Brinker Intl., Inc.,* 73 F. 4th 883 (11th Cir. 2023)), where a class was certified over objection to

10

plaintiffs' damage calculation. Class certification was granted in part and denied in part in *In Re Marriott Int. Inc. Customer Data Security Breach Litig.,* No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) (vacated and remanded *In re Marriott Int. Inc.,* 78 F.4th 677 (4th Cir. 2023)) (reinstated on remand *In re Marriott Int. Inc. Customer Data Security Breach Litig.,* 345 F.R.D. 137 (D. Md. 2023) (certifying several classes in a data breach class action). And most recently, class certification was granted in *Attias v. CareFirst, Inc.,* with the district court explaining: "[A] class action is the appropriate vehicle for the more than one million CareFirst customers whose information was accessed in the 2014 data breach to pursue their remaining breach of contract claim." 2024 WL 1344401, at *10 (D.D.C. Mar. 29, 2024). The same day as *Attias,* the Western District of Kentucky certified a class action in a data breach action involving the theft of Social Security numbers. *See Savidge v. Pharm-Save, Inc.,* 2024 WL 1366832, at *32 (W.D. Ky. Mar. 29, 2024) ("To summarize the Court's ruling on class certification under Rule 23(b), the Court finds that common questions of law or fact predominate over individual ones; a class action is superior in this case; and the class is readily ascertainable."). While certification of additional consumer data breach classes may well follow, class certification still remained a substantial risk in this case.

Accordingly, data breach cases are particularly risky for plaintiffs' attorneys and consequently, the requested fee award appropriately compensates for the risk undertaken by Plaintiff's counsel here.

### 3.    The skill requisite to perform the legal service properly

The third *Johnson* factor is the skill requisite to perform the legal service properly. Class Counsel exemplified this factor where they "performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution."

11

*King v. United SA Fed. Credit Union,* 744 F. Supp. 2d 607, 614 (W.D. Tex. 2010) (citing *Di Giacomo v. Plains All Am. Pipeline,* No. H-99-422001, 2001 WL 34633373, at *12, U (S.D. Tex. Dec. 18, 2001). Here, the lawyers representing the Plaintiff are well-experienced in this area of the practice and have successfully litigated data breach cases to settlement. Also, the result achieved in this Settlement is notable because the parties were able, through capable and experienced counsel, to reach a negotiated Settlement without involvement of the Court.

Class Counsel worked on behalf of the Settlement Class to obtain information from Defendant regarding the Data Incident and used that information (along with their experience and the knowledge gained from other data breach class actions) to negotiate the Settlement. Counsel achieved a superb result considering the outcome of the motion to dismiss and the minimal claims and avenues for recovery remaining.

**4.    Preclusion of other employment by the attorney due to acceptance of the case**

The application of the fourth *Johnson* factor (preclusion of other employment by the attorney due to acceptance of the case) provides some level of support for the requested fees because the pursuit of this litigation required a certain concentration of effort which prohibited counsel from engaging in other litigation. Plaintiff's counsel invested time, effort, and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment. Joint Decl. ¶ 19. Plaintiff's counsel will continue to expend additional time and effort in communicating with Plaintiff and Settlement Class Members, completing the motion for final approval of class action settlement, attending the Final Approval Hearing, and overseeing the distribution of settlement benefits. Joint Decl. ¶ 26.

**5.    Customary fee for similar work in the community**

As discussed previously, the requested customary billing rates reflect the particular legal

12

expertise of Plaintiff's counsel and are also based on established competitive market rates for national cases involving complex and class action litigation. Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). Class Counsel is entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Id.*, n. 11. Here, the relevant community is that of attorneys practicing multi-state class action litigation.

Class Counsel's lodestar is calculated using rates that have been accepted in numerous other data breach and consumer class action cases.

Class Counsel's hourly rates are also on par with market rates usually charged by other plaintiffs' firms handling complex data-breach class actions. Joint Decl. ¶ 26; *See In re Equifax Inc. Customer Data Sec. Breach Litig.,* No. 1:17-MD-2800-TWT, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (finding reasonable hourly rates charged by partners who billed $1050, $1000 $750, and $935 per hour); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* No. 16-MD-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020) (finding reasonable rates from $450 to $900 for partners, $160-$850 for non-partner attorneys, and $50 to $380 for paralegals); ); *Fulton-Green v. Accolade, Inc.,* No. CV 18-274, 2019 WL 4677954, at *12 (E.D. Pa. Sept. 24, 2019) (finding reasonable hourly rates range $202 to $975 per hour); *In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018) (finding reasonable hourly rates of partners from $400 to $970, non-partner attorneys from $185 to $850, and non-attorneys from $95 to $440). These rates are reasonable considering Class Counsel's significant experience and the relatively specialized and particular nature of this data breach class action. As such, the application of the *Johnson* factor 5 supports the requested attorneys' fees.

### 6.    <u>Whether the fee is fixed or contingent</u>

Plaintiff's counsel undertook this litigation on a purely contingent basis, with no assurance

13

of recovery of expenses or compensation for their time. Joint Decl. ¶ 17. The nature of contingency fees is that they are inherently uncertain and require counsel to assume more risk than in cases where compensation is based on billable hours. *Id.* Accordingly, *Johnson* factor 6 tips the scales in favor of the requested award because the percentage of fee applied to the total recovery obtained for the client reflects the uncertain nature of contingency fee agreements, and the fee percentage is generally one third of the total recovery and can be higher where risk and likely case expenses are expected to be relatively high.

### 7.    <u>Time limitations imposed by the client or the circumstances</u>

The time constraints here were typical of like-litigation; this factor is therefore neutral.

### 8.    <u>The amount involved and the results obtained</u>

The most critical factor in determining the reasonableness of a fee award is the "degree of the success obtained." *Fessler v. Porcelana Corona De Mex., S.A. DE C.V.,* 23 F.4th 408, 418 (5th Cir. 2022) (citing *Farrar v. Hobby,* 506 U.S. 103 (1992)). The result achieved in this Settlement weighs in favor of the requested attorneys' fees. This most critical factor supports the requested fee because the Settlement Agreement provides significant monetary relief. Joint Decl., ¶¶ 8, 11. Specifically, Defendant will establish a Settlement Fund of $757,500, which will be the source of all settlement costs and awards payments to Settlement Class Members, administrative costs, service awards, attorneys' fees, and costs and expenses. *Id.* Settlement Class Members will be entitled to three separate forms of relief from the Settlement Fund: (1) a *pro rata* cash payment; and (2) reimbursement for up to $5,000.00 of documented Out-of-Pocket Losses. SA ¶ 2(A)-(B). Therefore, this factor also weighs in favor of approval because Class Counsel achieved an excellent Settlement on behalf of the Class, who are entitled to a cash payment and reimbursement for actual losses they may have incurred as a result of the Data Incident.

### 9.    <u>The experience, reputation, and ability of the attorneys</u>

14

This factor has been addressed under factors 1 and 3 above. Counsel collectively have decades of experience litigating consumer class actions, including many involving data breaches, deceptive practices, breach of contract, and other types of allegedly wrongful conduct and have emerged as leaders in nationwide litigation against institutions over data breaches and improper storage and protection of sensitive personal data. Joint Decl. ¶¶ 3-4. Overall, throughout this litigation, Plaintiff's counsel have demonstrated to the Court that they have competently handled this litigation. In the process of reaching this Settlement, this case was defended by highly qualified and nationally recognized counsel with a great deal of experience in data breach cases. As such, the prompt resolution of the case further demonstrates that Plaintiffs' counsel managed this action skillfully, always mindful of Plaintiff's and Class Members' best interests, while facing challenging opponents, which further attests to the experience, reputation, and ability of the attorneys involved.

### 10.    The undesirability of the case

Given that data breach cases pose unique challenges, with areas of unsettled law and uncertain outcomes, cases like the one before this Court may be less desirable. Moreover, class action litigation is more involved, lengthier, and requires more discovery and more investigation than other types of litigation. Finally, Class Counsel here undertook this litigation on a contingency fee basis, which in itself carries more risk. All these factors contribute to the undesirability of the case. *Id.* ¶ 11.

### 11.    The nature and length of the professional relationship with the client

Plaintiff's counsel spent time building a relationship with the Plaintiff, discussing claims, and addressing questions and concerns. As addressed under factor 1, before filing the Complaint, Plaintiff's counsel investigated the potential claims against Defendant, interviewed potential

plaintiffs, and gathered information about the Data Incident and its potential impact on consumers. *Id.* ¶ 14. Plaintiff's counsel also regularly conferred with Plaintiff about the status, strategy, and direction of the case and settlement negotiations. *Id.* ¶ 36.

### 12.    <u>Awards in similar cases</u>

Finally, *Johnson* factor 12 (awards in similar cases) also supports the requested fee award. The Settlement is similar to results obtained in other data breach cases, which include, for instance: *In re CaptureRx Data Breach Litig.,* No. 5:21-CV-00523, ECF 54 (W.D. Tex. June 23, 2022) ($4,750,000 non-reversionary common fund for 2.4 million class members including a one-third attorneys' fees of $1,583,333.33 plus litigation expenses); *Dickey's Barbecue,* 2023 WL 3914266, at *17 (granting attorneys' fees of 1/3 of the common fund in a data breach class action settlement); *Phillips v. Bay Bridge Administrators, LLC,* No. 1:23-CV-022-LY, ECF 53 (W.D. Tex. Apr. 24, 2023) ($2,516,890 non-reversionary common fund for 250,899 class members including a one-third attorneys' fees of $838,963.33 plus $19,167.68 in litigation expenses).

For these reasons, Class Counsel should be reasonably compensated for its successful efforts in representing the Class and achieving a beneficial settlement in just four months.

In sum, Class Counsel's requested fee of $252,475.00, or one-third of the Settlement Fund, is facially reasonable under the percentage method. The lodestar crosscheck further confirms the presumption of reasonableness. Application of the *Johnson* factors further confirms the appropriateness of the requested fee award, which, respectfully, should be granted.

Class Counsel also incurred $6,800.64 in litigation expenses, which were all advanced by Plaintiff's counsel, were necessarily incurred in the prosecution of this case, and were also properly documented and prepared using contemporaneous time records. Such costs and expenses included court fees, service of process, and other costs that are necessary and reasonable to prosecuting a class action. These $6,800.64 in costs and expenses should be awarded in addition to Class

16

Counsel's attorneys' fee request.

**E.**     **The Requested Service Awards Are Reasonable**

Class Counsel move this Court to approve a service award of $2,500 to Plaintiff for his service as a Class representative. Courts approve reasonable service awards to compensate the named plaintiffs for their services. *Guadalupe v. Am. Campus Cmtys. Servs.,* No. 1:16-CV-967-RP, 2020 WL 12029307, at *2 (W.D. Tex. Oct. 23, 2020); *see also Matson v. NIBCO Inc.,* No. 5-19-CV-00717-RBF, 2021 WL 4895915, at *13 (W.D. Tex. Oct. 20, 2021), aff'd sub nom. *Garcia v. Matson*, No. 21-51151, 2022 WL 6935303 (5th Cir. Oct. 12, 2022) (finding that an award of $10,000 to each plaintiff was appropriate under the circumstances of the case and would adequately compensate plaintiffs for the service they provided and the burdens they shouldered.); *Blackburn v. Conduent Commer. Sols. LLC,* No. 1:19-CV-1229-RP, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020) (approving an award of $2,500 where plaintiff was instrumental in identifying the alleged violation and building the case). Likewise, the Plaintiff here has been instrumental in assisting Plaintiff's counsel throughout this proceeding, remaining in place as the sole representative of the Settlement Class here, which consists solely of Texas residents. Joint Decl., ¶ 36. This involvement was not merely nominal. *Id.* Plaintiff initiated and remained in contact with counsel; considered and questioned various pleadings in this case, including the Complaint and settlement papers; provided background documents and followed the progress of this litigation; and have been actively involved in the prosecution of the case, to ensure that Class Members received the best recovery possible given the particular circumstances and risks of the case. Balancing the services that Plaintiff rendered against the modest amount of the $2,500 requested, the Court should find such amount is reasonable.

**CONCLUSION**

Accordingly, for the abovementioned reasons, Plaintiff respectfully requests that the Court

17

grant Plaintiff's motion and award Class Counsel $252,475.00 in fees and $6,800.64 in expenses

and award Plaintiff a Service Award in the amount of $2,500.00.

Respectfully submitted,

By: */s/ Bryan Bleichner*___
    Bryan Bleichner
    **CHESTNUT CAMBRONNE PA**
    100 Washington Ave S, Ste 1700
    Minneapolis, MN 55401
    Telephone: (612) 339-7300
    bbleichner@chestnutcambronne.com

    Gary Klinger
    **MILBERG LLC**
    227 W Monroe St, Ste 2100
    Chicago, IL, 60606
    Telephone: (866) 252-0878
    gklinger@milberg.com

    John Yanchunis
    **MORGAN & MORGAN**
    201 N Franklin St, 7th Floor
    Tampa, FL 33602
    Telephone: (813) 223-5505
    jyanchunis@forthepeople.com

    Bruce Steckler
    **STECKLER WAYNE & LOVE**
    12720 Hillcrest Rd, Ste 1045
    Dallas, TX 75230
    Telephone: (972) 387-4040
    bruce@stecklerlaw.com

    *Attorneys for Plaintiffs and the Proposed Class*

18