**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE ESO SOLUTIONS, INC. BREACH LITIGATION | Case No. 1:23-cv-01557-RP |

**<u>PLAINTIFF'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT</u>**

i

**TABLE OF CONTENTS**

MEMORANDUM IN SUPPORT.................................................................................................. 1

I.  INTRODUCTION ......................................................................................................... 1

II.  INCORPORATION BY REFERENCE .......................................................................... 3

III.  SUMMARY OF SETTLEMENT TERMS...................................................................... 3

 A.  The Settlement Class.............................................................................................. 3

 B.  Settlement Benefits ................................................................................................ 4

 C.  Notice Program and Settlement Administration............................................................ 5

 D.  Attorneys' Fees and Service Award ......................................................................... 6

IV.  LEGAL STANDARD.................................................................................................... 8

V.  ARGUMENT ................................................................................................................ 9

 A.  The Settlement is Fair, Reasonable, and Adequate, and Should be Approved................ 9

  1.  Plaintiff and Class Counsel Provided Excellent Representation. ............................ 10

  2.  The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations. ................................................................................................................... 11

  3.  The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.......................................................................................................... 11

  4.  The Parties Entered into the Settlement After Significant Litigation and Discovery… ................................................................................................................... 13

  5.  The Settlement Terms Appropriately Balance the Merits of Plaintiff's Claims with the Likelihood of Success with Attendant Risks. ...................................................... 13

  6.  The Recovery is Within an Appropriate Range. ...................................................... 14

  7.  Experienced Class Counsel and the Proposed Class Representative support the Settlement. .......................................................................................................... 14

  8.  The Settlement Treats Class Members Equitable Relative to Each Other................ 15

 B.  The Court Should Finally Certify the Settlement Class.............................................. 15

 C.  The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process. ............................................. 16

VI.  CONCLUSION............................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 3, 2019)............................................................................................................... 12

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ..................... 11

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004)................................................................. 12, 13

*Billittri v. Sec. Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011)........................................................................................................................ 16

*Burford v. Cargill, Inc.*, No. 05-0282, 2012 WL 5472118 (W.D. La. Nov. 8, 2012)................... 10

*In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651 (S.D. Fla. June 11, 2021) .................................................................................................................................................. 12

*In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322 (5th Cir. 1981) ............................... 14

*Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021)................................................................................................................................... 12

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)..................................................................... 9, 12

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ..................................................... 14

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752 (10th Cir. 2020).............. 17

*Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ............................................................... 17

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1046 (S.D. Tex. 2012)............................................................................................................ 10, 12, 13

*Jones v. ESO Sols., Inc.*, No. 1:23-cv-01557, ECF No. 7 (W.D. Tex. Jan. 9, 2024) .................... 11

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................................. 9, 14

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................................. 16

*O'Donnell v. Harris Cnty.*, No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) .... 8

*Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) ......................................... 9, 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................ 16

*Purdie v. Ace Cash Express, Inc.*, No. 3:01-cv-1754-L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003)............................................................................................................................................ 9

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ........................................................ 8, 14

*Stott v. Cap. Fin. Servs.*, 277 F.R.D. 316 (N.D. Tex. 2011) ........................................................ 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) ............................... 8

*Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018)..................................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................................................... 15

Fed. R. Civ. P. 23(c) ................................................................................................................ 16, 17

Fed. R. Civ. P. 23(e) ......................................................................................... 1, 8, 9, 14, 15, 16, 18

**Other Authorities**

Fed. Jud. Ctr.*, Judges' Class Action Notice and Claims Process Checklist & Plain Language Guide* (2010) ............................................................................................................................. 18

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Robert Day ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by and through the undersigned Class Counsel,[1] hereby submits this Motion for Final Approval of Class Settlement and Memorandum in Support, requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement ("S.A.") (ECF 57-1). In support thereof, Plaintiff has filed the accompanying Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement; the Declaration of Gary M. Klinger ("Klinger Decl.") attached as **Exhibit 1;** the Declaration of Settlement Administrator Regarding Notice Procedures and Settlement Administration ("Kroll Decl.") attached as **Exhibit 2;** the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3.**

## <u>**MEMORANDUM IN SUPPORT**</u>

Plaintiff in the above-titled action, individually and on behalf of himself and all others similarly situated, respectfully submits this memorandum of law in support of Plaintiff's Motion for Final Approval of Class Action Settlement.

## I.     INTRODUCTION

If approved, the Settlement will successfully resolve the claims of approximately 49,472 Texas residents whose personal identifying information ("PII") was allegedly accessed during a September 2023 Security Incident that impacted Defendant ESO Solutions' ("Defendant" or "ESO") network and resulted in the unauthorized disclosure of names, phone numbers, addresses,

---

[1] The Court appointed Plaintiff Robert Day as the Settlement Class Representative and appointed Bryan L. Bleichner of Chestnut Cambronne PA, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, John A Yanchunis of Morgan & Morgan Complex Litigation Group, and Bruce W. Steckler of Steckler Wayne & Love, PLCC as Class Counsel (ECF 58)

Social Security numbers, patient account numbers, medical record numbers, insurance information, payer information, diagnosis information, injury information, and medical treatment information (collectively "Private Information"). *See* S.A. ¶ 1.11.

The Settlement negotiated on behalf of Plaintiff and Class Members provided benefits to the class through a $757,500 non-reversionary common fund from which Settlement Class Members were eligible to recover: (1) a pro rata cash payment, and (2) reimbursement for out-of-pocket losses up to $5,000. *Id.* ¶¶ 2.A, 2.B. The Qualified Settlement Fund also covers all costs of class notice and settlement administration, attorneys' fees and costs, and a Class Representative Service Award. In addition to the benefits provided via the Settlement Fund, Defendant has committed to remedial measures to protect the Settlement Class from future cyber-incidents at its own expense and separate from other settlement benefits. *Id.* ¶ 2.C. Thus, the Settlement represents an excellent result for the Settlement Class and provides them with meaningful and immediate benefits to remedy the harm they have allegedly suffered, or will suffer, due to the Data Incident.

On November 12, 2025, this Court granted preliminary approval to the Settlement,[2] finding that it is "fair, reasonable, and adequate, subject to further consideration at the Fairness Hearing." ECF 60, at 1. The Court-ordered notice plan has since been successfully executed, and the response to the Settlement has been favorable, with only three persons opting out of the Settlement and no objections. *See* Kroll Decl. ¶ 17. This response weighs in favor of final approval. For the reasons detailed below, Plaintiff respectfully submits that the Settlement meets the standard for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class.

---

[2] The Court amended its Order granting preliminary approval to the Settlement on November 25, 2025, following Plaintiff's Unopposed Motion to Amend Preliminary Approval Order. The Motion to Amend noted a minor and insignificant typographical error, misstating the size of the Settlement Class affected by the Data Incident. The Amended Order contains the correct Settlement Class Size, but otherwise is substantively unchanged.

Plaintiff, therefore, respectfully requests that the Court finally approve the Settlement and enter a final judgment dismissing the case.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiff refers this Court to and hereby incorporates by reference, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement filed on October 31, 2025 (ECF 57), and the accompanying Exhibits, including the proposed Settlement Agreement filed in conjunction herewith (ECF 57-1). Plaintiff also incorporates by reference Plaintiff's Motion for Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Award (ECF 62), filed on January 27, 2026.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as:

**All Persons who received a Notice Letter from ESO and were residents of Texas at the time ESO distributed the Notice Letter to individuals.**

S.A. ¶ 1.7. The Settlement class consists of approximately 49,472 potentially impacted Texas residents. The Settlement excludes those who timely opt-out of the Settlement. *Id.* Additionally, the Class excludes Defendant's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal

3

activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.* ¶ 1.30. The Court preliminarily certified the Settlement Class for settlement purposes. ECF 58, 60.

### B. Settlement Benefits

The Settlement establishes a $757,500 non-reversionary Settlement Fund from which Defendant will provide Settlement Class Members with several categories of benefits targeted at remediating the specific harms they claim to have suffered as a result of the Data Incident. The benefits of the Settlement are available to all Settlement Class Members and addresses the typical types of repercussions which arise following a data breach. The Settlement provides the following benefits to all Settlement Class Members who submit a valid claim.

First, all Settlement Class Members will be eligible for a pro rata cash payment. S.A. ¶ 2. Those valid claims may be subject to an increase or decrease depending on the aggregated number of payments to valid claimants. *Id.* Second, in addition to the pro rata cash payment, Settlement Class members may submit Claim Forms for out-of-pocket expenses up to $5,000. *Id.* The reimbursement of documented out-of-pocket expenses is detailed in the Long Form Notice approved by the Court at preliminary approval. *See* ECF 57-1, at 42, 46.[3]

The Settlement Fund shall be used to pay, in the following order: (i) all costs of Settlement Administration; (ii) Fees and Costs/Expenses; (iii) Service Award; and (iv) Settlement Benefits. S.A. ¶ 8.5. To the extent any monies remain in the Settlement Fund following payment of all Settlement Administrative Costs, Attorneys' Fees, Costs and Expenses, Service Award, and Settlement Benefits, at the expiration of all monetary payments distributed to the Settlement Class

---

[3] These losses include, but are not limited to, any costs incurred from credit monitoring, freezing or unfreezing credit reports, fax, postage, copying, unauthorized charges on credit or debit cards, and other expenses reasonably attributable to the Security Incident.

Members, a "Subsequent Settlement Payment" shall be distributed the Cy Pres Designee subject to Court approval. *Id.*

### C. Notice Program and Settlement Administration

The Settlement also provides that the costs of notice and settlement administration will be paid from the Settlement Fund. S.A. ¶ 2.3. The Court approved the proposed notice program when it granted preliminary approval, and the Settlement Administrator, Kroll, with the assistance of the Parties, effectuated the notice program consistent with the Settlement Agreement and Preliminary Approval Order. *See* Kroll Decl. ¶ 3. On December 3, 2025, Kroll received the class list from Defendant containing 49,472 records. *Id.* ¶ 8. Kroll undertook steps to review the Class Member Information prior to the mailing of Short Notices, including the removal of 946 duplicate records, resulting in 48,526 unique records. *Id.* Kroll ran the Class Member information through USPS's National Change of Address database and updated the Class Member Information with address changes received from the database. *Id.*

On December 12, 2025, Kroll caused the mailing of 48,526 Short Notices via first-class mail. *Id.* ¶ 9. Of the Short Notices attempted for delivery, 8,300 were returned as undeliverable as addressed. *Id.* ¶ 11. Kroll ran the returned Short Notices through an advanced address search, which produced 4,560 updated addresses, and Kroll subsequently re-mailed the Short Notices to the updated addresses. *Id.*

Following all re-mailings, Kroll has reason to believe that Notice directly reached approximately 44,786 of the 48,526 unique Class Members provided in the Class list, equating to a notice rate of approximately 92.30%. *Id.* ¶ 12. This exceeds the 70% threshold considered a high percentage by the Federal Judicial Center Guidelines. *Id.*

In addition, Kroll established a dedicated Settlement Website at www.esosettlement.com and a toll-free telephone number, (833) 630-5360 to allow Settlement Class Members to access Settlement documents, file claims, and address specific questions. *Id*. ¶¶ 5,7. The website contains a summary of the Settlement, important dates and deadlines, contact information for the Settlement Administrator, answers to frequently asked questions, and downloadable copies of relevant documents, including the Settlement Agreement, Preliminary Approval Order, Long Notice, Claim Form, and Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award. *Id.* ¶ 5. The website also allowed Class Members the opportunity to file a claim online. *Id.*

Settlement Class Members were provided up to and including February 10, 2026, to object to or submit a request for exclusion from the Settlement. *Id.* ¶ 16. As of April 2, 2026, Kroll has received only three (3) requests for exclusion and no objections. *Id.* ¶ 17. Settlement Class Members had up to and including March 12, 2026, to submit a claim for benefits. As of April 1, 2026, Kroll received 1,217 Claim Forms through the mail and 943 Claim Forms for a total of 2,160 Claims received. *Id.* ¶ 14. Of the claims received, 2,137 were submitted timely, and 23 were late.[4] *Id.* In total, of the 44,786 class members who likely received direct notice, 2,137 submitted timely claims for a claims rate of 4.7%.

### D. Attorneys' Fees and Service Award

On January 27, 2026, Plaintiff moved for an award of attorneys' fees of one-third of the settlement fund or $252,475, plus reasonable expenses of $6,800.64, and a service award to Plaintiff in the amount of $2,500. (ECF 62). The amounts sought will compensate Class Counsel for the substantial worked performed in this case, including pre-suit investigations, interviews with potential class members, preparing and filing the initial and consolidated complaints, briefing

---

[4] Kroll is still in the process or reviewing and validating Claim Forms. For purposes of this Motion, the Claim Forms that were received late are not included in the claims rate.

extensive oppositions to Defendant's Motion to Dismiss, engaging in informal discovery via the mediation process, preparing the settlement agreement alongside Defense Counsel, obtaining settlement administrator bids and determining the best fit for settlement administer for this case given class size and notice program needs, preparing settlement motions for this Court, and assisting in the settlement administration process to date. The work is not yet complete. Class Counsel remains committed to ensuring the Settlement is fairly administered and implemented post-final approval.

As noted in Plaintiff's Motion and Memorandum of Law in Support of Motion for Attorneys' Fees, Costs, and Service Award (ECF 62), the requested fees and expenses are in line with Fifth Circuit precedent for fees and expenses in similar cases. Further, the fees requested were filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement, specifically to give Class Members an opportunity to review the request and raise objections.[5] No Class Member objected.

Plaintiff also seeks a Service Award of $2,500. S.A. ¶ 7.3. The Service Award is sought in recognition of the time, effort, and risks undertaken by Plaintiff in representing the Class and assisting in the prosecution and resolution of this matter, including reviewing pleadings, assisting in the investigation, remaining available for consultation throughout informal discovery and settlement negotiations, and reviewing and signing the Settlement Agreement. Klinger Decl. ¶ 9-10. Plaintiff has been involved in this case for nearly two years and has been actively involved to ensure the Class Members received the best possible recovery given the particular circumstances and risk of the case. *Id.*

---

[5] The fees sought were also included in the Settlement Agreement and were publicly available during the entirety of the claims period.

## IV.    LEGAL STANDARD

Plaintiff brings this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides that a court should consider whether

> (A) The class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members' claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treat class members equitably relative to each other.

Rule 23(e)(2).[6] These factors are consistent with the common-law criteria that preceded rule 23. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (laying out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class Members); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *O'Donnell v. Harris Cnty.*, No. CV H-16-1414, 2019 WL

---

[6] There are no agreements here between the Parties except those set forth in, or explicitly reference in the Settlement. Thus Rule 23(e)(2)(C)(iv) is irrelevant for purposes of this Motion.

4224040, at *8 (S.D. Tex. Sept. 5, 2019). "When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. Civ.A.301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

## V.    ARGUMENT

### A.  The Settlement is Fair, Reasonable, and Adequate, and Should be Approved

Under both Rule 23(e) factors and the Fifth Circuit's *Reed* factors, the Court should grant Plaintiff's Motion for Final Approval of this Settlement, which provides immediate relief to approximately 49,472 Class Members affected by Defendant's Security Incident. As the Court held when it granted preliminary approval, the Settlement is fair, reasonable, and adequate" and

Plaintiff asserts that the Settlement now warrants final approval following the notice period. (ECF 60). Nothing has changed since preliminary approval that should alter this assessment. Rather, at the time of filing this Motion 2,137 timely claims have been filed (4.7% claims rate), only three Class Members submitted requests for exclusion, and no objections were received out of a class of approximately 49,472 further supporting that the Settlement is, in fact, fair, reasonable, and adequate. Klinger Decl. ¶ 6; *see Burford v. Cargill, Inc*., No. 05-0282, 2012 WL 5472118, at \*6 (W.D. La. Nov. 8, 2012) (approving a class settlement because "not a single class member objected to the settlement" and that "the existence of 2 opt-outs established that "the settlement process worked" while also showing there was not "dissatisfaction with the settlement."). For these reasons, and for the additional reasons Class Counsel will show the Court below, the Court should finally approve the Settlement.

### 1.   Plaintiff and Class Counsel Provided Excellent Representation.

Class Counsel vigorously and zealously litigated this action from its inception. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (S.D. Tex. 2012) (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

This case has been litigated for over two years. Class Counsel filed a consolidated Class Action Complaint, consolidating six cases into a single complaint (ECF 16), coordinated a leadership structure (ECF 7), briefed Defendant's Motion to Dismiss (ECF 31), engaged in informal discovery, and engaged in extensive mediation with respected mediator the Honorable David E. Jones (ret.). Klinger Decl. ¶ 2. Throughout the entire case, Class Representative Robert

Day was an active participant in the process, including providing documentation and answering Class Counsel's many questions. *Id.* ¶ 9-10.

The adequacy of proposed Class Counsel is demonstrated by their extensive experience and prior successes in resolving complex litigation related to data breaches. *See Joint Declaration of Class Counsel in Support of Plaintiff's Motion for Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Award* (ECF 62-1) ¶ 2; *see also* Coordinated Plaintiffs' Motion to Appoint Interim Class Counsel, *Jones v. ESO Solutions, Inc.*, No. 1:23-cv-01557, ECF No. 7 (W.D. Tex. Jan. 09, 2024).

### 2. The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations.

This Settlement is the result of arm's length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches with the assistance of an experienced mediator, the Honorable David E. Jones (ret.). Klinger Decl. ¶ 2. There has been no fraud or collusion, and there are no agreements between or among the Settling Parties or their counsel apart from the Settlement Agreement. *Id.* ¶ 2, 11. "The Court may... presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at \*12 (W.D. Tex. Aug. 20, 2018).

As detailed in Plaintiff's Unopposed Motion for Preliminary Approval (ECF 57, at 10), the Parties were only able to resolve this case after the exchange of informal discovery, allowing the parties to properly evaluate class size and damages, and extensive full-day mediation.

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am.,*

*Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland*, 851 F. Supp. 2d at 1064; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

Here, the Parties settled this case approximately 18 months after Plaintiff first sought class-wide relief. During that time, ESO has repeatedly denied its liability and proved it was willing and able to vigorously defend itself, including through the filing of an extensive motion to dismiss (ECF 25). Further, data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests.*, Inc., No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350- CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages*.")*; *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception.

The pursuit of nationwide claims and relief presented complex issues of law and fact. In contrast, the Settlement obtained provides immediate and direct relief to Class Members now and is within the settlement range for comparable data incident settlements. *See* Klinger Decl. ¶ 3. These facts support the idea that continued litigation would be time-consuming and expensive, and weighs in favor of final approval.

**4.    The Parties Entered into the Settlement After Significant Litigation and Discovery.**

The next factor involves whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); see also *In re Heartland*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

Here, the Parties were able to exchange and analyze the necessary information via public sources and informal discovery prior to mediation. There is no dispute that a Data Incident occurred, that certain types of unencrypted Personal Information were potentially accessed and exfiltrated, and that this occurred for approximately 49,472 Class Members. Furthermore, the informal discovery addressed the critical factors relating to the sensitivity of the type of data and class size. This information provided a sufficient basis for a reasoned assessment of the value of the Settlement, particularly where class counsel has litigated and resolved the same legal issues in state and federal courts throughout the country, and Class Counsel can identify the strengths and weaknesses of the claims and defenses presented in this case, providing a solid basis for reasoned judgment.

**5.    The Settlement Terms Appropriately Balance the Merits of Plaintiff's Claims with the Likelihood of Success with Attendant Risks.**

While Class Counsel believes Plaintiff has a strong case on the merits, Defendant has a similarly strong belief to the contrary. While it is undisputed that the data incident occurred, it is strongly disputed that the Defendant's conduct fell below any standard or that the incident contributed to any class-wide harm or damages. As such, there are a number of controversial

13

factual issues involved in this litigation, including class certification, liability, causation, and damages. Klinger Decl. ¶ 5. A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is unknown and questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

Accordingly, this factor, too, supports approval of the Settlement.

### 6. The Recovery is Within an Appropriate Range.

Class Counsel has handled numerous cases involving data breach allegations. Klinger Decl. ¶ 12. This allows for a strong database of information on which to judge a proposed settlement. *Id.* In light of the litigation risks described *supra* and the chart detailed in the accompanying declaration, the proposed Settlement meets and exceeds other data incident settlements with comparable class sizes. *Id.* ¶ 3. This factor also supports final approval of the Settlement.

### 7. Experienced Class Counsel and the Proposed Class Representative support the Settlement.

As discussed, Class Counsel have extensive experience with similar data security incident class actions, and fully endorse the settlement. *See* Klinger Decl. ¶ 12. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference."). Moreover, Class Representatives equally support the Settlement. Klinger Decl. ¶ 10.

14

**8. The Settlement Treats Class Members Equitable Relative to Each Other.**

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provides for a notice plan that is designed to reach as many Class Members as possible and provides Class Members with direct mail notice of the Settlement. *See supra* Section III(B). It also informs Class Members of their right to object to, or opt out of, the Settlement. *Id.* Every Class Member who submits a valid claim and who attests that he or she was impacted by the Security Incident is eligible to receive a pro rata cash payment, and those who can prove out-of-pocket damages are also eligible to receive reimbursement for damages up to $5,000. The Settlement treats Settlement Class Members equitably to each other, satisfying Rule 23(e)(2)(D).

**B. The Court Should Finally Certify the Settlement Class.**

The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here. Further, settlement classes are routinely certified in consumer data breach classes, and this case presents no different. This Court already found when it preliminarily approved the Settlement that it likely would certify the Settlement class. *See* ECF 60, ¶ 3. The Court determined that, based on the information provided, numerosity, commonality, typicality, and adequacy were each satisfied and that "a class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this Action." *Id.*

By all measures, the Settlement Class continues to meet the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class members' claims, the Court should finally certify the Settlement Class for settlement purposes. Since preliminary approval, nothing has

changed the factual predicate relative to the Rule 23(a) and pertinent Rule 23(b) factors that would disrupt the Court's previous analysis. Therefore, Plaintiff respectfully requests that the court finalize its decision for the reasons set forth in Plaintiff's Preliminary Approval Motion and Supporting Memorandum. *See* ECF 57 at 16-21.

### C. The Settlement Administrator Provided Notice Pursuant to the Court's Preliminary Approval Order and Satisfied Rule 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Fed. R. Civ. P. 23(c)(2)(B). the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the short form direct Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement

16

Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. The Notice also directed Class Members to the toll-free number and website for more information, including where the long form notice and settlement documents could be found. Thus, it was substantively adequate. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic*, LLC, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). Kroll mailed notices directly to 48,526 Settlement Class Members via first-class mail, and re-issued mail notice to 4,560 addresses which were previously undeliverable. Kroll Decl. ¶¶ 9, 11. In total, the Short Form Notices likely reached 44,786 of the 48,526 Class Member addressed received by Kroll. *Id.* ¶ 12. The Short Form Notice provided a brief overview of the settlement terms, the monetary benefits available, and the options for Class Members, and pointed the Class Members to the Settlement Website and toll-free number where additional settlement information could be obtained. S.A. Ex. D. It also contained a tear-off claim form, which enabled Class Members to submit a claim directly from the Short Notice. After re-sending undeliverable notices following an advanced address search, Kroll opines that notice reached 92.30% of the Class. Kroll Decl. ¶ 12.

This meets the higher end of the goal reach of 70-95% that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. *Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist & Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files /2012/NotCheck.pdf.

Finally, in addition to the direct mail notice, Kroll established a dedicated website for the Settlement where relevant documents were posted for Settlement Class Members to review. Kroll Decl. ¶ 5. Kroll also established a toll-free telephone number where Settlement Class Members could call and obtain additional information regarding the Settlement. *Id.* ¶ 7. The website included important dates such as claims deadlines, opt-out and exclusion deadlines, and the date of the final approval hearing, as well as a summary of class members' legal rights. *Id.* ¶ 5. At the top of the page were links to frequently asked questions and important documents, including the long form notice, settlement agreement, preliminary approval documents, and a link to submit a claim. *Id.*

## VI.   CONCLUSION

In sum, Plaintiff has negotiated fair, adequate, and reasonable Settlement that provides Class Members with significant relief, and the Settlement Administrator and Class Counsel have executed a highly successful notice program that meets all the requirements of Rule 23 and satisfies due process requirements. The Notice Plan provided the best notice practicable and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines. There are no objections to the Settlement, only three opt out requests, and 2,137 timely claims to date. The Class's support of the Settlement indicates that it is fair, reasonable, and adequate, warranting final approval.

For the reasons set forth above, Plaintiff requests that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the

Settlement Class for purposes of judgment on the Settlement, and granting Plaintiff's request for

attorneys' fees, expenses and a service award.


Dated: April 2, 2026                    Respectfully submitted,

                                        */s/ Bryan L. Bleichner*
                                        Bryan L. Bleichner
                                        **CHESTNUT CAMBRONNE PA**
                                        100 Washington Ave S, Ste 1700
                                        Minneapolis, MN 55401
                                        Telephone: (612) 339-7300
                                        Fax: (612) 336-2940
                                        bbleichner@chestnutcambronne.com

                                        Gary Klinger
                                        **MILBERG LLC**
                                        227 W Monroe St, Ste 2100
                                        Chicago, IL 60606
                                        Telephone: (866) 252-0878
                                        gklinger@milberg.com

                                        John Yanchunis
                                        **MORGAN & MORGAN**
                                        201 N Frankin St, 7th Floor
                                        Tampa FL 33602
                                        Telephone: (813) 223-5505
                                        jyanchunis@forthepeople.com

                                        Bruce Steckler
                                        **STECKLER WAYNE & LOVE**
                                        12720 Hillcrest Rd, Ste 1045
                                        Dallas, TX 75230
                                        Telephone: (972) 387-4040
                                        bruce@stecklerlaw.com

                                        Counsel for Plaintiff and the putative class

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically filed

with the Court and that counsel of record, who are deemed to have consented to electronic service

are being served this 2nd day of April, 2026 via the Court's CM/ECF System.

*/s/ Bryan L. Bleichner*
Bryan L. Bleichner

20